IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| Cullan and Cullan LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>M-Qube, Inc., a Delaware corporation, Mobile Messenger Americas, Inc., a Delaware Corporation, and CF Enterprises Pty. Ltd., an Australian Company, and JOHN DOES 1-200,<br><br>Defendants. | Case No.<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

NOW COMES plaintiff Cullan and Cullan LLC ("Plaintiff"), individually and on behalf of all others similarly situated, and complains of defendants M-Qube, Inc., Mobile Messenger Americas, Inc., CF Enterprises Pty. Ltd., and John Does 1-200 ("Defendants") as follows:

## INTRODUCTION

1. This complaint is brought as a class action against Defendants for their illegal, unfair and unjust practice of imposing unauthorized charges on consumers' wireless telephone bills—a practice known as "cramming." Plaintiff, on behalf of itself and all others similarly situated, seeks, *inter alia*, monetary, declaratory, and injunctive relief.

## PARTIES

2. Plaintiff Cullan and Cullan LLC is a limited liability corporation, with its principal place of business in Omaha, Nebraska.

3. Defendant M-Qube, Inc. ("M-Qube"), is a Delaware corporation, with its principal place of business in Los Angeles, California.

4. Defendant Mobile Messenger Americas, Inc. ("MMA"), is a Delaware corporation, with its principal place of business in Los Angeles, California.

5. Defendant CF Enterprises Pty. Ltd. ("CFE") is an Australian company that transacts business throughout the United States, including in the State of Nebraska. On information and belief, it is a provider of Mobile Content, including Mobile Content available from the website: CellSafari.com.

6. Defendants John Does 1-200 are unknown third party Mobile Content providers that contract with M-Qube and/or MMA to act as an intermediary(ies) with wireless carriers for the billing of the products and services that John Does 1-200 allegedly sold to Plaintiff and Class members.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because at least one Class member is of diverse citizenship from one or more of Defendants, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs. Additionally, the Court has federal question jurisdiction pursuant to Plaintiff's claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

8. The Court has personal jurisdiction over Defendants in this case because, upon information and belief, Defendants are authorized to do business and, in fact, do business in this State, and otherwise intentionally avail themselves of the markets in this State through the promotion, marketing and sale of products in this State.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants engaged in substantial conduct relevant to Plaintiff's claims within this District and has caused harm to Plaintiff and Class members residing within this District.

## FACTUAL BACKGROUND

10. MMA was formerly M-Qube's largest client. *See* Error! Hyperlink reference not valid. (last visited May 24, 2013). In November 2009, MMA acquired M-Qube—the nation's largest mobile messaging aggregator at that time. *Id.*

11. According to its website, MMA is the "leading Mobile Solutions Provider, supplying its partners with cutting edge technology and services that facilitate the marketing, distribution and monetization of digital content to mobile devices." *See* http://www.mobilemessenger.com/about.php (last visited May 24, 2013). "MMA enables third-party clients to monetize and distribute content to mobile channels across 60 carrier networks globally." *Id.*

12. MMA is a mobile aggregator and application provider that employees over 160 employees globally and has over 150 content providers and corporation clients. *See* http://www.mobilemessenger.com/about_corporateoverview.php (last visited May 24, 2013).

13. A mobile aggregator acts as an intermediary between third party mobile content providers that purportedly market and sell subscriptions to a variety of mobile text message services and wireless carriers. CellSafari.com is one such mobile content provider. According to CellSafari.com, it sells text alerts, wallpaper, and ringtones. *See* www.cellsafari.com (last visited May 8, 2013). On information and belief, CellSafari.com is owned and operated by CFE.

14. Defendants MMA and M-Qube facilitate payment transactions between third-party companies (such as CFE), consumers, and wireless carriers. For example, when a consumer buys certain mobile content from a third-party company, Defendants MMA and M-Qube

communicate that information to the consumer's wireless carrier, which then imposes a charge on the consumer's monthly wireless telephone statement. Hereinafter, MMA and M-Qube are sometimes referenced collectively as the "Mobile Aggregator Defendants."

15. On information and belief, Defendants deceptively caused (and continue to cause) consumers to become subscribed, without consumer's authorization, to so-called mobile content services so that it can impose recurring monthly charges onto consumers' wireless telephone bills.

16. On information and belief, in some cases, the unauthorized subscriptions are accomplished by delivering advertisements to consumers' cellular telephones (hereinafter "cell phones") that imitate official smartphone system notifications. Reasonably believing that these advertisements are official system messages, consumers clicked on the messages, which invariably lead to advertisements rather than system messages. After the consumer clicks on the advertisement, they are prompted to put in their cell phone number. Once the consumer's cell phone number is obtained, the Mobile Content Provider supplies that information to the Mobile Aggregator Defendants, who utilize that information to falsely inform the consumer's wireless carrier that the consumer subscribed to mobile subscription services. This, in turn, causes the consumer's wireless carrier to impose a charge on the consumer's wireless telephone bill. In the telecommunications industry, this practice is known as "cramming."

17. On information and belief, in some cases, the unauthorized subscriptions appear on a consumer's wireless telephone bill even though they did not click on any text message and did not subscribe for any mobile content services.

18. The Federal Trade Commission explains "cramming" as follows:

> Cramming happens when a company adds a charge to your phone bill for a service you didn't order, agree to, or use. Cramming charges can be small, say $2 or $3, and easy to

4

overlook. But even when the phony charges aren't small, they may sound like fees you do owe. That makes them tough to pick out, especially if your phone bill varies month to month.

*See* http://www.consumer.ftc.gov/articles/0183-mystery-charges-your-phone-bill (last visited May 10, 2013).

19. On information and belief, Mobile Aggregator Defendants sometimes used (and continue to use) vague descriptions of the unauthorized charges so that when the charges appeared on consumers' wireless telephone bills, consumers would be confused into believing the charge was legitimate.

## FACTS RELATING TO PLAINTIFF CULLAN AND CULLAN LLC

20. Plaintiff is a law firm that has its principal place of business in Omaha, Nebraska.

21. Plaintiff has an account with AT&T for wireless service. Plaintiff's wireless carrier billing statement for May 17, 2012 to June 16, 2012, included unauthorized charges that were facilitated by the Mobile Aggregator Defendants. Said bill included an unauthorized charge for a subscription to "Cell Safari" for $9.99 with an automatic renewal date. It also included an unauthorized charge for a Monthly Subscription for "ChlkbrdQuizClub" for $9.99. Prior to these charges appearing on Plaintiff's bill, Plaintiff received unsolicited text messages on his smartphone that he believed to be spam, but he did not reply or respond to said text messages.

22. At no time did Plaintiff ever authorize or consent to receive or be charged for such products and services.

23. Plaintiff paid its wireless telephone bill for May 17, 2012 to June 16, 2012, which included the Cell Safari monthly charge for $9.99 and the "ChlkbrdQuizClub" for $9.99.

## CLASS ALLEGATIONS

24. Plaintiff, on behalf of itself and all others similarly situated, seeks to recover from Defendants monetary damages, punitive damages, equitable relief in the form of disgorgement of money paid for unauthorized mobile content charges, declaratory and injunctive relief, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs, and such other relief as the Court may find just and appropriate.

25. The proposed class ("Class") may be defined as:

> All current and former subscribers to wireless telephone services who received unsolicited, commercial text messages and were billed and paid for mobile content that was not authorized by the subscriber, for which M-Qube, Inc., and/or Mobile Messenger Americas, Inc., facilitated the charges on behalf of a mobile content provider.

26. The proposed sub-class ("CFE Sub-Class") may be defined as:

> All current and former subscribers to wireless telephone services who received unsolicited, commercial text messages and were billed and paid for mobile content that was not authorized by the subscriber, for which M-Qube, Inc., and/or Mobile Messenger Americas, Inc., facilitated the charges on behalf of CF Enterprises Pty. Ltd.

27. The prerequisites for the maintenance of a class action are set forth by Rule 23(a) of the Federal Rules of Civil Procedure:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are common questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Proc. 23(a).

28. **Numerosity**. The Class and CFE Subclass are each sufficiently numerous such that joinder is impractical. Upon information and belief, the Classes each consist of hundreds, if not thousands, of members

29. <u>Common Questions</u>. Common questions of fact and law predominate over individual issues, if any, that may exist. These questions include, but are not limited to, the following:

    a) Whether Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227;

    b) Whether Defendants' conduct constitutes tortious interference with Plaintiff's and other Class members' contracts with their wireless telephone carriers;

    c) Whether Plaintiff and other Class members have been damaged and, if so, in what amount;

    d) Whether Defendants have been unjustly enriched to the detriment of Plaintiff and other Class members; and

    e) Whether Plaintiff and other Class members are entitled to declaratory and injunctive relief.

30. <u>Typicality</u>. Plaintiff's claims are typical of the claims of Class members because Plaintiff and Class members sustained injury and damages due to Defendants' conduct.

31. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in class action lawsuits. Plaintiff has no interest antagonistic to or in conflict with those of other Class members and, therefore, is an adequate representative for the Class.

32. <u>Superiority</u>. This matter is appropriate for class certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy. The adjudication of this controversy through a class action will promote uniformity of decision and avoid the possibility of inconsistent and potentially conflicting adjudications of the claims

asserted herein. The injuries suffered by the individual members of the Class are relatively small compared to the burden and expense of individual prosecution of the litigation. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief. A class action can best secure the economies of time, effort, and expense of the parties and the Court.

33. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definitions" based on facts learned through discovery.

## COUNT I

### Violation of the Telephone Consumer Protection Act

34. Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

35. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, prohibits the use of automated telephone equipment to make unsolicited voice and text calls to cell phones:

> (b) Restrictions on use of automated telephone equipment
>
> (1) Prohibitions
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
>> . . . .
>>
>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . . .

47 U.S.C.A. § 227 (b).

36. The TCPA bans text messages sent to a cell phone using an autodialer, unless (1) the cell phone subscriber previously gave consent to receive the message or (2) the message is sent for emergency purposes. Under the TCPA, a text message to a cell phone is a call.

37. The TCPA provides that a person or entity may bring a private right of action for violation of the TCPA to enjoin such violations and to recover "actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater". 47 U.S.C.A. § 227 (b) (3).

38. Plaintiff and other Class members received unsolicited, unauthorized, and non-emergency text messages on their cell phones, which, on information and belief, were sent by Defendants using an automatic telephone dialing system.

39. Plaintiff and other Class members were injured because they were subjected to the aggravation of receiving unwanted, unsolicited, and unauthorized texts and, in many cases, had to pay their cell phone service providers for the receipt of such texts.

40. Plaintiff, individually and on behalf of all others similarly situated, prays that the Court grant the following relief:

    a) An order certifying the Class as set forth herein and appointing Plaintiff and Plaintiff's counsel to represent the Class;

    b) An order awarding Plaintiff and the other Class members actual and/or statutory damages under the TCPA;

    c) An order awarding Plaintiff and the other Class members injunctive relief under the TCPA;

    d) An order awarding Plaintiff and the other Class members restitution and/or disgorgement and other equitable relief as the Court deems proper;

e) An order awarding Plaintiff and the other Class members punitive damages, as appropriate;

f) An order awarding Plaintiff and the other Class members pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert-witness fees and other costs; and

g) Such other and further relief as the Court may deem just and proper

## COUNT II

### Tortious Interference with a Contract

41. Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

42. Plaintiff and the other Class members have or had contractual relationships with their wireless telephone carriers whereby they agreed to pay certain sums of money in exchange for their cellular telephone accounts and their carrier's promise to provide various communication and related services to Plaintiff and Class members and to only charge Plaintiff and Class members for products or services for which they provided their consent and authorization.

43. Defendants knew of said contractual relationships and intended to and did, in fact, induce a breach or disruption of such contractual relationships.

44. Defendants intentionally interfered with such contractual relationships by knowingly and/or recklessly causing unauthorized charges to be placed on the wireless telephone bills of Plaintiff and the other Class members.

45. Defendants' acts and practices have directly, foreseeably, and proximately caused actual damages to Plaintiff and the other Class members. Plaintiff and the other Class members paid the

unauthorized mobile content charges (typically $9.99 per month), which were improperly included in their wireless telephone bills pursuant to Defendants' instructions.

46. Plaintiff, individually and on behalf of all others similarly situated, prays that the Court grant the following relief:

   a) An order certifying the Class as set forth herein and appointing Plaintiff and Plaintiff's counsel to represent the Class;

   b) An order awarding Plaintiff and the other Class members actual and compensatory damages;

   c) An order awarding Plaintiff and the other Class members restitution and/or disgorgement and other equitable relief as the Court deems proper;

   d) An order awarding Plaintiff and the other Class members punitive damages, as appropriate;

   e) An order awarding Plaintiff and the other Class members pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert-witness fees and other costs; and

   f) Such other and further relief as the Court may deem just and proper.

## COUNT III

## UNJUST ENRICHMENT

47. Plaintiff repeats and re-alleges allegations contained in paragraphs 1-33, as if fully set forth herein.

48. This count is pled in the alternative to Counts I and II.

49. No other remedy at law can adequately compensate Plaintiff and the other Class Members for the damages occasioned by Defendants' conduct.

50. Defendants have been enriched by their unfair acts and/or practices alleged herein to the detriment of Plaintiff and the other Class members.

51. The unfair acts and/or practices allowed Defendants to unlawfully receive monies that it would not have otherwise obtained.

52. Plaintiff and the other members of the Class have conferred benefits on Defendants, Defendants have knowledge of these benefits, and Defendants have voluntarily accepted and retained the benefits conferred on it by Plaintiffs and the other Class members.

53. Defendants' retention of the benefits violates principles of fairness, equity, good conscience, and fair dealing.

54. Defendants' acts and practices have directly, foreseeably, and proximately caused actual damages to Plaintiff and the other Class members. Plaintiff and the other Class Members paid the unauthorized mobile content charges (typically $9.99 per month), which were improperly included in their wireless telephone bills pursuant to Defendants' instructions.

55. Plaintiff, individually and on behalf of all others similarly situated, prays that the Court grant the following relief:

   a) An order certifying the Class as set forth herein and appointing Plaintiff and Plaintiff's counsel to represent the Class;

   b) An order awarding Plaintiff and the other Class members restitution and/or disgorgement and other equitable relief as the Court deems proper;

   c) An order awarding Plaintiff and the other Class members pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert-witness fees and other costs; and

   d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL

56. Plaintiff demands a trial by jury for all issues so triable.

Dated: June____, 2013

Plaintiff Cullan and Cullan LLC, individually and on behalf of all others similarly situated,

_____
One of the attorneys for Plaintiff

Rich Schicker
*Attorneys for Plaintiff*

*Of Counsel*:

Ben Barnow
Sharon A. Harris
Erich P. Schork
Blake A. Strautins
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Email:
    b.barnow@barnowlaw.com
    s.harris@barnowlaw.com
    e.schork@barnowlaw.com
    b.strautins@barnowlaw.com
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

Ralph K. Phalen
RALPH K. PHALEN LAW, P.C.
1000 Broadway, Suite 400
Kansas City, MO 6410
Telephone: (816) 589-0753
Facsimile: (816) 471-1701
Email: phalenlaw@yahoo.com

Mitchell L. Burgess
BURGESS & LAMB, P.C.
1000 Broadway, Suite 400
Kansas City, MO 64105
Telephone: (816) 471-1700
Facsimile: (816) 471-1701
Email: mitch@burgessandlamb.com