IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CULLAN AND CULLAN, LLC, on behalf of itself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>M-QUBE, INC., et al.,<br><br>　　　　　　　Defendants. | No. 8:13-cv-00172<br><br>Honorable Joseph Bataillon |

**REPLY IN SUPPORT OF MOTION OF RICHARD GEIER OF WASHINGTON TO INTERVENE FOR PURPOSE OF OBJECTING TO PROPOSED SETTLEMENT**

### I. INTRODUCTION

　　Two weeks ago, the Parties jointly asked this Honorable Court to approve a proposed class settlement that they now acknowledge contained fundamentally unfair provisions. In response to the motions of the proposed intervenors, however, the parties have proposed amending their agreement in only two respects: to address the release of claims based on future conduct and the identity of the John Doe releasees. Major problems continue to plague the proposed settlement, including an inadequate and illusory settlement fund, failure to disclose the true identities of released content providers, an inadequate notice plan, an overbroad release, an onerous claims process, excessive attorneys' fees and inadequate injunctive relief, all of which makes preliminary approval inappropriate.

　　Equally concerning, the Parties persist in their ongoing efforts to prevent the Court from hearing from the proposed intervenors, who have brought these issues to the Court's attention. Because the Parties are seeking an order on class certification and settlement approval that will wipe out Richard Geier's entire case, while affording Mr. Geier and other similarly situated Washington residents little or no actual relief, Mr. Geier has every incentive to assist the Court in

103414

ensuring that it is fully informed. The requirements for intervention under Rule 24 are met. Mr. Geier respectfully asks the Court to grant the motion to intervene and to deny the Parties' request for preliminary approval.

## II. ARGUMENT AND AUTHORITY

**A. Preliminary Approval Is Properly Denied Because the Settlement Is Unreasonable, Unfair, and Inadequate.**

*1. The Proposed Settlement Fund Is Inadequate.*

The Parties have failed to provide information to the Court that will allow the Court to meaningfully evaluate the adequacy of the proposed settlement fund. For example, the Parties have failed to disclose to the Court the number of individuals who are members of the proposed class. Similarly, the Parties have failed to provide the Court with any substantive analysis of proposed class members' claims or the available damages. Further, while the Mobile Messenger Companies assert that they cannot withstand a judgment of close to one billion dollars, the Parties failed to provide any information regarding the ability of the Mobile Messenger Companies to satisfy a judgment in excess of the proposed settlement fund.[1]

"Rule 23(e) 'imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims.'" *Martin v. Cargill, Inc.*, ___ F.R.D. ___, 2013 WL 5806165, at *3 (D. Minn. Oct. 29, 2013) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995)). In *Martin*, the court found "[t]he primary problem with the parties' submissions is that they provide almost no information enabling the Court to gauge the value of the proposed class's claims and, hence, the fairness and adequacy of the settlement." *Id.* The parties failed to identify the amount of damages at stake and "provided

---

[1] M-Qube was "the nation's largest messaging aggregator" and its parent company, Mobile Messenger, is the "market leader and largest provider within the US Market. . ." See www.mobilemessanger.com/pr111609.html. Consumer reports estimates that there are $2 billion in unauthorized cramming costs each year in the United States. *See* Zuchetto Decl., Ex. 1 Texas A.G. Compl. at 14.

nothing but generalities about the relative strengths and weaknesses of the class's claims and [defendant's] potential defenses." *Id*. at *3-4. The same is true here.

What little that is known regarding the potential inadequacy of the settlement fund raises red flags. The Parties concede that the terms of the proposed settlement allow the Mobile Messenger Companies to reduce the settlement fund based on any refund, including past refunds, that the Companies or third parties have provided to consumers. This will reduce the proposed claims-made or opt-in-type[2] settlement fund by up to 70 percent. Further, even though the Mobile Messenger Companies have information regarding the refunds that have been provided to date, the Companies have failed to provide this information to the Court. Indeed, on information and belief, the refund rates for the short codes associated with the Mobile Messenger Companies are high due to unfair and deceptive practices of those Companies and will substantially reduce the available funds from the proposed settlement. *See* Zuchetto Decl., Ex. 1 Texas A.G. Complaint ¶ 50 (quoting correspondence from Mobile Messenger to one of its content providers in which Mobile Messenger noted "an outstanding 33% refund rate" for a particular short code and recommended "switching traffic to one of your other codes as soon as possible"). The Parties concede that if the total offset credit is claimed by the Mobile Messenger Companies, the settlement fund will be reduced to a total of $1,950,000, with additional reductions for attorneys' fees, costs and claims administration fees and expenses.[3]

The Parties offer no response to Mr. Geier's point that if Washington is representative of other states, and if the Mobile Messenger Companies received *only* $5 million in fees in

---

[2] Under the proposed settlement, only class members who submit claims may be entitled to receive money from the settlement, though the settlement releases all class members' claims.

[3] The Parties do not dispute that the Cullan's counsel's request of more than $600,000 in attorneys' fees may equal or exceed the actual value conferred to class members by the proposed settlement. *See* http://apps.americanbar.org/litigation/committees/classactions/fees-claims-made-settlement.html ("class members often have a minimal stake in the potential recovery and thus have little incentive to monitor class counsel to ensure that counsel are serving their best interests") (citation omitted).

Washington, then the Companies collected over $200 million in fees nationwide.[4] Given the reductions that will be made for refund credits, attorneys' fees and costs, and claims administration expenses, the Parties' proposed settlement fund provides class members less than one percent of available damages on just the unauthorized subscription charge claim.

With respect to the TCPA claim, the Parties tout the purported ability of class members to obtain a refund of $100 per text, but the TCPA refunds would only be paid *after* the unauthorized charges claims are paid.[5] In light of the potential of hundreds of millions of dollars in unauthorized charges claims, there is a strong likelihood that class members will receive zero money for their TCPA claims. Given the scant information provided by the Parties, the Court is hard-pressed to even evaluate a proposed settlement that likely provides zero benefits to a large portion of the class.

Cullan points to other settlements regarding TCPA claims. Those settlements invariably involved unique and detailed circumstances not presently before this Court. Nonetheless, the *Sallie Mae* and *Bank of America* ("*BOA*") cases illustrate some of the problems with this proposed settlement. In both, settlements were reached only after extensive litigation, which allowed the parties and the courts to evaluate to the claims and defenses and proposed settlements. For example, in the *BOA* matter, litigation commenced in August, 2011. *See* ECF No. 54-1 ¶ 1.01. The preliminary settlement agreement was reached two years later in September, 2013. *See* ECF No. 54-1 at 31. The parties engaged in extensive discovery including written discovery and depositions. *See* ECF No. 54-1 ¶ 1.10. Litigation is still ongoing and preliminary approval has not yet been granted. Zuchetto. Decl., Ex. 2, Docket Report; *see also* ECF No. 54-2 ¶ I.A, ECF No. 54-2 at 33 (In *Sallie Mae*, litigation commenced

---

[4] The Parties mistakenly assert that Mr. Geier is seeking $250 million in damages. Mr. Geier was estimating the damages at stake in this purportedly nationwide action. The Washington Action is limited to Washington residents.

[5] The Parties have not addressed the apparent conflict that exists between differently situated class members and their differing claims.

in February, 2010 and the settlement agreement was reached in October, 2011). Rather than an illusory settlement fund subject to a substantial reduction of more than 70 percent and a full reversion to the defendants as proposed by the Parties in this case, both settlements established concrete settlement funds – $32 million in the *BOA* matter and $24 million in the *Sallie Mae* matter – with no reversion of funds to the defendants. *See* ECF No. 54-1 ¶ 2.35; *See* ECF No. 54-2 ¶ II.S and III.C.2. Further, direct notice was provided to class members, something the parties continue to refuse to do here.[6] In the end, the *BOA* and *Sallie Mae* cases show that appropriate settlements can be reached even where the available damages are large, but this case fails to achieve such an outcome.

        2.       *The Ongoing Failure to Disclose the Identities of All of the Released Content Providers Is Unfair and Unreasonable.*

In response to Mr. Geier's motion, the Parties tell the Court that they will amend the settlement agreement to "remove the list" of over 70 undisclosed John Doe parties. ECF No. 53, Mobile Messenger Companies Br. at 11. However, the Parties propose to identify the released Third Party Content Providers by name, short code, *or* DBA. *Id*. The disclosure of content providers by short code or DBA is inadequate. As the Texas Attorney General explains in its recently filed complaint, the Mobile Messenger Companies engage in unfair and deceptive conduct purposefully designed to keep the identities of their co-conspirators (i.e., the content providers) secret. Those tactics include, for example, arranging for one content provider to use the short codes assigned to another content provider in order to avoid detection of unfair and deceptive activities. *See* Texas AG Compl. at ¶ 51; *see also id*. at ¶ 27 (noting one content provider used more than 30 different short codes and multiple d/b/a's). The Court and members of the proposed class should know the names of every entity and individual being released. The only reason to keep those names hidden is to allow the unlawful conduct to continue.

---

[6] *See* ECF No. 54-1 ¶¶ 7.02, 8.02; *see also* ECF No. 54-2 ¶¶ III.G-2, 3. As discussed below, the costs of notice and claims administration and attorneys' fees, particularly if the proposed settlement agreement is amended to provide actual notice to class members, could easily consume the entire settlement fund.

### 3. *The Proposed Notice Plan is Inadequate.*

The Mobile Messenger Companies appear to have facilitated hundreds of millions of dollars in unauthorized charges for hundreds of thousands of consumers, and they are currently being sued in at least three other states (including a suit by the Attorney General of Texas) for these unauthorized charges. Yet, the Companies tell the Court they "do[] not expect that claims will reach anything close $6,500,000 or even $1,950,000." This assertion is most likely based on the Parties' plan to provide inadequate notice to a small, unidentified percentage of the proposed class and to require members to complete a needlessly onerous claims form, discussed below, in order to recover anything from this opt-in type of settlement.

Indeed, the Parties' proposal fails to ensure that class members receive the best notice practicable. The Parties claim that they will provide direct email notice to those members for whom they have email addresses. However, the parties continue in their refusal to disclose the percentage of class members that fit within this group, though the Mobile Messenger Companies have this information. *See* M-Qube's Br. at 12 (asserting the Companies "have email addresses for *some* class members in [the] *Fields*" matter…) (emphasis added). Whether "some" class members means two or three class members or something else is unknown. Cullan goes so far as to misleadingly tell the Court notice "is projected to reach 95% of all Settlement class members." Cullan Br. at 16, citing Dahl Decl., ¶ 18, ECF No. 30-3. In truth, the proposed claims administrator says he designed a "web-based notice campaign utilizing banner style notices" that may provide the "ability" to reach 95 percent of the proposed class.

### 4. *The Release is Overbroad.*

The Parties concede the proposed releases extend to numerous entities, including wireless carriers and content providers, that are not party to the suit and that proposed class members may have valid legal claims against. Proposed Settlement Agreement, ECF No. 30-1 at ¶ 2.36. The release goes so far as to release "any claim . . . regardless of legal theory, and regardless of the type or amount of relief or damages claimed[.]" *Id*. at ¶ 2.40. The release extends to any "claim

for any breach or violation of federal or state statute or regulation… and any claim for damages, injunctive relief, declaratory relief, class damages or relief, penalties, punitive damages, exemplary damages, restitution… [etc.]" *Id*. at ¶ 2.40.

Such an overbroad release further exemplifies the unfairness of the proposed settlement. The broad release is particularly troublesome in light of the nominal value the settlement provides to proposed class members.

     5.     *The Proposed Claims Process is Unnecessarily Onerous and Will Result in the Denial of Valid Claims.*

The claims process is unduly onerous – members of the proposed class are required to provide "the date, description, and amount of each charge" for which they seek a refund. As such, class members would need to obtain and comb through years of billing records, which they may or may not have access to. Notably, the Mobile Messenger Companies do not dispute that they have the information necessary to evaluate and pay claims and to avoid any potential fraud in the claims process. *See* Geier's Br. at 7, ECF No. 39 (alleging "the Mobile Messenger Companies already have this information").

Further, the language of the proposed settlement agreement provides that a claim form may be rejected "if it <u>appears</u> that the Claimant has previously received a refund from any source." ECF No. 30 at 9 (emphasis added). Thus, a class member who previously received a refund of $20 but had a total of $100 in unauthorized charges could be denied any recovery from this proposed settlement.

     6.     *The Proposed Injunctive Relief is Inadequate.*

Examined critically, the purported changes in business practices[7] fail to meaningfully address the problems that have caused unauthorized charges and will do little to nothing to

---

[7] To be clear, the proposed settlement fails to include actual injunctive relief, such as a consent decree. Rather, the Mobile Messenger Companies have merely agreed to make certain "service improvements and assurances."

benefit consumers. Out of the gate, it is confusing as to which entity is responsible for ensuring the changes actually happen. *See* ECF No. 30 ¶ B.2. (sometimes it says the Mobile Messenger Companies are responsible; other times it says wireless companies or content providers may be responsible). Further, nothing is being done to change deceptive nature of advertisements that result in unauthorized charges. *See* Zuchetto Decl., Ex. 1, Texas AG Compl. ¶¶ 29-43. Likewise, nothing is being done to ensure proper identification of content providers and aggregators on consumers' bills. Most importantly, the proposed settlement fails to provide any monitoring, compliance assurance, or enforcement mechanism.

**B.     The Geier Matter Should Be Removed from the Proposed Settlement.**

There is no dispute that Cullan filed its complaint in this case eight months after Mr. Geier filed his complaint in Washington. Moreover, the Parties concede the proposed settlement was reached without any litigation and before there was even an opportunity to conduct meaningful discovery.

Cullan has failed to allege a claim on behalf of Mr. Geier and other similarly situated Washington consumers regarding the Washington Consumer Protection Act or any similar statute. Yet, the claims of Mr. Geier and all other Washington residents, the Parties concede, would be completely wiped out by the settlement proposed here. Subjecting Mr. Geier and other Washington consumers to a proposed settlement that provides little or no actual value to them, especially when they have counsel who are actively prosecuting their claims, is unreasonable, unfair and inadequate and provides a sufficient basis to require the parties to exclude Washington residents from the proposed settlement.[8]

---

[8] The Mobile Messenger Companies assert they have carved out the content provider involved with Mr. Geier's charge, POW Mobile, from the proposed settlement, but POW Mobile is not a party in the *Geier* matter and is believed to be defunct.

## C.       Geier Meets the Requirements to Intervene and Will Be of Assistance to the Court.

After making misplaced attacks against the proposed intervenors based on timeliness,[9] the Parties argue that Mr. Geier lacks an interest in the matter and that he should be forced to wait several more months, after certification and preliminary approval, to make an objection to the proposed settlement. In the class action context, however, absent class members generally may intervene if the class representatives are failing to adequately represent their interests. *See In re Discovery Zone Sec. Litig.,* 181 F.R.D. 582 (E.D. Ill. 1998); Newberg & Conte, *Newberg on Class Actions 3d* 16.06 - 39 (1992) and Supplement.

The Eighth Circuit has held that intervention is proper where the representation of the proposed intervenor's right "is or *may be* inadequate" or the proposed intervenor's right "*may be* impaired." *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs.*, 60 F.3d 1304, 1307-08 (8th Cir. 1995) (quotations and citations omitted). Applying this precedent, courts have allowed intervention by objectors to proposed class settlements based on allegations that the proposed settlement provided "insufficient value, that the release is overbroad, and that the notice given to class members was deficient." *See Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 689-90 (D. Minn. 1984) ("This position clearly puts [the proposed intervenors] at odds with class counsel, and, therefore, the Court finds that [the proposed intervenors] have made the minimal showing necessary to support their motions to intervene."); *See also* Zuchetto Decl., Ex. 3 (court order granting motion to intervene in the *Sallie Mae* matter noting "[i]ntervention is allowed liberally in class actions")

Here, the Parties have asked the Court to certify a settlement class that is comprised of hundreds of thousands if not millions of consumers, including Geier and all other similarly situated Washington consumers, appoint Cullan as representative, and appoint Cullan's counsel as counsel for the entire class for all of the varying claims asserted and released claims. Yet, as described above and in Mr. Geier's opening brief, counsel for Cullan have demonstrated that

---

[9] Mr. Geier first learned of the *Cullan* matter on October 17, 2013, (*see* ECF No. 55-14 at 6:2-25), and he filed the motion to intervene eleven days later on October 28, 2013.

- 9 -

they are inadequate and unable to represent Mr. Geier and Washington consumers in this matter.

Further, while the Parties have acknowledged some of the problems in the proposed settlement brought to light by Mr. Geier, the Parties refuse to address many other fundamental problems with the settlement and refuse to provide the Court with information necessary to evaluate the proposed settlement. Delaying resolution of these fundamental problems, as proposed by the Parties, makes little sense. "[P]reliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *Martin v. Cargill, Inc.*, No. 13-2563, ___ F.R.D. ___, 2013 WL 5806165, at *3 (D. Minn. Oct. 29, 2013). "Indeed, the Court must be particularly scrupulous because 'preliminary approval establishes 'an initial presumption of fairness.'" *Id.* (quoting *In re Gen. Motors Corp.*, 55 F.3d at 785); *see also Martin*, ___ F.R.D. ___, 2013 WL 5806165, at *5 ("[B]ecause the proposed settlement was negotiated . . . prior to a class being certified, Plaintiffs are subject to an even '*higher* showing of fairness.'") (quoting *In re Gen. Motors Corp.*, 55 F.3d at 805). Mr. Geier is able to assist the Court now in evaluating the settlement, where the Parties have failed to do so.

### III. CONCLUSION

For the reasons set forth above and in Mr. Geier's opening brief, Mr. Geier respectfully requests that the Court grant his motion to intervene. Mr. Geier also respectfully requests that the Court deny the Parties' motion for preliminary approval.

RESPECTFULLY SUBMITTED AND DATED this 12th day of November, 2013.

HEINS MILLS & OLSON, P.L.C.


By: *s/ Renae D. Steiner*
    Renae D. Steiner
    Email: rsteiner@heinsmills.com
    310 Clifton Avenue
    Minneapolis, Minnesota 55403
    Telephone: (612) 338-4605
    Facsimile: (612) 338-4692

Toby J. Marshall, *Pro Hac Vice Application*
  *to be Submitted*
Email: tmarshall@tmdwlaw.com
936 North 34th Street, Suite 300
TERRELL MARSHALL DAUDT & WILLIE PLLC
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

Matthew J. Zuchetto, *Pro Hac Vice Application*
  *to be Submitted*
Email: matthewzuchetto@me.com
926 West Sprague, Suite 680
The Scott Law Group, P.S.
Spokane, Washington 99201
Telephone: (509) 455-3966
Facsimile: (509) 455-3906

*Attorneys for Intervenor-Plaintiff Richard A. Geier*

CERTIFICATE OF SERVICE

I, Renae D. Steiner, hereby certify that on November 12, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Ben Barnow, *Admitted Pro Hac Vice*
>Email: b.barnow@barnowlaw.com
>Blake A. Strautins, *Admitted Pro Hac Vice*
>Email: b.strautins@barnowlaw.com
>Erich P. Schork
>Email: e.schork@barnowlaw.com
>Sharon A. Harris, *Admitted Pro Hac Vice*
>Email: s.harris@barnowlaw.com
>BARNOW AND ASSOCIATES, P.C.
>One North LaSalle Street, Suite 4600
>Chicago, Illinois 60602
>Telephone: (312) 621-2000
>Facsimile: (312) 641-5504
>
>Ralph Phalen, *Admitted Pro Hac Vice*
>Attorney at Law
>Email: phalenlaw@yahoo.com
>1000 Broadway, Suite 400
>Kansas City Missouri 64105
>Telephone: (816) 589-0753
>Facsimile: (816) 471-1701
>
>*Proposed Class Counsel*
>
>Richard J. Schicker, Bar No. 13686
>Email: rschicker@teamschick.com
>LAW OFFICES OF RICHARD J. SCHICKER
>2809 South 160th Street, Suite 101
>Omaha, Nebraska 68130
>Telephone: (402) 344-4400
>Facsimile: (402) 344-2581

8:13-cv-00172-JFB-TDT   Doc # 58   Filed: 11/12/13   Page 13 of 14 - Page ID # 1088

Mitchell L. Burgess, *Admitted Pro Hac Vice*
Email: mitch@burgessandlamb.com
BURGESS & LAMB, P.C.
1000 Broadway, Suite 400
Kansas City, Missouri  64105
Telephone: (816) 471-1700
Facsimile: (816) 471-1701

*Additional Plaintiff's Counsel*

Ari N. Rothman
Email: anrothman@venable.com
Molly T. Cusson, *Admitted Pro Hac Vice*
Email: mtcusson@venable.com
VENABLE LAW FIRM
575 7th Street, NW
Washington, DC 20004-1601
Telephone:  (202) 344-4000
Facsimile:  (202) 344-8300

John P. Passarelli
Email: john.passarelli@kutakrock.com
Paul R. Gwilt
Email:  paul.gwilt@kutakrock.com
KUTAK, ROCK LAW FIRM - OMAHA
1650 Farnam Street
Omaha, Nebraska  68102-2186
Telephone:  (402) 346-6000
Facsimile:  (402) 346-1148

*Attorneys for Defendant M-Qube and Mobile Messenger Americas, Inc.*

Carrie S. Dolton
Email: cdolton@goberhilgers.com
Michael T. Hilgers
Email: mhilgers@goberhilgers.com
GOBER, HILGERS LAW FIRM
14301 FNB Parkway, Suite 100
Omaha, Nebraska  68154
Telephone:  (402) 218-2106
Facsimile:  (877) 437-5755

*Attorneys for CF Enterprises Pty. Ltd.*

- 14 -

DATED this 12th day of November, 2013.

                    HEINS MILLS & OLSON, P.L.C.

          By:   s/ *Renae D. Steiner*
               Renae D. Steiner
               Email:  rsteiner@heinsmills.com
               310 Clifton Avenue
               Minneapolis, Minnesota  55403
               Telephone:  612-338-4605
               Facsimile:  (612) 338-4692

               *Attorneys for Plaintiff*