**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

Cullan and Cullan LLC, *et al.*,

        Plaintiff,

    v.

m-Qube, Inc., *et al.*,

        Defendants.

Case No. 8:13-cv-00172

The Honorable Joseph F. Bataillon

**DAVID HANSON AND KRISTIAN KUNDER'S REPLY BRIEF IN SUPPORT OF**
**MOTION TO INTERVENE FOR PURPOSE OF OBJECTING TO PROPOSED**
**SETTLEMENT**

**Introduction**

In their oppositions to the Motion to Intervene, the *Cullan* parties concede, as they must, that the *Fields* case and this case are "not parallel." The two cases involve different parties (but for Mobile Messenger and m-Qube[1] who are defendants in both actions), different issues, starkly different claims for relief, and texts sent from different short codes. The *Cullan* parties' admission begs the obvious question: why are the *Fields* claims, which are never even mentioned in the *Cullan* complaint, being settled here?

Faced with the prospect of a settlement that would eradicate the "non-parallel" claims against Mobile Messenger that the *Fields* Intervenors have been litigating long before this action was even filed, and for which class certification is fully briefed and set for hearing this week, the *Fields* Intervenors ask this Court to preserve their starkly

---

[1] Consistent with their initial filing, and for simplicity and brevity, the Fields Intervenors collectively refer to these two affiliated entities as "Mobile Messenger."

different case and claims, as the *Fields* class members are neither typical nor similarly situated to the *Cullan* plaintiff. As an example, the most powerful of the *Fields* claims alleges that Mobile Messenger violated the TCPA by actually sending text messages to class members' cell phones. The TCPA prohibits *sending* a text message to a consumer's cell phone without authorization. 47 U.S.C. §227(b)(1)(A). The *Cullan* complaint does not allege that Mobile Messenger sent texts to class members, and does not state a TCPA claim against Mobile Messenger. Instead, the *Cullan* complaint's allegations are limited to the alleged "cramming" scheme involving CellSafari.com and CF Enterprises Pty. Ltd., in which Mobile Messenger facilitated billing (Complaint, ¶¶ 13, 21-23), but did not send the alleged texts. Yet, the *Cullan* parties propose to settle the *Fields'* class members' TCPA claims, claims they themselves never even raised.

Just days ago, the District Court in Minnesota faced a virtually identical situation in which a later filed class action proposed to subsume the claims of an earlier filed case in a settlement that had all the troublesome earmarks of the one now before the Court. The Minnesota court, troubled by the conduct of the settling parties and the possibility of a "reverse auction," denied preliminary approval. *See Martin v. Cargill, Inc.*, CIV. 13-2563 RHK/JJG, 2013 WL 5806165 (D. Minn. Oct. 29, 2013).

The *Fields* Intervenors respectfully suggest that the *Martin* court's denial of preliminary approval is the equitable course to take here. The *Fields* Intervenors simply seek the ability to chart their own course and not have their case against Mobile Messenger eviscerated by a later-filed action which does not even allege the same misconduct against Mobile Messenger. The *Fields* Intervenors recognize that this Court

cannot modify the *Cullan* settlement on its own, and so they only seek to intervene to preserve their valuable claims against Mobile Messenger to the extent that the *Cullan* parties seek to eradicate those claims.

The *Cullan* parties' remaining arguments are baseless. They emphasize that allowing the motion to intervene may cause delay in the implementation of the settlement, which in and of itself is not a reason to deny intervention, particularly given the unusually short time span between the filing of the complaint in June and the mediation in August. There is no basis for the *Cullan* parties' apparent rush to settle this case. Nor should the Court credit Mobile Messenger's arguments that it prefers to settle this case because it can settle it for less than the others, as such an argument directly conflicts with the policy of Rule 23, which requires adequate representation of all class members in litigation and settlement of class claims. Finally, for the reasons contained in the Intervenors' initial motion, as well as the *Geier* intervention motion and reply, the settlement as proposed remains inadequate.

For all of these reasons, and those set forth below, the motion should be granted.

## A.    *Martin v. Cargill* Disallowed Preliminary Approval Where The Settlement Would Eradicate The Claims Of A Previously Filed Class Action: This Court Should Adopt A Similar Approach

In *Martin v. Cargill, Inc.*, CIV. 13-2563 RHK/JJG, 2013 WL 5806165 (D. Minn. Oct. 29, 2013), the parties filed a motion for preliminary approval of a settlement in Minnesota that would encompass the claims of an earlier filed class action pending in Hawaii, involving the same defendants. The District Court denied preliminary approval, citing several key factors: (1) the later filed case sought to fully release the

3

claims in the earlier filed case; (2) the later filed case was settled before any discovery or motions practice was even commenced; (3) the same firm represented the defendants in both cases; and (4) counsel did not inform the Hawaii court of the proposed settlement that would entirely subsume the claims there. Each of these red flags is present here as well.

The Minnesota court was "[t]roubled by the course of conduct in th[e] case…," *id.*, at *7, noting that the situation before it - the quick settlement and the existence of an earlier filed case - raised the specter of a reverse auction,[2] or settlement with counsel willing to accept the lowest offer. As in this case, the settlement in *Martin* was reached shortly after the filing of a complaint:

> But Plaintiffs sought settlement approval *the day after filing their Complaint;* no formal discovery or preliminary motion practice has occurred. As the Manual notes, when a "case is filed as a settlement class action … with little or no discovery, it may be more difficult to assess the strengths and weaknesses of the parties' claims and defenses … and to consider how class members will actually benefit from the proposed settlement." Manual § 21.612.

*Martin v. Cargill, Inc.*, CIV. 13-2563 RHK/JJG, 2013 WL 5806165, *5 (D. Minn. Oct. 29, 2013) (Court's emphasis).

//

---

[2] "The Manual for Complex Litigation notes that there are 'a number of recurring potential abuses in class action litigation that judges should be wary of as they review proposed settlements.' Manual § 21.61. They include, among other things, (1) the existence of a 'reverse auction,' in which a defendant, seeing competing class cases, cherrypicks the attorneys willing to accept the lowest class recovery, in exchange for enhanced fees…." *Martin v. Cargill, Inc.*, CIV. 13-2563 RHK/JJG, 2013 WL 5806165, *7 (D. Minn. Oct. 29, 2013).

Also troubling to the court was counsel's failure to keep the Hawaii court (*Howerton* v. *Cargill*) apprised of a settlement that would eradicate the claims of the putative Hawaii class, even though defendant's counsel was the same in both cases:

> But counsel's failure to quickly alert the Hawaii court once *a settlement had been reached*—a settlement that subsumed the Hawaii case—seems to violate the spirit of counsel's duty of candor to that tribunal.
>
> In particular, defense counsel here also represents Cargill in *Howerton* but failed to timely inform Howerton, her counsel, and (most importantly) the Hawaii court that settlement discussions had reached fruition in Minnesota—a settlement that *subsumed the Hawaii case.* Instead, counsel waited until this action was filed more than six weeks later and only *then* informed the Hawaii court, moving to stay that action in deference to the settlement.

*Id.,* at 7, and n. 11 (Court's emphasis).

Here, defense counsel for Mobile Messenger is also the same in both cases, and just as in *Martin,* failed to alert the *Fields* court that a settlement had been reached that would subsume the *Fields* claims against Mobile Messenger, even though the settlement was reached more than two months ago.

In addition to denying preliminary approval, the *Martin* court invoked the first to file rule and issued a show cause order requiring the *Martin* parties to demonstrate why their "action should not be dismissed, stayed, or transferred to the District of Hawaii under the first-filed rule…." *Id.*, at *9. The *Martin* court invoked the equitable purpose of the first to file rule, which "is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice." *Id.,* at *8. The court noted that the "overlapping nature of the classes, in fact, suggests that the Court *should* apply the first-filed rule here, to prevent the very ills the rule is designed to address." *Id.* (court's emphasis).

5

The *Fields* Intervenors emphasize, however, that they merely seek to have their class, defined by reference to the short codes by which *Fields* class members were victimized, carved out from any settlement proposed by the *Cullan* parties, using these short codes.

### B. Mobile Messenger's Claim That Unless The *Cullan* Settlement Is Approved Consumers Will Be Left With No Remedy Is Specious

Mobile Messenger contends "even though m-Qube[3] is not liable in any way," it is nevertheless willing to settle *Cullan* "to benefit consumers." (Mobile Messenger Opposition, at 1). Mobile Messenger further claims that because the *Fields* parties seek hundreds of millions in liability under the TCPA, and because such a judgment would force Mobile Messenger into bankruptcy, even if the *Fields* plaintiffs were successful, consumers would still get nothing. *Id.*, at 2. This all or nothing argument is specious.  To be clear, *Fields* counsel would not prefer a large judgment and bankruptcy to a lower settlement figure and Mobile Messenger remaining a going concern.

In fact, John Roddy and Elizabeth Ryan, two of *Fields* counsel, settled just such a limited fund action in a class action against a mortgage servicer – a settlement in which the FTC also maintained a separate enforcement action, much like the situation in *Fields*.[4] *Curry v. Fairbanks Capital Corporation*, 03-10875-DPW (D. Mass.). In that case forensic accounting discovery showed that Fairbanks could settle for $55 million and still remain viable. On that basis class counsel, and the FTC, settled their respective

---

[3] Although the *Fields* Intervenors in their initial filing noted that they would collectively refer to the two affiliated entities – Mobile Messenger and m-Qube – as Mobile Messenger, those entities refer to themselves collectively as m-Qube in their opposition.
[4] *See FTC v. Wise Media, LLC, et al.*, Case No. 1:13-cv-1234-WSD (N.D. Ga.).

cases, foregoing the hundred million dollar plus claims they were advancing in favor of a settlement that would result in substantial recovery for consumers.

In addition, the court always has the power to reduce a judgment that would bankrupt a company to an amount that provides relief to class members and keeps the company solvent. "An award that would be unconstitutionally excessive may be reduced, see *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) but constitutional limits are best applied after a class has been certified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). The Ninth Circuit, the jurisdiction in which *Fields* is being litigated, adopts the approach described by Judge Easterbrook in *Murray*. Discussing this issue in a case which, coincidentally, involved potential damages of $750 million, the court noted: "[s]pecifically, a court could certify a class and enable the case to proceed but *then* invoke the Due Process Clause to cap damages within a reasonable realm." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 715 (9th Cir. 2010). "Although the TCPA was not the statutory provision at issue in *Bateman,* the court's reasoning applies with equal force here [in a TCPA class action]." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012).

Mobile Messenger claims – without any substantiation - that it has no choice but to litigate the *Fields* case to completion, "since plaintiff's counsel has repeatedly engaged in tactics that make m-Qube unable ever to fashion a settlement with or through them." Mobile Messenger Opposition, at 3. Although the "tactics" that it is referring to are left unsaid, perhaps it means that unlike the *Cullan* counsel, *Fields* counsel is vigorously

litigating their case. In any case, Mobile Messenger's statement is baseless given *Fields*

counsel's long and demonstrated track record of successfully settling class actions,

achieving exemplary results for class members. *See* Declaration of John Roddy in

Support of Motion for Class Certification, Dkt. # 177 in *Fields,* attached hereto as Exhibit

1. Finally, the obvious reason that the *Fields* parties have not sought to negotiate a

settlement is because Judge Alsup prohibits any such negotiations prior to class

certification. *See* Exhibit 5 to Interventors' Brief in Support of Motion to Intervene,

Judge Alsup's Notice Regarding Factors To Be Evaluated For Any Proposed Class

Settlement, ¶ 6, Dkt. # 23 in *Fields*.

### C.    The Motion To Intervene Was Timely Made

Mobile Messenger argues that as this case was filed on June 6, 2013, and was

available on PACER, the *Fields* Intervenors should have filed their intervention motion

then, and that the filing now is too late. Mobile Messenger Opposition, at 4. This

argument, too, is specious. The *Cullan* complaint involved a different content provider,

different claims, and involved none of the short codes identified in *Fields.* In fact, based

on the *Cullan* complaint, there was no reason to believe that Cullan even had standing

to assert any claim at issue in *Fields.*  Thus there was no reason to intervene until *Cullan*

filed its preliminary approval motion on October 16th which proposed to sweep within

its scope the claims of millions of class members never alleged in the *Cullan* complaint.

*Fields* counsel filed their intervention papers immediately after they learned of the

proposed settlement.  It is hard to see how *Fields* counsel could have acted more

expeditiously.  The *Fields* Intervenors' motion is timely.

8

    **D.**    **Mobile Messenger's Remaining Contentions Underscore The Need For The *Fields* Intervenors To Retain The Ability To Pursue Their Own Case, In California, Without Fear Of The *Cullan* Parties Releasing Their Claims**

The remainder of Mobile Messenger's opposition largely focuses on claims that it did nothing wrong in the *Cullan* case, and that as a consequence, it expects that very few claims will be made, stating:

> m-Qube *does not expect that claims will reach anything close to $6,500,000, or even $1,950,000.* For this reason, and because m-Qube loses money each time a consumer receives a carrier refund, m-Qube negotiated a reversion and credit, and believes that the settlement fund will sufficiently cover all claims.

Mobile Messenger Opposition, at 10 (emphasis added).

The *Fields* Intervenors make no argument—one way or the other—regarding Mobile Messenger's culpability in *Cullan.* In contrast *Fields* presents a completely different scenario, where Mobile Messenger was directly involved in sending the texts at issue (as alleged in *Fields* but not in *Cullan*), and where Mobile Messenger worked hand-in-hand with Wise Media in operating a cramming fraud (as described in detail in the FTC's enforcement action against Wise Media). As such, whether Mobile Messenger engaged in unlawful conduct toward Cullan, bears on *Fields* only in that it underscores why *Fields* should proceed separately, and should not be hamstrung by a settlement in *Cullan* which Mobile Messenger expects to generate very few actual claims.

In fact, given Mobile Messenger's prediction that the likely payout to the class won't even come close to $1.95 million, Mobile Messenger essentially admits that the *Cullan* settlement has insufficient value to bind *Fields* class members, another factor supporting intervention. *Trbovich v. UMWA*, 404 U.S. 528, 538 n. 10 (1972) (courts will

allow intervention whenever the intervenor applicant meets his or her *minimal* burden of showing that representation of his or her interests may be inadequate); *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684 *amended,* 858 F. Supp. 944 (D. Minn. 1994); *Burkhalter v. Montgomery Ward & Co., Inc.*, 676 F.2d 291 (8th Cir. 1982).  *See, e.g.,* Advisory  Committee Note to the current version of Rule 24(a) ("A class member who claims that his 'representative' does not adequately represent him, and is able to establish that proposition with sufficient probability . . . should as a general rule, be entitled to intervene in the action").

Perhaps this proposed settlement is fair to the relatively small class that *Cullan* should be representing, those who have similar claims based on the short codes used by the *Cullan* defendants to further the alleged CellSafari cramming scheme. But the proposed settlement is decidedly unfair to the multitude of consumers for whom the *Fields* Intervenors seek recovery.

## Conclusion

As noted in their opening brief in support of intervention, the *Fields* action and the claims of the *Cullan* class are starkly different. And the *Fields* plaintiffs are poised to vindicate the rights of the huge class that was subject to the distinct cramming scheme perpetrated through the short codes that were used to text the *Fields* class members, short codes that have nothing to do with the *Cullan* action. The class certification hearing in *Fields* will take place on November 14, 2013. This Court should allow that hearing, and the remainder of the *Fields* litigation, to proceed unimpaired by Cullan's wrong-headed attempt to eradicate their claims against Mobile Messenger.

Dated: November 12, 2013                  Respectfully Submitted:

<div style="margin-left:40%;">

_____s/ Elizabeth Ryan_____
Elizabeth Ryan (BBO# 549632)
John Roddy (BBO# 424240)
Attorneys for David Hanson and Kristian Kunder
125 Summer Street, Suite 1030
Boston, MA 02110
Telephone:  (617) 439-6730
Facsimile:  (617) 951-3954
Email: eryan@baileyglasser.com
Email: jroddy@baileyglasser.com

Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Attorneys for David Hanson and Kristian Kunder
KRONENBERGER ROSENFELD, LLP
150 Post St., Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
Email: jeff@KRInternetLaw.com

William L. Reinbrecht, #20138
Attorneys for David Hanson and Kristian Kunder
Car & Reinbrecht, P.C., LLO
8720 Frederick Street, Suite 105
Omaha, NE 68124
Telephone: (402) 391-8484
Email: billr205@gmail.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECD system, which will send notification of such filing to the participants noted below, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: NONE.

Ben Barnow
Blake A. Strautins
Erich P. Schork
Mitchell L. Burgess
Ralph K. Phalen
Richard J. Schicker
Sharon A. Harris
Ari N. Rothman
John P. Passarelli
Molly T. Cusson
Paul R. Gwilt
Carrie S. Dolton
Michael T. Hilgers

s/ Elizabeth Ryan
Elizabeth Ryan (BBO# 549632)
John Roddy (BBO# 424240)
Attorneys for David Hanson and Kristian Kunder
125 Summer Street, Suite 1030
Boston, MA 02110
Telephone:  (617) 439-6730
Facsimile:  (617) 951-3954
Email: eryan@baileyglasser.com
Email: jroddy@baileyglasser.com