IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CULLAN AND CULLAN LLC, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>M-QUBE, INC., a Delaware corporation; MOBILE MESSENGER AMERICAS, INC., a Delaware Corporation; CF ENTERPRISES PTY., LTD., an Australian Company; and JOHN DOES 1-200,<br><br>Defendants. | **8:13CV172**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on Richard Geier's motion to intervene, Filing No. 38, and on plaintiff Cullan and Cullan, LLC's ("Cullan") unopposed motion for preliminary approval of a proposed class action settlement, Filing No. 29.[1] Richard Geier seeks to intervene for the limited purpose of objecting to the proposed settlement.

This is a putative class action involving an alleged practice known as "cramming," that is, placing unauthorized, misleading, or deceptive charges on a consumer's cell-phone bill.[2] The plaintiff law firm is a consumer who is an alleged victim of this practice.

---

[1] David Hanson and Kristian Kunder also filed a motion to intervene, but they have withdrawn that motion. Filing No. 32, Motion; Filing No. 71, Notice of Withdrawal. Accordingly, the motion will be denied as moot. Kunder and Hanson were plaintiffs in another proposed class action cramming case against Mobile Messenger and others in the Northern District of California. See *Fields v. Wise Media, LLC*, No. 3:12-cv-5160 (N.D. Cal.) (the "California Action"). The record shows that class action certification was denied in that case . See Filing No. 66, Notice of Additional Authority, Ex. 1, *Fields v. Wise Media* Order (Filing No. 66-1); *see also Fields v. Wise Media*, LLC, No. 3:12-cv-05160, Filing No. 171, motion for class certification, (N.D. Ca. Oct. 10, 2013); *id.*, Filing No. 229, Order denying class certification (N.D. Ca. Nov. 18, 2013). The *Fields* action has now been dismissed pursuant to stipulation. *See id*, Filing Nos. 256, Stipulation & 257, Order (N.D. Ca. Dec. 17 & 18, 2013).

[2] The conduct involved in "cramming" is described in a case that ultimately led to a restitution award of over 37 million. *See FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 996 (N.D. Cal. 2010), aff'd 475 Fed. App'x 106 (9th Cir. Mar. 30, 2012); *see also* http://www.ftc.gov/opa/2013/09/inc21.shtm (last visited January 16, 2014).

Defendants M-Qube, Inc. and Mobile Messenger Americas, Inc. ("Mobil Messenger") are affiliated companies under common ownership and control. *See* Filing No. 56, Index of Evid., Ex. 6, Declaration of Darcy Wedd ("Wedd Decl.") at 1 (Filing No. 56-5 at ECF p. 1). Defendant Mobile Messenger and M-Qube are identified in the plaintiff's complaint as mobile aggregators and application providers who act as intermediaries between third-party mobile content providers (who purportedly "market and sell subscriptions to a variety of mobile text message services") and wireless carriers—they facilitate payment transactions between third-party companies, consumers, and wireless carriers Filing No. 1, Complaint at 3 (Filing No. 1 at p. 3). Defendant CF Enterprises, Ltd., owns and operates one such mobile content provider, CellSafari.com; and John Does 1-200 are "unknown third party Mobile Content providers" that contract with M-Qube and/or Mobile Messenger for billing of the products allegedly sold by John Does 1-200 to the plaintiff and purported class members. *Id.* at 2-3.[3]

In its complaint, filed on June 6, 2012, the plaintiff alleges that the defendant deceptively caused and continues to cause "consumers to become subscribed, without consumer's authorization, to so-called mobile content services so that it can impose recurring monthly charges onto consumers' wireless telephone bills." *Id.* at 4. The plaintiff, a law firm in Omaha, Nebraska, alleges that it was billed for unauthorized subscriptions on its wireless telephone bill. *Id.* at 5. It asserts a claim for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and for tortious interference with a contract and unjust enrichment under state law. *Id.* at 8-12 (Filing No. 1 at ECF pp. 8-12).

---

[3] Hereinafter, these defendants will be referred to, collectively, as "the defendant" or as "Mobile Messenger."

The court held a hearing on various motions on October 29, 2013. The parties were ordered at that time to submit additional briefing. The court has received and reviewed that additional briefing and evidence.

I. FACTS

In support of his motion, purported intervenor Richard Geier has shown that he is the named plaintiff in a separate purported class action suit against Mobile Messenger that was filed in the Superior Court for the State of Washington on October 17, 2012, and removed to the United States District Court for the District of Washington on February 26, 2012. Filing No. 40, Affidavit of Toby J. Marshall ("Marshall Aff.") (Filing No. 40 at p. 1; *see Geier v. M-Qube, Inc.*, Case No. 2:13-cv-00354 (W.D. Wash. Feb. 26, 2012) (the "Washington Action"). In that action, Geier, on behalf of a purported class, alleges unfair and deceptive business practices by Mobile Messenger in violation of the Washington Consumer Protection Act, and also asserts claims for conversion and unjust enrichment under state law. Filing No. 40, Marshall Aff. at 2 (Filing No. 40 at ECF p. 2); Filing No. 41, Index of Evid., Exs. 2-5 (Filing No. 41-1, 41-2, 41-3, 41-4, and 41-5)[4]. Geier objects to the proposed settlement in this action, arguing it is unfair,

---

[4] Interestingly, counsel Ari Rothman of the Venable Law Firm appears as counsel for Mobile Messenger in the *Fields* action as well as in this case. At a hearing earlier in the *Fields* case, the U.S. District Court judge stated that he would not allow private mediation, but would refer the parties to the U.S. magistrate judge for settlement negotiations, explaining,

> Private mediators sometimes engage in collusion. I know how it works, and I don't allow it. So you cannot do private mediation in a purported class action, at least with me. In fact, you can't do any settlement discussions until you get certified as class counsel. You don't have the authority to settle the case now. You are not class counsel.

Index of Evid., Ex. L – Transcript of hearing dated March 21, 2013 ("Fields Hr'g Tr.") (Filing No. 55-12 at ECF p. 4); *see Fields* v. Wise Media, No. 3:12-cv-5160, Filing 60 (minute entry referring action to magistrate judge for settlement conference).

3

unreasonable, inadequate, and detrimental to the interests of class members. Filing No. 39, Intervenor's Brief at 5-8 (Filing No. 39 at ECF p. 5-8).

The record shows that in the Washington case, the district court denied Mobile Messenger's motion to compel arbitration or dismiss. Filing No. 55, Index of Evid., Ex. M, Transcript of *Geier* Hearing dated Oct. 17, 2013 ("*Geier* Hr'g Tr.") at 52-58 (Filing No. 55-14 at ECF pp. 52-58).[5] That action is set for trial on April 6, 2015. *Id.* at 59. Also, the district court in *Geier* has indicated that it would enter a stay of that litigation if this court were to preliminarily approve the class action settlement. *Id.* at 60 (Filing No. 55-14 at ECF p. 60). Court records indicate that M-Qube and Mobile Messenger have appealed the denial of the motion to compel arbitration or dismiss, and a motion for a stay pending that appeal is presently pending. *See Geier v. M-Qube, Inc.*, Case No. 2:13-cv-00354, Filing Nos. 39, Notice of Appeal, 40, Motion for Stay (W.D. Wash. Nov. 15, 2013).

Geier argues that the settlement proposed in this case subsumes his claims, and those of the purported class, in the Washington case. *See* Filing No. 55, Index of Evid., Ex. L, Transcript of hearing dated Oct. 29, 2013 ("Hr'g Tr.") at 30-32 (Filing No. 55-13 at ECF pp. 30-32);[6] *see also* Filing No. 55, Index of Evid., Ex. M, *Geier* Hr'g Tr. at 5-6 (Filing No. 55-14 at pp. 5-6) (statement by Mobile Messenger's counsel that the Washington plaintiffs would be bound by the class action settlement herein). Geier asserts that the alleged potential charges at issue exceed $225 million nationwide,

---

[5] The district court in the *Geier* case was made aware of the pendency of this action at the hearing on the motion to compel. *See* Index of Evid., Ex. M, Geier Hrg. Tr. at 5-6 (Filing No. 55-4 at ECF p. 5-6).

[6] Counsel for purported intervenors David Hanson and Kristian Kunder represented at the hearing on this matter that the defendants herein were asked to "carve out" the *Fields* matter (the California action), but they refused. Filing No. 55, Index of Evid., Hr'g Tr. at 28 (Filing No. 55-13 at 28).

exclusive of the exemplary or punitive damages allowed in jurisdictions such as Washington. Filing No. 39, Intervenor's Brief at 4; *see also* Filing No. 56, Index of Evid., Ex. 6, Wedd Decl. at 7 (Filing No. 56-5 at ECF p. 7) (noting that the damages sought in the *Fields* case were $780 million and in the *Geier* case, $225 million). He contends that his recovery under the settlement herein would be substantially less than he would be entitled to recover under Washington consumer protection laws. Filing No. 39, Brief at 4-5 (Filing No. 39 at ECF pp. 4-5).

The parties have submitted a Stipulation of Settlement ("Settlement" or "Agreement") and seek preliminary approval of that Agreement. Filing No. 30, Brief, Ex. A, Stipulation of Settlement (Filing No. 30-1). The parties seek certification of a class consisting of:

> All current and former Wireless Subscribers Nationwide, who, at any time from January 1, 2010 to the Notice Date: (a) incurred any charge, whether paid or not, for Mobile Content associated with any Released Party; (b) received any message from any Premium Short Code or through any Wireless Carrier-billed program offered by or administered through any Released Party; or (c) received any message or incurred any charge, whether paid or not, related to any Premium Short Code or Wireless Carrier billed program offered by or administered through any Released Party.

Filing No. 30, Ex. A, Stipulation of Settlement at 10 (Filing No. 30-1 at ECF p. 11) . A "premium short code" is defined in the agreement as "any short code that appeared, or at any time after January 1, 2010, was equipped to appear on a Settlement Class member's mobile phone bill in conjunction with a separate charge." *Id.* at 8 (Filing No. 30-1 at p. 9). Mobile Messenger agrees to provide a settlement fund of $6 million, from which all approved claims, claims, notice expenses, claims administration expenses,

5

incentive awards, and attorney fees will be paid.[7]  *Id.* at 12 (Filing No. 30-1 at ECF p. 13).  In addition, Mobile Messenger agrees to make certain "service improvements and assurances relating to the complained-of conduct," including a new process for administering premium SMS opt-ins for its Mobile Content provider clients for three years with a requirement that "Mobile Messenger Companies or Wireless Carriers, and not any Third Party Content Provider, must themselves control and be responsible for administering and confirming all Wireless Subscribers opt-ins to Mobile Content charges administered through short codes operating through the Mobile Messenger system" and must maintain records.  *Id.* at 16-19 (Filing No. 30-1 at ECF pp. 17-20); Ex. 2, Notice of Proposed Settlement at 2 (Filing No. 30-1 at ECF p. 47).  The Agreement provides for a refund in the amount of $100.00 to settlement class members for each unsolicited text from any premium short code administered through Mobile Messenger.  *Id.* at 19 (Filing No. 30-1 at ECF p. 20).  The agreement further provides that if there are funds remaining after paying the claims and expenses, the remaining funds are the property of Mobile Messenger.  *Id.* at 26 (Filing No. 30-1 at ECF p. 25).

> The Settlement purports to release and discharge liability for all claims against:
>
> [A]any and all of the following parties, as well as their marketing agents and/or licensors and including and any of their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, companies under common ownership and control and any and all of their past, present and future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, representatives, subrogees and assigns, those Released Parties including without limitation: (i) Defendants, Mobile Messenger, the Wireless Carriers, and the Third Party Content Providers; (ii) Game Theory, LLC; Edoc Ventures, LLC; Elsie Bay Holdings, LLC; Forest Bay Holdings, LLC; Lovac Ventures, LLC; Mobile Plus, Inc.; True Digit, LLC; Sandy Hill Bay Holdings, LLC;

---

[7] The agreement also provides that if the $6,000,000.00 fund is depleted, Mobile Messenger will contribute an additional $500,000.00 to the fund.  *Id.* at 20 (Filing No. 30-1 at ECF p. 21).

> Savanah Bay Holdings, LLC; Social Hour; Viveli, Inc.; Third Wind Productions, LLC; Crow Enterprises, LLC; Little Harbour Holdings, LLC; Windward Point Holdings, LLC; Mobile Sapphire, LLC; Dormart, LLC; and PlayPhone, Inc.; and (iii) Certain parties (John Does 1 through 74), the identities of each of whom are known to Class Counsel and Mobile Messenger's Counsel.

*Id.* at 9 (Filing No. 30-1 at p. 9). The agreement further provides that the identities of John Does 1 through 74 are "known to Class Counsel and Mobile Messenger's Counsel and will be made available to any Settlement Class member who requests such information and executes a confidentiality agreement, the form of which shall be agreed upon by the Parties prior to the issuance of any notice under the Notice Plan." *Id.* at 8 (Filing No. 30-1 at ECF p. 9). Further, the agreement excludes numerous other content providers including "any Third Party Content Provider who charged for Mobile Content through Premium Short Codes 23532, 23687, 40339, 76363, 77899, 98411, 22522 or 89474." *Id.* at 9 (Filing No. 30-1 at ECF p. 10).

The Settlement proposes a notice plan that includes "Direct notice, Internet publication Notice and targeted Internet Advertising," disseminated via postcard or email. *Id.* at 26-27 (Filing No. 30-1 at ECF p. 27-28). The parties propose that Ben Barlow and Ralph Phalen be appointed class counsel and submit the resumes of those attorneys. Filing No. 30, Ex. B (Filing No. 30-2 at ECF 1-9). The Settlement Class members must submit claims under penalty of perjury and must provide information including names, addresses, telephone numbers, wireless numbers that received messages, dates, descriptions, and amounts of subscription charges, total amounts of refunds sought, statements that the charges were unauthorized, and statements that the class member has not received a refund from any source for the charges. *Id.,* Ex. 1, Claim Form (Filing No. 30-1 at ECF p. 42-44); Ex. 2, Notice (Filing No. 30-1 at pp. 45-

7

51). The parties propose the appointment of Dahl Administration, LLC, as class administrator. *Id.* at 4, 7 (Filing No. 30-1 at ECF p. 5, 8).

The settlement also provides for payment of up to $635,000.00 to class counsel for attorney fees. *Id.* at 6 (Filing No. 30-1 at ECF p. 7). Further, the agreement provides that if more than 3,000 settlement class members request exclusion from the class, Mobile Messenger has the right to terminate the agreement. *Id.* at 30 (Filing No. 30-1 at ECF p. 31). The parties assert that they "engaged in extensive, arm's-length, and hard-fought negotiations over several months, including a mediation session." Filing No. 30, Plaintiff's Brief at 1-2 (Filing No. 30 at ECF p. 1-2).

II. LAW

A. Intervention

Under the Federal Rules, intervention as a matter of right is allowed on timely motion when anyone "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see South Dakota ex rel. Barnett v. United States v. Department of Interior,* 317 F.3d 783, 785 (8th Cir. 2003). In short, the rule provides that a party seeking mandatory intervention must establish that: (1) it has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by the existing parties. *Id.* A proposed intervenor must satisfy all three conditions to intervene as a matter of right. *Id.* Motions to intervene in a class action should be construed liberally in favor of the proposed intervenors. *In re Uponor,*

*Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1065-66 (8th Cir. 2013).

Typically, showing that interests are not adequately protected presents a minimal burden. *South Dakota ex rel. Barnett,* 317 F.3d at 785; *see* Fed. R. Civ. P. 24(a) advisory committee note ("A class member who claims that his 'representative' does not adequately represent him, and is able to establish that proposition with sufficient probability . . . should as a general rule, be entitled to intervene in the action."). *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs.*, 60 F.3d 1304, 1307-08 (8th Cir. 1995) (finding that intervention is proper requires only that the disposition of the action may as a practical matter impair interests). Courts have allowed intervention by objectors to proposed class settlements based on allegations that the proposed settlement provides insufficient value, an overbroad release, or deficient notice. *See, e.g., Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 689-90 (D. Minn. 1994) (finding the proposed intervenors satisfied the minimal showing necessary on a showing that the intervenor's position put them at odds with class counsel).

Whether a motion to intervene is timely depends on (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties. *In re Uponor, Inc.,* 716 F.3d at 1065-66 (8th Cir. 2013).

Further, the court may, in its discretion, permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In exercising its discretion, the court must consider whether the

9

intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(3). Although the adequacy of protection is only a minor variable in the Rule 24(b) decision calculus, it is not an illegitimate consideration, and can be a legitimate rationale for denying a permissive intervention motion. *South Dakota ex rel. Barnett,* 317 F.3d at 787-88.

      B.    Class Action Settlement

Under the Federal Rules of Civil Procedure, "one or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (describing requirements as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation). "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994). Certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *Comcast Corp v. Behrend,* 133 S. Ct. 1426, 1433 (2013).

A number of factors are relevant to the numerosity requirement of Rule 23(a), "the most obvious of which is, of course, the number of persons in the proposed class." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982); *compare Tate v.*

*Weyerhaeuser Co.*, 723 F.2d 598, 609 (8th Cir. 1983) (noting that seven to fourteen class members is not enough) with *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1323 (8th Cir. 1991) (finding that 1,685 potential plaintiffs was a sufficiently large number). A putative representative may fail its burden to show numerosity where he or she does not actually identify even the approximate size of the class or demonstrate the impracticability of joinder. *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983).

In addition to the size of the class, the court also considers the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton*, 688 F.2d at 559-60; *Tate*, 723 F.2d at 609 (it is appropriate for the district court to consider "that trying the individual suits would not be inconvenient because it could examine the factual basis of" each class member's complaint).

The commonality requirement is satisfied if the claims of the class "depend upon a common contention" whose "truth or falsity will resolve an issue that is central to the validity" of each class member's claims. *Dukes*, 131 S. Ct. at 2551. Commonality is not required on every question raised in a class action. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Rather, "[R]ule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *Id.* (quoting *Paxton*, 688 F.2d at 561). The plaintiffs' claims must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *Dukes*, 131 S. Ct. at 2545.

11

Typicality under Rule 23(a)(3) means "that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)).  The burden is fairly easily met so long as other class members have claims similar to the named plaintiff.  *Id.* (noting that factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory).

The adequacy of representation requirement of Rule 23(a)(4) is of critical importance in every class action. *Hervey v. City of Little Rock*, 787 F.2d 1223, 1230 (8th Cir. 1986).  The "adequacy of representation" inquiry reflects concerns about whether the class representatives have common interests with the members of the class and whether they and their counsel will competently and vigorously pursue the lawsuit.  *Id.*; *Paxton*, 688 F.2d at 562-63.

If the requirements of numerosity, commonality, typicality, and adequacy are satisfied, a plaintiff must satisfy one of the three subsections of Rule 23(b). *In re St. Jude Medical, Inc.,* 425 F.3d 1116, 1119 (8th Cir. 2005).  Rule 23(b)(3) provides that a class action may be maintained if the court finds the questions of law or fact common to members of the class predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the dispute.  *Id.*; Fed. R. Civ. P. 23(b)(3).  The matters pertinent to the Rule 23(b)(3) inquiry include:  the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the

12

controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). "[T]he focus of Rule 23(b)(3) is on the predominance of common *questions*," the merits may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Amgen Inc. v. Connecticut Ret. Plans and Trust Funds,* 133 S. Ct. 1184, 1195 (2013). "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* at 1191. The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member. *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013).

In addition to the Rule 23(a) and (b) requirements, Rule 23(c)(1)(B) requires that "[a]n order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." "Rule 23(e) 'imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims.'" *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995)).

In considering preliminary approval of a proposed settlement in a class action case, the court makes a preliminary evaluation of the fairness of the settlement, prior to issuance of notice. Manual of Complex Litigation (Fourth) § 21.632 (2010) (hereinafter, "Complex Litig. Manual"). First, the court must make a preliminary determination of the

fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the proposed settlement and the date of the fairness hearing. *Id.* After an agreement is preliminarily approved, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval.[8] *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). A court may also consider procedural fairness to ensure the settlement is "not the product of fraud or collusion." *Id.* at 934. The court considers the experience and opinion of counsel on both sides, as well as whether a settlement has resulted from arm's length negotiations and whether a skilled mediator was involved. *See DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). The court may also consider the timing of the settlement, including whether discovery has proceeded to the point where all parties are fully aware of the merits. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir. 1996).

"Class actions certified solely for settlement, particularly early in the case, sometimes make meaningful judicial review more difficult and more important." Complex Litig. Manual (Fourth) § 21.612 (2004). Such "settlement class actions" require "closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process." *Id.* Moreover, there are "a number of recurring potential abuses in class action litigation that judges should be wary of as they review proposed settlements." Complex Litig. Manual, § 21.61. They

---

[8] A district court is required to consider four factors in making a final determination that a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Federal Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005).

include, among other things, conducting a "reverse auction," in which a defendant, seeing competing class cases, cherrypicks the attorneys willing to accept the lowest class recovery, in exchange for enhanced fees; the voluntary dismissal of class claims for "strategic purposes," such as forum shopping or to obtain more favorable settlement terms; cumbersome claims procedures that make it likely that many members will not claim benefits, particularly if the settlement provides that the unclaimed portions of the fund will revert to the defendants; and releasing claims against parties who did not contribute to the class settlement. *Id.; see also id.* § 21.271 (describing a "reverse auction" settlement as one in which a defendant seeks to settle with counsel willing to accept the lowest offer).

"[P]reliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *Martin v. Cargill, Inc.*, No. 13-2563, 2013 WL 5806165, *3 (D. Minn. Oct. 29, 2013); *accord In re Wireless,* 396 F.3d at 932 (court must "act[ ] as a fiduciary, serving as a guardian of the rights of class members"). Indeed, the court must be particularly scrupulous because preliminary approval establishes an initial presumption of fairness.'" *In re General Motors Corp.*, 55 F.3d at 785.

Under the "first to file rule," where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case. *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir.1985). Absent compelling circumstances, "'the court initially seized of a controversy should be the one to decide the case.'" *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Haydu,* 675 F.2d 1169, 1174 (11th Cir. 1982); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle

15

is to avoid duplicative litigation."). This rule recognizes the comity concerns between coequal federal courts and promotes efficient use of judicial resources by authorizing a latter-filed, substantially similar action's stay or dismissal in deference to an earlier case. *Orthmann*, 765 F.2d at 121. The first-filed rule "is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice." *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993). However, "[t]he prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply." *Id.*

    III. DISCUSSION

The court first finds Richard Geier's motion to intervene should be granted. First, the court finds the motion is timely. This action has only been pending since June, and the litigation has not progressed past the initial pleading stage. No discovery has been conducted. The prospective intervenor filed to intervene shortly after becoming aware of the litigation and proposed settlement. There has not been any significant delay in seeking intervention. The court also finds the intervenor has an interest in the subject of this action. Also, as discussed below, the court finds the intervenor's objections to the proposed settlement are well taken.

The court finds that the intervenor has made a satisfactory showing that his interests are not adequately represented by the parties to the lawsuit. Mobile Messenger has no motivation to protect the interests of the intervenor, who is an adversary in another action. The differences in the law of the two jurisdictions where cases remain pending (notably the absence of a punitive damages remedy in Nebraska)

make it less likely that the intervenor's interests, and those of the putative class he seeks to represent, can be adequately protected.

The court next finds that the proposed settlement should not be approved at this time. First, the parties have not shown that they are entitled to prosecute the action as a class action on behalf of similarly situated individuals. The court finds that the parties have not satisfied the burden of showing numerosity, commonality, typicality and adequacy of representation. After consideration of the number of persons in the proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds the parties' motion for preliminary approval must be denied.

On this record, the court is unable to conclude that the core of the plaintiff's action is common to the claims of other putative class members. Potential defenses such as consent to the charges have not been adequately explored. The parties have conducted no discovery and have not provided evidence of the potential size of the class. The court has not been presented with evidence that enables it to gauge the overall value of the proposed class's claims and, hence, to evaluate the fairness and adequacy of the settlement.

In addition, the parties have presented only generalities about the relative strengths and weaknesses of the parties' respective positions. The stated rationale for the settlement is avoiding costs of litigation and the uncertainty of outcome, but those rationales exist in most, if not all, class actions and could justify a wide range of possible outcomes. The existing record does not provide any evidence or method by which the

court can determine the class members' potential ranges of recovery or their chances of collecting a verdict. Accordingly, the court is unable to make any reasoned assessment of the value of the putative class members' claims.

The procedural posture of the case exacerbates the problem. No formal discovery or preliminary motion practice has yet occurred. The parties seek the court's approval of the settlement based only on their own unsupported statements that it is fair, adequate, and reasonable. The existence of other similar, earlier-filed actions in other jurisdictions further complicates the issue. Further, there is evidence that suggests the proposed settlement herein may be an attempted "end run" around the admonishment in the California case not to conduct pre-class-action-certification settlement negotiations.

The court is troubled by numerous aspects of the proposed settlement. The intervenors contend that over $225 million in fraudulent charges is at issue. The parties concede that there are at least hundreds of thousands, if not millions, of people in the potential class. A settlement fund of $6 to $6.5 million seems inadequate in the face of alleged losses of such magnitude. The lack of notice to class members of the identities of released parties is particularly problematic.[9] The lack of transparency makes the court question the extent to which the proposed settlement would actually benefit class members. The agreement also provides for payment to attorneys first, depleting the fund, and provides for unclaimed funds to revert to the defendant. Also, the court

---

[9] Although Mobile Messenger's counsel stated at the hearing that the identities would be disclosed to the court, that remedy does not solve the problem of the class members' informed consent to be bound by the settlement.

18

cannot evaluate the efficacy of the notice process, and the claims process seems overly onerous and may result in the denial of valid claims.

The pending similar cases in other districts raise the specter of a "reverse-auction" type of situation.  In light of its timing, the pendency of other actions, the size of the class, the amount of the settlement and some "red flags" that could be signs of potential abuse or collusion, the court finds that the parties' motion for preliminary approval should be denied at this time.  Accordingly,

IT IS ORDERED:

1. Richard Geier's motion to intervene (Filing No. 38) is granted.

2. David Hanson and Kristian Kunder's motion to intervene ( Filing No. 32) is denied as moot.

3. Intervenor Richard Geier's objections to the proposed settlement agreement are sustained.

4. Plaintiff Cullan and Cullan's motion for preliminary approval of class action settlement (Filing No. 29) is denied without prejudice.

5. The stay of briefing (Filing No. 48) on the pending motions to dismiss or compel arbitration (Filing No. 17 and Filing No. 20) is lifted.

6. The plaintiff shall respond to pending motions within two weeks of the date of this order.

7. A telephonic status hearing is scheduled for **February 6, 2014, at 11:00 a.m.** (CST).  Please email chambers at bataillon@ned.uscourts.gov indicating whether you will be participating in the status hearing and, if so, the phone number where you can be reached.

8. The parties shall also brief the issue of whether this action should be transferred to the District of Washington under the first-filed rule within two weeks of the date of this order; Intervenor Geier may respond thereto within one week thereafter.

DATED this 30th day of January, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge