# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CULLAN AND CULLAN LLC, On behalf of itself and all others similarly situated, | Case No. 8:13-cv-00172 |
| Plaintiff, | |
| v. | The Honorable Joseph F. Bataillon |
| M-QUBE, INC., *et al.*, | |
| Defendants. | |

## AMENDED AND RESTATED STIPULATION OF SETTLEMENT

This Amended and Restated Stipulation of Settlement (the "Agreement") is entered into by and among Plaintiff in this Action, for itself individually and on behalf of the Settlement Class, and Mobile Messenger Americas, Inc., m-Qube, Inc. ("m-Qube"), and CF Enterprises Pty., Ltd. ("CF Enterprises") (collectively, "Defendants") (together, the "Parties"). Subject to Court approval of this Agreement, in accordance with applicable law, the Parties hereby stipulate and agree that, in consideration of the mutual promises, covenants, and consideration set forth in this Agreement, and upon the occurrence of the Effective Date, this Action together with the Settled Claims of the Settlement Class shall be settled and compromised upon the terms and conditions contained herein.

1. **RECITALS**

1.1   WHEREAS, Plaintiff filed an action captioned *Cullan and Cullan LLC v. Mobile Messenger Americas, Inc., et al.,* No. 8:13-cv-00172 (District of Nebraska) (the "Complaint"), alleging claims for damages and injunctive relief against Mobile Messenger, m-Qube, Inc., and

1

CF Enterprises Pty. Ltd., arising out of alleged unsolicited text messages sent from Premium Short Codes related to Mobile Content, such as ring-tones, news and information alerts, and other digital and electronic content to wireless telephone subscribers, and the sale and billing of allegedly unauthorized Mobile Content to wireless telephone subscribers;

    1.2    WHEREAS, Mobile Messenger provides services to the Mobile Messenger group of companies, supporting the nation's public mobile network operators in making the carrier SMS and MMS messaging infrastructure available to enterprises for interaction with wireless subscribers, and providing specialized services and specialists in the area of consulting, customer support, and premium SMS billing and reporting services to those enterprises, the enterprises including political committees, advocacy organizations, charities, retail merchants, and online merchants wishing to sell Mobile Content or other services via mobile subscription and mobile payments;

    1.3    WHEREAS, Mobile Messenger is contracted by those network operators to provide those services in a manner that comports with the network operator rules and guidelines intended to safeguard consumer interests;

    1.4    WHEREAS, Defendants, including Mobile Messenger, have denied and continue to deny all Plaintiff's claims in the Action;

    1.5    WHEREAS, Class Counsel have conducted an examination and investigation of the facts and law relating to the matters set forth in the Action regarding the claims and potential defenses of Defendants, and have received sufficient discovery to do so;

    1.6    WHEREAS, the Parties have engaged in arms-length negotiations, including in person mediation presided over by the Hon. Wayne Andersen (ret.) at JAMS, whereby they were able to exchange information and reach material terms of this Agreement and continued

negotiations subsequent to the October 29, 2013 hearing before the Court, as well as a mediation before Magistrate Judge Thomas D. Thalken on February 5, 2014, and continued negotiations thereafter;

1.7     WHEREAS, based upon extensive analysis of the facts and the law applicable to Plaintiff's claims in the Action, and taking into account the burdens and expense of such litigation, including the risks and uncertainties associated with protracted trials and appeals, and the order of Judge Alsup denying class certification in *Fields et al. v. Wise Media, LLC et al*, No. 3:12-cv-05160 (N.D. Cal), which further validated the fair, cost-effective and assured method of resolving the claims of the Settlement Class, Class Counsel have concluded that this Agreement provides substantial benefits to the Settlement Class and the public as a whole, and is fair, reasonable, adequate, and in the best interests of Plaintiff and the Settlement Class;

1.8     WHEREAS, Defendants have similarly concluded that this Agreement is desirable in order to avoid the time, risk and expense of defending multiple and protracted litigations, and to resolve finally, completely, and globally the pending and potential claims of Plaintiff and the Settlement Class, and thus to resolve all of the litigation regarding the allegations of the Settlement Class in this Action relating to the Settled Claims;

1.9     WHEREAS, the Parties agree that Settled Claims do not include claims based on sending unsolicited text messages via phone numbers that are not Premium Short Codes; and

1.10     WHEREAS, the Parties agree that all potential Settlement Class members shall have an individual right to exclude himself, herself, and itself from the Settlement Class.

NOW, THEREFORE, the Parties stipulate and agree that any and all Settled Claims against all Released Parties, including but not limited to claims relating to the manner of the sale and billing of Mobile Content attributable to Mobile Messenger, shall be finally settled and

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

resolved on the terms and conditions set forth in this Agreement, subject to Court approval of this Agreement, as a good faith, fair, reasonable, and adequate settlement.

## 2.   **DEFINITIONS**

As used in this Agreement, in addition to any definition set forth elsewhere in this Agreement, the following terms shall have the meanings set forth below:

2.1   "*Action*" means the case captioned *Cullan and Cullan LLC v. M-Qube, Inc., et al.,* No. 8:13-cv-00172 (District of Nebraska).

2.2   "*Agreement*" means this Amended and Restated Stipulation of Settlement, including all exhibits hereto.

2.3   "*Approved Claim*" means a claim by a Settlement Class member submitted on a Claim Form that is submitted before the Claims Deadline, and that fairly provides the requested information and complies with the requirements set forth in Section 6.3 below.

2.4   "*Claimant*" means a Person that submits a Claim Form for a Settlement Benefit.

2.5   "*Claim Form*" means the form attached hereto as Exhibit C, as approved by the Court.

2.6   "*Claims Administration Expenses*" means the expenses incurred by the Claims Administrator in handling Claim Forms submitted by Settlement Class members pursuant to this Agreement, including Notice Expenses.

2.7   "*Claims Administrator*" means Dahl Administration, LLC, or such other company with expertise in claims administration in class actions that the Parties select, subject to approval by the Court, which shall oversee the processing and payment of Settlement Class members' Claim Forms as set forth in this Agreement.

4

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

2.8     *"Claims Deadline"* means the date by which all Claim Forms must be received to be considered timely and shall be set as the date sixty (60) days after the date set for the Fairness Hearing, except for good cause shown as set forth herein.  The Claims Deadline shall be clearly set forth in the Court's order granting preliminary approval of this Agreement, and on the front page of all Claims Forms.

2.9     *"Class Counsel"* means attorneys Ben Barnow of Barnow and Associates, P.C., and Ralph K. Phalen of Ralph K. Phalen Law, P.C.

2.10    *"Class Representative"* means Plaintiff.

2.11    *"Court"* means the United States District Court for the District of Nebraska.

2.12    *"Defendants"* means Mobile Messenger, m-Qube, and CF Enterprises.

2.13    *"Effective Date"* means the date, if any, on which the Judgment entered pursuant to this Agreement becomes final and not subject to appeal under the applicable law or, in the event of a timely appeal from the entry of the Judgment, the date on which such appeal is resolved affirming the Judgment in all material respects and the Judgment is not subject to further judicial review.

2.14    *"Fairness Hearing"* means the hearing to be conducted by the Court to determine the fairness, reasonableness, and adequacy of this Agreement in accordance with applicable jurisprudence.

2.15    *"Fee Award"* means the amount of attorneys' fees and reimbursement of costs and expenses awarded by the Court to Settlement Class Counsel up to the Maximum Fee Amount.

2.16    *"Judgment"* means the order and or judgment to be entered by the Court approving this Agreement, without modifications that are unacceptable to   Plaintiff or

Defendants, as fair, reasonable, and adequate in accordance with applicable jurisprudence, confirming the certification of the Settlement Class, and issuing such other findings and determinations as the Court or the Parties deem necessary and appropriate to effectuate the terms of this Agreement.

2.17   "*m-Qube, Inc.*" means the affiliated company under common control with Mobile Messenger who provides messaging gateway services to the Wireless Carriers.

2.18   "*Maximum Fee Amount*" means the limit of the amount of attorneys' fees and reimbursement of costs and expenses to be requested by Class Counsel, specifically, six hundred and thirty five thousand dollars ($635,000.00).

2.19   "*Message Claim*" is the claim submitted in accordance with this Agreement by a Settlement Class member that sets forth each of the unsolicited text messages covered by this Agreement that the Settlement Class member asserts that the Settlement Class member received.

2.20   "*Mobile Content*" refers to content, applications, and goods and services, such as ring tones, wallpaper, news and information alerts, and other digital and electronic content charged to the wireless bill of a Wireless Subscriber.

2.21   "*Mobile Messenger*" means Mobile Messenger Americas, Inc., and all of its current and former parents, subsidiaries and affiliates, predecessors, successors and assigns, including without limitation m-Qube, Inc., as well as directors, officers, employees, agents, and shareholders of each of them.

2.22   "*Mobile Messenger's Counsel*" means attorney Ari N. Rothman of Venable LLP.

2.23   "*Nationwide*" means the 50 United States of America and the District of Columbia, Puerto Rico, U.S. Virgin Islands, Guam, and any other recognized territory of the United States.

2.24   *"Notice Date"* means the date upon which Settlement Class Notice is first disseminated to the Settlement Class, other than filing with the Court.

2.25   *"Notice Expenses"* means all reasonable costs and expenses expended in the execution of the Notice Plan, including (a) all reasonable costs and expenses incurred in connection with preparing, printing, mailing, disseminating, posting, promoting, emailing, Internet hosting and publishing the Settlement Class Notice to the Settlement Class of the proposed settlement, identifying and notifying members of the Settlement Class and informing them of the proposed settlement and (b) any necessary notice and notice-related expenses.

2.26   *"Notice of Intention to Appear and Object"* is the written communication that may be filed by a Settlement Class member in order to object to the approval of this Agreement.

2.27   *"Notice Plan"* means the proposed plan of disseminating notice to the Settlement Class of this Agreement and the Fairness Hearing.

2.28   *"Notice Provider"* means Dahl Administration, LLC, or such other notice provider with recognized expertise in class action notices as may be jointly agreed upon by the Parties and approved by the Court.

2.29   *"Opt-Out Period"* means the period for a Settlement Class member to file a Request for Exclusion to be set by the Court in this action. The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

2.30   *"Parties"* means Plaintiff and Defendants collectively.

2.31   *"Person"* means any individual, corporation, trust, partnership, limited liability company, or other legal entity, and their respective predecessors, successors or assigns.

2.32   *"Plaintiff"* means Cullan and Cullan LLC.

7

**AMENDED AND RESTATED STIPULATION OF SETTLEMENT**

2.33    *"Preliminary Approval"* means the Court's conditional certification of the Settlement Class, preliminary approval of this Agreement, and approval of the form and methods of dissemination of the Settlement Class Notice and the Notice Plan.

2.34    *"Premium Short Code"* means any short code that appeared, or at any time after January 1, 2010, was equipped to appear, on a Settlement Class member's mobile phone bill in conjunction with a separate charge.  "Premium Short Code" excludes any short code or other phone number that did not appear, and was not equipped to appear, on any Settlement Class member's mobile phone bill in conjunction with a separate charge.

2.35    *"Released Party"* means any and all of the following parties, as well as their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, companies under common ownership and control and any and all of their past, present and future officers, directors, employees, stockholders, licensors, partners, agents, marketing agents, servants, successors, attorneys, representatives, subrogees and assigns, those Released Parties, including without limitation, Defendants, Mobile Messenger, the Wireless Carriers, and the following Third-Party Content Providers:  Game Theory, LLC; Edoc Ventures, LLC; Elsie Bay Holdings, LLC; Forest Bay Holdings, LLC; Lovac Ventures, LLC; Mobile Plus, Inc.; True Digit, LLC; Sandy Hill Bay Holdings, LLC; Savanah Bay Holdings, LLC; Social Hour; Viveli, Inc.; Third Wind Productions, LLC; Crow Enterprises, LLC; Little Harbour Holdings, LLC; Windward Point Holdings, LLC; Mobile Sapphire, LLC; Dormart, LLC; PlayPhone, Inc.; and any other entity that is identified in the Settlement Class Notice by company name or the short code or the billing descriptor that appeared on the Class Member's phone bill, as set forth in Exhibit A or B.  "Released Party" excludes any and all of the following entities, and any and all of their parent companies, subsidiaries, and affiliated companies under common control, and any

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

of their past, present or future officers or directors to the extent that they occupied those roles during the time that such entity acted as a Third-Party Content Provider, those parties being: (a) Jesta Digital, LLC f/k/a Fox Mobile Distribution d/b/a "Jamster," US Mobile Holdings, LLC, Netherlands Mobile Holdings C.V., Jamba Netherlands Mobile Holdings GP B.V., Web Direct Media, Inc., POW! Mobile Corp., Mobilefunster, Inc., Dada Mobile Inc. aka Dada USA Inc., Funmobile FZ LLC, Wise Media LLC, The Winley Group LLC, Great Reward Offers, LLC, and (b) Mobile Media Products, LLC; Tatto, Inc.; Bullroarer, Inc.; Shaboom Media, LLC; Bune, LLC; Chairman Ventures, LLC; Galactic Media, LLC; Virtus Media, LLC; Lin Miao; Andrew Bachman; and any persons and entities under common ownership and control with any of the foregoing, and those persons and entities in active concert or participation with any of the foregoing.

2.36    *"Releasing Party"* means Plaintiff and each member of the Settlement Class and any Person claiming by or through Plaintiff's or any Settlement Class member's spouse, child, heir, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee, or affiliate.

2.37    *"Request For Exclusion"* is the written communication on behalf of a Settlement Class member that must be filed with the Claims Administrator that is postmarked on or before the end of the Opt-Out Period if a Settlement Class member wishes to be excluded from the Settlement Class.

2.38    *"Settled Claim"* or *"Settled Claims"* means any claim, liability, right, demand, suit, matter, obligation, damage, loss or cost, action or cause of action, of every kind and description that the Releasing Party has, or may have, against any Released Party relating to (a) unauthorized charges to Settlement Class members' mobile phone bills associated with the

billing descriptors and short codes or program names set forth on Exhibit A attached hereto, (b) messages sent to mobile devices via Premium Short Codes set forth on Exhibit B attached hereto, including claims related to the transmission of messages to Settlement Class members' mobile device; and (c) whether any Settlement Class members consented to receive messages sent to their mobile devices associated with any Released Party.  Settled Claims include assigned claims, whether known or unknown or suspected to exist, asserted or unasserted, latent or patent, that is, has been, could have been or in the future might be asserted by the Releasing Party either in the Action or in any other action or proceeding in this Court, or any other court, tribunal or forum, regardless of legal theory, and regardless of the type or amount of relief or damages claimed, against any Released Party, including all claims that were brought or could have been brought in the Action, involving any allegation or contention on any basis that any charge for Mobile Content associated with the programs set forth on Exhibit A was unauthorized or that any message sent to any mobile device from any Premium Short Code set forth on Exhibit B was unsolicited or unlawful.  Settled Claims include allegations or contentions that the Mobile Content charges or messages associated with any Released Party were the result of fraudulent or misleading marketing or billing practices, "cramming," or that they were the result of the imposition of charges for Mobile Content authorized by the previous owner of a mobile number, i.e. "recycled" numbers.  The release is only given for said Settled Claims.  To avoid any doubt, there is no release for future claims.  However, any Class member who does not opt out pursuant to this Agreement cannot later claim that the Class member did not provide, prior to the Effective Date, prior express written consent to receive any text message administered through Mobile Messenger from a Premium Short Code registered at the CTIA to (a) any organization recognized as exempt from federal income taxation under I.R.C. § 501(c)(3) or I.R.C.

**AMENDED AND RESTATED STIPULATION OF SETTLEMENT**

§ 501(c)(4), or (b) federal political committees registered with the Federal Election Commission. Rather, claims based on the premise that a Class member did not provide prior express written consent to receive text messages from any organization recognized as exempt from federal income taxation under I.R.C. § 501(c)(3) or I.R.C. § 501(c)(4), or (b) federal political committees registered with the Federal Election Commission, would be based a theory that is being resolved through this Agreement, namely that the Class member provided prior express written consent prior to the Effective Date to receive such text messages. Nothing herein is intended to release any claims any governmental agency has against any Third-Party Content Provider.

Without limiting the generality of the foregoing, but subject to it, Settled Claims shall include, with regard to the foregoing subject matter:

(1)     any class, group, collective, or individual claim for any breach or violation of any federal or state statute or regulation as limited above, local ordinance, case law, common law or other law;

(2)     any claim for breach of any duty imposed by law, by contract or otherwise; and

(3)     any claim for damages, injunctive relief, declaratory relief, class damages or relief, penalties, punitive damages, exemplary damages, restitution, rescission or any claim for damages based upon any multiplication or enhancement of compensatory damages associated with the above.

There is no release for any unsolicited text message from any Premium Short Code administered through any entity other than Mobile Messenger.

2.39    "*Settlement Benefit*" means the benefits a Settlement Class member is entitled to receive pursuant to this Agreement.

2.40 "*Settlement Class*" means all current and former Wireless Subscribers Nationwide, who: (a) at any time from January 1, 2010, to the Notice Date, incurred any charge, whether paid or not, associated with any of the programs set forth on Exhibit A attached hereto; or (b) at any time from January 31, 2011, to the Notice Date, received any message from any Premium Short Code set forth on Exhibit B attached hereto; or (c) at any time from January 1, 2010, to the Notice Date, received any message from a Premium Short Code registered at the CTIA to (i) any organization recognized as exempt from federal income taxation under I.R.C. § 501(c)(3) or I.R.C. § 501(c)(4), or (ii) federal political committees registered with the Federal Election Commission.   Excluded from the Class are the following:   Defendants, the Claims Administrator, and any of aforementioned respective parent, subsidiary, affiliate and control persons of Defendants, as well as the officers, directors, agents, servants, and employees of Defendants, any trial judge presiding over this case, and the immediate family members of any such Person(s).

2.41 "*Settlement Class Notice*" means the form of Court-approved notice (or notices) of this Agreement that is directed to the Settlement Class.  The Parties have proposed that the Court approve the notices in the form attached to this Agreement as Exhibits D-E.

2.42 "*Settlement payments*" means that there is no limit with respect to Subscription Charge Claims, and is limited to $3,000,000 total with respect to all combined valid Message Claims, except as provided for in ¶10.3, *infra*.

2.43 "*Settlement Website*" means the website to be created by the Claims Administrator that will contain the complaint in the Action, the Court's order granting Preliminary Approval, and the Settlement Class Notice.  The Settlement Website will also identify key deadlines (*e.g.,* the Claims Deadline, the Request for Exclusion deadline, the

deadline for Settlement Class members to submit objections as set forth herein, the date of Fairness Hearing), instruct Settlement Class members on how to submit Claim Forms or Requests for Exclusion, and how to object. The Settlement Website shall also include a "Frequently Asked Questions" section, and enable Settlement Class members to update their contact information. The Settlement Website will also permit Settlement Class members to download, print, and mail their Claim Forms to the Settlement Administrator.

     2.44    *"Special Master"* means an independent person agreed upon by the Parties and approved by the Court to evaluate those Claim Forms that have been challenged by Mobile Messenger or rejected by the Claims Administrator after an initial appeals process.

     2.45    *"Subscription Charge Claims"* shall have the meaning set forth in Section 5.2.2 below.

     2.46    *"Third-Party Content Providers"* means Persons other than Mobile Messenger or the Wireless Carriers who accept donations, or advertise, offer, or sell Mobile Content, including Mobile Content subscriptions, directly to Wireless Subscribers and who utilize the billing or other services provided by Mobile Messenger, or any entity under common ownership or control with those Persons.

     2.47    *"Wireless Carrier"* means any entity that offers transmission services to users of wireless devices (handheld computers and telephones) through radio frequency signals rather than through end-to-end wire communication, such as the nation's public mobile network operators including without limitation AT&T Mobility, Verizon Wireless, T-Mobile USA, Inc., Sprint Nextel Corp, US Cellular, and Alltel Wireless.

     2.48    *"Wireless Subscriber"* means any Person who entered into a service agreement with any Wireless Carrier or otherwise paid for the wireless service from such Wireless Carrier.

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

3.      **FOR SETTLEMENT PURPOSES ONLY**

3.1     This Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only, and neither the fact of, any provision contained in this Agreement, nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as any admission of the validity of any claim or any fact alleged by Plaintiff in this Action or in any other pending or future action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of Defendants or admission by Defendants of any claim or allegation made in this Action or in any other pending or future action, nor as an admission by Plaintiff, Settlement Class members or Class Counsel of the validity of any fact or defense asserted against them in this Action or in any pending or future other action.

3.2     For purposes of this Settlement Agreement only,  Plaintiff and Defendants stipulate to the certification of the Settlement Class, which is contingent upon the occurrence of the Effective Date.  If the Court does not approve the Agreement in any material respect or if the Effective Date does not occur then this certification shall be void and this Agreement will not constitute, be construed as, or be admissible in evidence as any admission or be used for any purpose whatsoever in this Action or any other pending or future action.  The Court's certification of the Settlement Class shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement. Whether or not the Court enters the Judgment, and whether or not there is a Judgment, the Parties' agreement to class certification is for settlement purposes only, and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement, shall not be deemed to be any stipulation as to the propriety of class certification, or

14

any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims. In the event the Court does not enter the Judgment, or there is not a Judgment, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Settlement Class for settlement purposes shall be null and void. Nothing in this Agreement shall be argued as support for, or be admissible in, an effort to certify any class in this Court or any other court if this Court does not enter the Judgment and there is no Judgment, nor shall anything herein be admissible in any proceeding to certify this or any other classes in any other court under any circumstances.

3.3     This Agreement is without prejudice to the rights of Defendants to: (a) oppose class certification in this Action should this Agreement not be approved or implemented for any reason; (b) oppose certification in any other proposed or certified class actions; or (c) use the certification of the Settlement Class to oppose certification of any other proposed or existing class arising out of or in any manner related to the Settled Claims.

4.     **REQUIRED EVENTS AND COOPERATION BY THE PARTIES**

4.1     <u>Preliminary and Final Approval.</u>   Promptly after execution of this Agreement, Class Counsel shall submit this Agreement to the Court for its Preliminary Approval and shall move the Court for one or more orders, which by their terms shall:

> (a)     Appoint the Class Representative in the Action as the representative of the Settlement Class;
>
> (b)     Appoint Ben Barnow of Barnow and Associates, P.C., and Ralph K. Phalen of Ralph K. Phalen Law, P.C., as Class Counsel;
>
> (c)     Preliminarily and conditionally certify the Settlement Class under Federal Rule of Civil Procedure 23 for settlement purposes only and preliminarily

approve this Agreement for purposes of issuing the Settlement Class Notice;

(d)     Approve the form and contents of the Settlement Class Notice and the method of its dissemination to members of the Settlement Class;

(e)     Provide for confirmatory discovery; and

(f)     Schedule the Fairness Hearing to review comments and/or objections regarding this Agreement, to consider its fairness, reasonableness and adequacy, and the application for an award of attorneys' fees and reimbursement of costs and expenses and to consider whether the Court shall issue a Judgment approving this Agreement, granting Class Counsel's application for fees, costs, and expenses, and dismissing the Action with prejudice.

4.2     <u>Cooperation</u>.  The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court.

**5.     <u>SETTLEMENT BENEFITS</u>**

5.1.     <u>Service Improvements and Assurances</u>.

5.1.1     <u>Premium SMS Termination</u>.  Mobile Messenger and m-Qube ("the Mobile Messenger Companies") shall, as soon as practicable but in no event no later than thirty (30) days after Preliminary Approval of this Agreement is entered in this Action, terminate all current premium SMS programs operated through Verizon Wireless, AT&T, Sprint, T-Mobile, except SMS programs related to (a) organizations recognized as

exempt from federal income taxation under I.R.C. § 501(c)(3) or I.R.C. § 501(c)(4), and (b) federal political committees registered with the Federal Election Commission.

    5.1.2   <u>Service Improvements and Assurances</u>.   If the Mobile Messenger Companies resume premium SMS programs within two years of the Effective Date, then the Mobile Messenger Companies shall institute the following:

    Mobile Messenger and m-Qube (the "Mobile Messenger Companies") have agreed that they each shall, prior to the resumption of the discontinued services referenced in 5.1.1 above, institute the following:

    The Mobile Messenger Companies will themselves control and maintain for a minimum of three (3) years from the recommencement of the concerned services, a new process for administering premium SMS opt-ins for its Mobile Content provider clients. To comply with this Agreement, (i) Mobile Messenger Companies or Wireless Carriers, and not any Third-Party Content Provider, must themselves control and be responsible for administering and confirming all Wireless Subscribers opt-ins to Mobile Content charges administered through short codes operating through the Mobile Messenger systems; and (ii) the Mobile Messenger Companies or the Wireless Carriers must maintain records of the opt-ins.   Mobile Messenger Companies will permit no premium SMS enrollments that are not processed by the foregoing protocol.

    As an example, for enrollments by Wireless Subscribers through offers on the Worldwide Web, the process can entail at least the following steps to be operated and controlled by the Mobile Messenger Companies or the Wireless Carriers, and not by Third-Party Content Providers:

Calculate a one-time personal identification number ("PIN") for use by the Wireless Subscriber to confirm the Wireless Subscriber's opt-in to Mobile Content charges administered through short codes operating through the Mobile Messenger systems.

Hold that PIN in secret, such that it is not known by anyone other than the Wireless Subscriber until the premium Mobile Content enrollment is made, or the PIN has expired.

Compose a text message including that PIN and text that conspicuously advises the subscriber of the amount to be charged and the nature of the Mobile Content.

On behalf of the Third-Party Content Provider, permit that text message to be transmitted to the Wireless Subscriber.

Receive the PIN input by the Wireless Subscriber to confirm the charge.

Compare the PIN received to the PIN sent.

If the PIN received matches the PIN sent, compose a further advice of charge message.

On behalf of the Third-Party Content Provider, permit that text message to be transmitted to the Wireless Subscriber.

For each such enrollment, maintain a record of the time, date, phone number and content of at least: the request for PIN, the PIN, the PIN message, receipt of the PIN from the Wireless Subscriber, the confirmation message.

As a further example, for enrollments by Wireless Subscribers who text in a keyword in order to initiate a Mobile Content enrollment, the process entails at least the

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

following steps to be operated and controlled by the Mobile Messenger Companies or the Wireless Carriers, and not by Third-Party Content Providers:

Receive an incoming text message from the Wireless Subscriber.

Inspect the text message for the presence of the keyword.

If the keyword received matches the keyword designated to incur a Wireless Carrier charge, compose a message that conspicuously advises the subscriber of the amount to be charged and the nature of the Mobile Content, and instructs the Wireless Subscriber to text in a further re-confirmation text, such as "YES" or "Y."

On behalf of the Third-Party Content Provider, permit that text message to be transmitted to the Wireless Subscriber.

Receive an additional incoming text message from the Wireless Subscriber, and inspect it for the presence of that further re-confirmation text.

If that re-confirmation text is present, compose a further advice of charge message.

On behalf of the Third-Party Content Provider, permit that text message to be transmitted to the Wireless Subscriber.

For each such enrollment, maintain a record of the time, date, phone number and content of at least: the incoming message containing the keyword, the keyword, the confirmation message to the Wireless Subscriber, the incoming confirmatory text message from the Wireless Subscriber, the confirmation message transmitted to the Wireless Subscriber.

The measures set forth in this subsection consist of actions that Mobile Messenger itself will undertake, and by agreeing to undertake them the Parties agree that such

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

measures do not obligate or make Mobile Messenger responsible for the acts or omissions of others, including without limitation any aggregators, Wireless Carriers, or Third-Party Content Providers.  For the avoidance of doubt, any text messages transmitted through Mobile Messenger in this process are considered to be sent by the Third-Party Content Providers and not by Mobile Messenger, and by administering this process, Mobile Messenger is not considered to be operating, or admitting that it ever operated an automated telephone dialing system or that it is taking, or ever took, any steps in violation of the Telephone Consumer Protection Act or similar laws.  Should it be alleged in any regulatory investigation or in any lawsuit that administering this process violates the law, the Mobile Messenger Companies are permitted to suspend operation of this process until the matter is adjudicated, and that suspension will not be a violation of this Agreement.

5.2.    Refund Benefit

5.2.1. *Refunds*.  Subject to the occurrence of the Effective Date, Mobile Messenger shall refund to any Settlement Class member who timely submits a valid Claim Form and has an Approved Claim, as provided for in this Agreement, the amounts due pursuant to the valid Claim Form.  This claims process shall not foreclose the availability of refunds (including chargebacks) given directly to Settlement Class members by Third-Party Content Providers outside of the procedures set forth in this Agreement and no release language or provision in this Agreement shall in any way interfere with a Settlement Class member's entitlement to such refunds, funds, and chargebacks.

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

5.2.2  *Subscription Charge Claim.* Settlement Class members shall be entitled to a refund of all charges for Mobile Content associated with any program set forth on Exhibit A attached hereto to the extent such Settlement Class members did not previously receive a refund for such charges.

5.2.3  *Message Claim.* $100 for each unsolicited text message from any Premium Short Code set forth on Exhibit B attached hereto, subject to Section 2.42, *supra*, and Sections 5.2.4 and 10.3, *infra.*

5.2.4  Limit on Approved Message Claims and Proration of Same. If the total dollar value of all combined valid Message Claims exceeds $3,000,000, the per-unsolicited text message amount shall be reduced pro rata based on the total number of unsolicited text messages on the valid Message Claims. The termination provisions set forth in Section 10.3 shall apply if the pro rata amount per unsolicited text message would result in a settlement payment of less than $60 for each text message claimed in valid Message Claims.

5.3  Text Message Cell Phone Number Removal Option. Each Claim Form will include an additional option to remove any Settlement Class member's cell phone number from any list or database of numbers to which text messages could be sent by or on behalf of Defendants or any Third-Party Content Provider.

6.  **CLAIMS PROCESS**

6.1  Claims Administrator's Duties.

6.1.1  The Claims Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement by resolving Claim Forms in a rational, responsive, cost effective, and timely manner. All Claim Forms shall be validated by the

21

Claims Administrator to establish that the Person submitting the Claim Form has an Approved Claim.

      6.1.2   The Claims Administrator shall maintain detailed records of its activities under this Agreement.  The Claims Administrator shall maintain all such records as required by applicable law in accordance with their business practices and such records will be made available to Class Counsel and Mobile Messenger's Counsel.  Not later than fourteen (14) days before the Fairness Hearing, the Claims Administrator shall prepare and deliver to Class Counsel, who shall file with the Court, and Mobile Messenger's Counsel, a report stating the total number of Persons who have submitted timely and valid Requests for Exclusion from the Settlement Class, and the names of such Persons. Such Persons will not be entitled to receive any relief under this Agreement and will not be bound by any release contained herein.  The Claims Administrator shall also provide reports and other information to the Court as the Court may require.  The Claims Administrator shall provide Class Counsel and Mobile Messenger's Counsel with information concerning notice, administration, and implementation of the Agreement. Should the Court request, the Parties, in conjunction with the Claims Administrator, shall submit a timely report to the Court summarizing the work performed by the Claims Administrator, including a report of all monies paid to members of the Settlement Class on account of Approved Claims.

      6.1.3   The Claims Administrator shall cause the Settlement Website to be created according to the Claims Administrator's own instruction.  The Claims Administrator will establish a toll-free telephone support line that will provide Settlement Class members

with general information about the Action and which will contain responses to frequently asked questions about the Action and claim procedure.

6.2     Written and Electronic Claims Submission.   Settlement Class members are entitled to Settlement Benefits through submission of a Claim Form and the Claims Administrator's determination that such Settlement Class member has an Approved Claim. The Claims Administrator shall not commence its determination of whether a Claim Form represents an Approved Claim until after the occurrence of the Effective Date. The claims process shall be conducted online through the Settlement Website administrated by the Claims Administrator. If a Claim Form is submitted electronically, it must be posted on-line prior to the Claims Deadline. Any Settlement Class member unable to complete a Claim Form online may call a toll free number, provide their name and address, and receive a paper Claim Form. Paper Claim Forms may be mailed to the Claims Administrator and must be postmarked on or before the Claims Deadline. The Claims Administrator shall reject Claim Forms that are not timely in accordance with the above; provided, however, that nothing in this provision shall be construed to prevent the Claims Administrator, in its discretion, from permitting a Settlement Class member to remedy informational deficiencies in such Settlement Class member's Claim Form if otherwise timely.

6.3     Processing and Validation of Claim Forms

6.3.1   *Information Required.*

6.3.1.1 Each Claim Form must be signed by the Settlement Class member  and provide the following information: (a) the Settlement Class member's full name, current address, and telephone number, and any email address used in any communications with any Defendant; (b) the wireless number associated with the mobile device that received

**AMENDED AND RESTATED STIPULATION OF SETTLEMENT**

any message or incurred any charge for which the Settlement Class member requests a refund benefit under Section 5 of this Agreement; and (c) the information required below, as applicable.

6.3.1.2 Settlement Class members who submit a Claim Form for a Subscription Charge Claim must, in addition to the information set forth in Section 6.3.1.1, also provide to the best of their knowledge and recollection: (a)  the date, description, and amount of each charge for which a refund benefit for a Subscription Charge Claim is requested; (b) a statement that each such charge was unauthorized; (c) the total amount of the refund benefit requested for the Subscription Charge Claim and (d) a statement that the Settlement Class member did not request or receive a refund from any source for the charges for which a Refund Benefit for a Subscription Charge Claim is requested. If for any of the above, the Settlement Class member has no knowledge or recollection, the Class member shall write or type in "I do not know".  Except as provided for in 6.3.1.4 below, it is understood that the failure to provide adequate information to compute any refund that would be due under the Settlement Agreement, will result in no refund being due and thus no refund paid.

6.3.1.3 Settlement Class members who submit a Claim Form for a Message Claim must, in addition to the information set forth in Section 6.3.1.1 above, also provide: (a) the number of the mobile device that received each message for which a benefit is requested, and the number of messages that each such device received; (b) a statement that each such charge was unauthorized; (c) the total amount of the benefit requested for the Message Claim; and (d) a statement that the Settlement Class member did not request or receive a refund or credit from any source with respect to the Message Claim.

**AMENDED AND RESTATED STIPULATION OF SETTLEMENT**

6.3.1.4 For the avoidance of doubt, the Claims Administrator will endeavor to process any Claim Form submitted that includes a cell phone number that has received any unsolicited text message, the Settlement Class member's name and mailing address, even if the Settlement Class member has not completed the other fields in the Claim Form, provided the Settlement Class member sets forth in writing that the Settlement Class member has insufficient knowledge to complete the incomplete field.

6.3.2.   *Claims Administrator Review for Refunds.*  The Claims Administrator may reject a Claim Form or any portion of a claim contained therein if it is shown and verified that the Claimant was previously provided a refund or credit from any source (including, but not limited to Mobile Messenger, a Wireless Carrier, an Aggregator, a Third-Party Content Provider, or through a different settlement) for the charge that is being requested for refund in the Claim Form.

6.4.   <u>Resolution Procedure for Challenged or Rejected Claims</u>

6.4.1   Mobile Messenger may challenge any claim, and the Claim Form will disclose the right of Mobile Messenger to challenge claims.

6.4.2   Mobile Messenger shall have thirty (30) days to dispute any Claim Form for a Settlement Benefit approved by the Claims Administrator.  Any Settlement Class member whose Claim Form for a Settlement Benefit is denied, in whole or in part, by the Claims Administrator, shall also have thirty (30) days to dispute the denial of the claim. In either case, each Party shall receive written notice of the denial/approval of the Claim Form and shall be provided an opportunity wherein the contesting party must provide a detailed written explanation as to why the Claims Administrator erred in its denial/approval of the Claim Form for a Settlement Benefit.

6.4.3   All appeals shall be submitted to an appeal panel that will be comprised of three (3) members:  one (1) member to be appointed by Mobile Messenger; one member (1) to be appointed by the Claims Administrator; and one (1) member to be appointed by Class Counsel.  The appeal panel shall meet at regularly determined times to decide all appeals based solely on the submissions, including any records provided by Mobile Messenger.  There will be no in-person hearings of any kind.  In order to overrule the decision of the Claims Administrator to approve/deny a Claim Form for a Settlement Benefit, the party submitting the appeal must garner two (2) votes from the appeal panel.

6.4.4   If the appeal panel affirms the decision of the Claims Administrator, the losing party has a right to one final appeal to have the issue of the denial/approval of the Claim Form determined by a Special Master, to be jointly agreed to by the Parties.   All decisions regarding the denial/approval of any Claim Form submitted and ruled upon by the Special Master are final.

7.    **SETTLEMENT PAYMENTS**

7.1.    Provided that the Effective Date occurs, Mobile Messenger shall be solely responsible for making payments as set forth in this Agreement.

7.2.    Settlement Class members shall have until the Claims Deadline to submit a Claim Form for an Approved Claim for payment as follows:  Settlement Class members will receive a Settlement Benefit as set forth in Section 5.2 et seq.

7.3.    Provided that the Effective Date has occurred, the Claims Administrator shall pay all Approved Claims by check and mail them to the Claimant via first-class mail within thirty (30) days of the Claims Deadline, or the earliest date thereafter when a claim for a Settlement Benefit becomes an Approved Claim.  In the event that the amount of Approved Claims makes it

26

reasonably possible that the amount due per claim may need to be pro-rated, the time to pay said amounts is extended by 60 days after that amount (per claim amount) can be reasonably calculated, but in no event later than 9 months after the close of the Claims Deadline.

**8.**    **NOTICE TO THE CLASS**

8.1    Upon Preliminary Approval of this Agreement (and as the Court may direct), the Parties (or their designee) shall cause the Settlement Class Notice to be disseminated to potential Settlement Class members as provided herein. Such notice shall comport with due process and be effectuated pursuant to the Notice Plan.

8.2    The Notice Plan shall include Direct Notice, Internet publication Notice and targeted Internet Advertising as set forth by the Notice Provider and agreed upon by the Parties.

8.2.1.    Without limiting the foregoing, Direct notice shall be via electronic mail to all Settlement Class members whose email information is in either Defendants' possession or Released Parties' possession, if it can be reasonably obtained. Defendants shall endeavor to see that Released Parties make all reasonable efforts to obtain as many email addresses as reasonably possible. If any email results in a bounce-back or otherwise undeliverable message, the Settlement Class Notice shall be delivered by postcard if Defendants possess a mailing address, sent at the specified rate for postcards established by the United States Postal Service, to the last known physical address of the addressee of such email.

8.3    The Settlement Class Notice shall advise Settlement Class members of their rights, including the right to opt out and/or comment or object upon the Agreement or its terms. The Settlement Class Notice shall provide that any objection to this Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Fairness Hearing,

only if, on or before a date approved by the Court and to be specified in the Settlement Class Notice, the Person making an objection files notice of his or her intentions to do so and files copies of such papers he or she proposes to submit at the Fairness Hearing with the Clerk of the Court and mail, hand or overnight delivery service to both Class Counsel and Mobile Messenger's Counsel on or before the date specified in the Settlement Class Notice.

8.4     The Settlement Class Notice will also state that any Person is entitled to only one refund for the same allegedly unauthorized charge for Mobile Content.

8.5     The cost of the Settlement Class Notice, the Notice Plan and the dissemination of the Settlement Class Notice are Claims Administration Expenses will be paid by Defendants.

## 9.     OPT-OUT PROCEDURES AND OBJECTIONS

9.1     A member of the Settlement Class may opt out of the Settlement Class at any time during the Opt-Out Period, as will be outlined in the Settlement Class Notice.  Opt-out requests must be post-marked at least twenty-one (21) days prior to the date set forth in the Notice for the Final Fairness Hearing.  In order to exercise the right to opt out, the Settlement Class member must complete and timely return a Request For Exclusion and mail it to the designated mailing address to be established by the Claims Administrator.  Except for those Settlement Class members who have opted out, all Settlement Class members will be bound by this Agreement and the Judgment to be entered following final approval of this Agreement.  Any Settlement Class member who elects to opt out of the Settlement Class shall not (i) be bound by any orders or Judgment entered in this Action; (ii) be entitled to relief under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement. The Request For Exclusion must be personally signed by the Person requesting exclusion.  So called "mass" or "class" opt-outs shall not be allowed.

9.2     Each Settlement Class member desiring to object to the settlement shall submit a timely written notice of his or her objection.  Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address; (ii) information identifying the objector as a Settlement Class member, including proof that the objector is a member of the Settlement Class (e.g., a wireless bill showing a charge for Mobile Content related to Mobile Messenger); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear or testify at the Final Fairness Hearing; (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xi) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative. To be timely, written notice of an objection in the appropriate form must be filed with the U.S. District Court of Nebraska, Clerk of the District Court, 111 South 18th Plaza, Suite 3259, Omaha, NE 68102, twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing, and served concurrently therewith upon Class Counsel Ben Barnow, Barnow

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602; and Mobile Messenger's Counsel : Ari N. Rothman, Esq., Venable LLP, 575 7th Street, N.W., Washington, D.C. 20004; and counsel for CF Enterprises Pty Ltd., Michael T. Hilgers, Esq., Gober Hilgers PLLC , 14301 FNB Parkway, Suite 100 , Omaha, NE 68154.

9.3     Any Settlement Class member who fails to comply with Section 9.2 above shall waive and forfeit any and all rights he, she, or it may have to appear separately and object, and shall be bound by all the terms of this Amended and Restated Stipulation of Settlement and by all proceedings, order, and judgments, including, but not limited to, the release of Settled Claims, the Final Approval Order, and the Judgment in the Action. The exclusive means for any challenge to this Amended and Restated Stipulation of Settlement shall be through the objection provisions of Section 9.2. Without limiting the foregoing, any challenge to the Amended and Restated Stipulation of Settlement, Final Approval Order, or Judgment in the Action shall be pursuant to appeal under the Federal rules of Appellate Procedure and not through a collateral attack.

## 10.    TERMINATION OF AGREEMENT

10.1     Plaintiff, on behalf of the Settlement Class, or Mobile Messenger, shall have the right to terminate this Settlement by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) days, whichever is later, of: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Judgment in this Action in any material respect; (iv) the date upon which the Judgment is modified or reversed in any material respect by the Court of Appeals or

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

the Supreme Court; or (v) the date upon which an alternative form Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

10.2    If more than three thousand (3000) Settlement Class members timely file valid Requests For Exclusion, Mobile Messenger in the exercise of its sole discretion shall have the right to terminate this Agreement. Mobile Messenger shall exercise such termination, if at all, no later than ten (10) business days after being advised by Class Counsel in writing of the number of valid Requests for Exclusion.   In the event Mobile Messenger exercises its right of termination, Mobile Messenger shall promptly notify Class Counsel and cause the Claims Administrator to notify the Settlement Class by posting information on the Settlement Class Website and e-mailing information to those Settlement Class members who provided an e-mail address to the Claims Administrator.

10.3    In the event that the total dollar value of all combined valid Message Claims exceeds $3,000,000, and, pro-rating the $3,000,000 against the total number of valid claims for unsolicited text messages would result in a settlement payment of less than $60 for each valid claim for an unsolicited text message, Mobile Messenger shall have 30 days after being advised of such to declare its intent to provide additional funds, in addition to the $3,000,000 provided for under Section 5.2.4, so that the settlement payment for each valid unsolicited text message claim is $60.   Should Mobile Messenger declare its intent to provide such funds within such period, the Message Claim portion of the Agreement shall in all other respects remain in full force and effect and shall not terminate.   In the event Mobile Messenger does not declare its intent to provide such funds within such period, the portions of this Agreement providing for the settlement of Message Claims shall automatically terminate.   But the provisions of this Agreement that relate to Subscription Charge Claims shall remain in full force and effect.   In the

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

event of such termination, (a) Settlement Class members' rights with regard to the terminated portion of the Agreement and claims of unsolicited text messages shall not be released, reduced, or impacted in any manner, and (b) Mobile Messenger shall have no right to terminate the provisions of this Agreement that relate to Subscription Charge Claims, except as provided by Sections 10.1 and 10.2 above.

10.4    If this Agreement is terminated in whole or in part, pursuant to its terms, then as to only the part terminated, (a) any Defendant may file a motion to compel arbitration against any or all of the Plaintiff's and any Settlement Class member pursuant to the terms and conditions associated with each such Plaintiff's or Settlement Class member's transaction involving any Defendant, and (b) the Plaintiff or any Settlement Class member against whom such a motion is filed may oppose such motion.  Further, but only as to any part terminated, (c) Mobile Messenger may seek dismissal of any action pursuant to any waiver against Mobile Messenger to which the Plaintiff and any Settlement Class member agreed, and (d) the Plaintiff or any Settlement Class member against whom such a motion is filed may oppose such motion.

10.5    To facilitate approval of a nationwide class settlement as set forth in this Agreement, Defendants are willing to waive certain defenses and to refrain from filing any motion to compel arbitration as it relates to the named Plaintiff only.  If the Agreement, order granting Preliminary Approval, and Judgment are not approved in all material respects by the Court, or the Agreement, Preliminary Approval order, or Judgment are not approved, reversed, vacated, or modified in any material respect by the Court, or by any other court, then (a) the Settlement Agreement shall become null and void, (b) Defendants shall have the right to move to compel the Plaintiff to submit any dispute with Defendants to binding arbitration pursuant to the terms and conditions to which, according to Defendants, Plaintiff agreed when transacting with

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

Defendants, and Plaintiff may oppose such arbitration, (c) Mobile Messenger may seek dismissal of any action pursuant to any waiver against Mobile Messenger to which the Plaintiff and any Settlement Class member agreed, and the Plaintiff or any Settlement Class member against whom such a motion is filed may oppose such motion, (d) Defendants shall be entitled to raise any and all defenses available to them to defend the Action, (e) Defendants shall be entitled to oppose any motion to certify any class in the Action (f) Defendants shall cease to have any obligation to pay any of the amounts set forth in this Agreement, (g) the Parties shall jointly file a stipulation with the Court that seeking an order that all orders entered pursuant to the Agreement be deemed vacated, including, without limitation, any order certifying or approving certification of the Settlement Class; provided, however, that if the Parties hereto agree jointly to appeal such ruling and the Agreement and Judgment are upheld on appeal, then the Agreement and Judgment shall be given full force and effect according to their terms.

## 11.   EXCLUSIVE REMEDY; DISMISSAL OF ACTION; JURISDICTION OF COURT

11.1    This Agreement shall be the sole and exclusive remedy of Settlement Class members against any Released Party relating to any and all Settled Claims. No Released Party shall be subject to liability or expense of any kind to any Settlement Class member who has not timely filed a valid Request For Exclusion with respect to any Settled Claim.  Upon the occurrence of the Effective Date, each and every Settlement Class member shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any Settled Claim(s) against any Released Party in any court, tribunal, forum or proceeding.

11.2    The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Action, the Parties, Settlement Class members, and the Claims Administrator in order to interpret and enforce the terms, conditions, and obligations under this Agreement.

## 12.   RELEASES

12.1   Upon the occurrence of the Effective Date, each Settlement Class member who has not timely filed a valid Request For Exclusion, shall be deemed to have and hereby does release and forever discharge each Released Party from liability for any and all Settled Claims.

12.2   Upon the occurrence of the Effective Date, for good and valuable consideration, Plaintiff, on behalf of herself and the Settlement Class and as the representative of the Settlement Class, shall expressly, and all Settlement Class members shall be deemed to have, and by operation of the Judgment as provided in this Agreement shall have, fully, finally, and forever expressly waived and relinquished with respect to Settled Claims, to the fullest extent permitted by law, any and all provisions, rights, and benefits of section 1542 of the California Civil Code and any and all similar provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not  know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## 13.   CLASS COUNSEL FEES, PLAINTIFF'S INCENTIVE AWARD, AND COSTS

13.1   The Fee Award.  The Parties did not discuss the payment of attorneys' fees, costs, expenses and/or incentive award to Plaintiff until after the substantive terms of the Agreement had been agreed upon, other than that Defendants would pay reasonable attorneys' fees, costs, expenses and an incentive award to Plaintiff as may be agreed to by Defendants and Class Counsel and approved by the Court.  Defendants and Class Counsel then negotiated and agreed as follows: In addition to the consideration provided to the Settlement Class members pursuant to

this Agreement, Mobile Messenger has agreed to pay Class Counsel, subject to Court approval, an amount up to six hundred and thirty five thousand dollars ($635,000.00) in attorneys' fees and reimbursement of costs and expenses (the "Maximum Fee Amount"). Mobile Messenger agrees that the Maximum Fee Amount is fair and reasonable and will not object to or otherwise challenge Class Counsel's application for reasonable attorneys' fees and for reimbursement of costs and other expenses if limited to the Maximum Fee Amount. Class Counsel has, in turn, agreed not to seek more than the Maximum Fee Amount from the Court. The amount so awarded by the Court shall be referred to as the "Fee Award."

13.2    <u>Payment of the Fee Award</u>. Notwithstanding any appeal or objection or challenge to the Court's final approval of this Agreement, including the Fee Award, provided Class Counsel provides adequate security for the recovery of amounts paid in the event of reversal on appeal of the final approval of this Agreement, Mobile Messenger shall pay (by wire) to Class Counsel the Fee Award approved by the Court within thirty (30) days after entry of the order approving such award of fees and reimbursement of costs and expenses. Absent the provision of acceptable security, Mobile Messenger shall pay the Fee Award to Class Counsel by wire transfer within thirty (30) days of the Effective Date. Any and all disputes that may arise regarding the division of the Fee Award with respect to Class Counsel or any other attorney(s) shall be mediated by the Hon. Wayne Andersen (ret.). In the event that the dispute remains unresolved, Judge Andersen shall make a final and binding determination.

13.3    <u>Plaintiff's Incentive Award</u>: In addition to any award under the Agreement, and in recognition of Plaintiff's efforts on behalf of the Class, the Plaintiff shall, subject to Court approval, receive an incentive award of the sum of one thousand dollars ($1,000.00) as appropriate compensation for the time and effort serving as the Class Representative in this

Action.  Mobile Messenger shall pay such amount to the Class Representative, in care of Class Counsel, within thirty (30) days after the Effective Date.

## 14.   **SETTLEMENT APPROVAL ORDER**

14.1   This Agreement is subject to and conditioned upon the issuance by the Court of the Judgment which finally certifies the Settlement Class and grants final approval of this Agreement in accordance with applicable jurisprudence, and providing the relief specified below, which relief shall be subject to the terms and conditions of this Agreement, the occurrence of the Effective Date and the Parties' performance of their continuing rights and obligations hereunder.  Such Judgment shall:

(a)   Confirm the certification, for settlement purposes only, of the Settlement Class under applicable jurisprudence;

(b)   Dismiss all complaints in the Action as with prejudice and without costs;

(c)   Decree that neither the Judgment nor this Agreement constitute an admission by Defendants of any liability or wrongdoing whatsoever;

(d)   Bar and enjoin all Settlement Class members from asserting against any Released Party any and all Settled Claims;

(e)   Release each Released Party from the Settled Claims which any Settlement Class;

(f)   Determine that this Agreement is entered into in good faith, is fair, reasonable, and adequate, in the best interest of the Settlement Class; and

(g)   Preserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Mobile Messenger and all Settlement Class members, to administer, supervise, construe and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Judgment.

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

## 15.   **REPRESENTATIONS AND WARRANTIES**

Mobile Messenger represents and warrants (i) that it has all requisite corporate power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby; (ii) that the execution, delivery and performance of this Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of Mobile Messenger; and (iii) that this Agreement has been duly and validly executed and delivered by Mobile Messenger and constitutes its legal, valid and binding obligation.

## 16.   **MISCELLANEOUS PROVISIONS**

16.1.   <u>Entire Agreement</u>.  This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications and understandings among the Parties with respect to the subject matter of this Agreement.  This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval.  The Parties contemplate that, subject to Court approval, the exhibits to this Agreement may be modified by subsequent Agreement of Mobile Messenger and Class Counsel prior to dissemination to the Settlement Class.

16.2   <u>Governing Law</u>.  This Agreement shall be construed under and governed by the laws of the State of Nebraska, applied without regard to laws applicable to choice of law.

16.3   <u>Execution by Counterparts</u>.  This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile signatures or signatures sent by e-mail (PDF) shall be treated as original signatures and shall be binding.

16.4   <u>Confirmatory Discovery</u>.   In addition to the investigation conducted by Class Counsel, Mobile Messenger has agreed to provide to Class Counsel additional discovery and information as necessary to confirm the material representations made by Mobile Messenger that form the basis of this Agreement.   Thus, by no later than sixty (60) days after the Court preliminarily approves this Agreement, or such other date as the Parties may agree, Class Counsel shall complete all discovery required to effectuate this Agreement, including but not limited to the accuracy of all Settlement Class identification information for Class Notice purposes, and to verify the representations made by any of the Defendants leading up to this Agreement.   Such discovery shall be completed by witnesses, sworn statements, document requests, interrogatories, and depositions.   Such discovery shall extend into Defendants' defenses.  The Parties shall cooperate in seeking any third-party discovery as may be necessary and appropriate, which additional discovery is to be completed prior to the Fairness Hearing.

16.5   <u>Notices</u>.   All notices to the Parties or counsel required by this Agreement, in addition to Settlement Class members' opt-out and objection obligations and procedures under Sections 9.1 and 9.2 *supra*, shall be made in writing and communicated by U.S. mail and email to the following addresses:

If to Plaintiff or Plaintiff's Counsel or Class Counsel:

> Ben Barnow, Esq.
> Barnow and Associates, P.C.
> One North LaSalle, Suite 4600
> Chicago, IL 60602
> Email: b.barnow@barnowlaw.com
>
> Ralph Phalen, Esq.
> Ralph K. Phalen, Attorney at Law
> 1000 Broadway Ste. 400
> Kansas City Mo. 64105

If to Mobile Messenger or m-Qube, or counsel for either of the foregoing:

> Ari N. Rothman, Esq.
> Venable LLP
> 575 7th Street, N.W.
> Washington, D.C. 20004
> Email: anrothman@venable.com

If to CF Enterprises Pty Ltd., or counsel for CF Enterprises Pty Ltd.:

> Michael T. Hilgers, Esq.
> GOBER HILGERS PLLC
> 14301 FNB Parkway, Suite 100
> Omaha, NE 68154
> email: mhilgers@goberhilgers.com

16.6    <u>Miscellaneous Provisions</u>

16.6.1  This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors and legal representatives of all Parties to this Agreement.

16.6.2  Subject to Court approval, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

16.6.3  The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after mediation and negotiation, with consideration by and participation of all Parties hereto and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.

16.6.4  The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

17.  **AUTHORITY TO SIGN**

Any individual signing this Agreement on behalf of any Person represents and warrants that he or she has full authority to do so.  Facsimile signatures and PDFs of signature pages sent via email shall be considered valid signatures as of the date hereof.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

**AGREED:**

**PLAINTIFF by its attorneys:**

**Proposed CLASS COUNSEL**

Dated: _____, 2014

Barnow and Associates, P.C.

Ben Barnow, Esq.
Barnow and Associates, P.C.
1 North LaSalle, Suite 4600
Chicago, IL 60602
Telephone: 312.621.2000
Facsimile: 312.641.5504
b.barnow@barnowlaw.com

Dated: March 3, 2014

Ralph K. Phalen Law, P.C.

Ralph K. Phalen, Esq.
Ralph K. Phalen Law, P.C.
1000 Broadway, Suite 400
Kansas City, MO 64105
Telephone: 816.589.0753
Facsimile: 816.471.1701
phalenlaw@yahoo.com

**MOBILE MESSENGER AMERICAS, INC. and m-QUBE, INC., by their Director or duly authorized signatory, as indicated:**

Dated: _____, 2014

Mobile Messenger Americas, Inc.

40

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

7558609v3

**MOBILE MESSENGER AMERICAS, INC. and m-QUBE, INC., by their Director or duly authorized signatory, as indicated:**

Dated: _March 3_, 2014

Mobile Messenger Americas, Inc.

_____
Daniel Macheck, CFO

m-Qube, Inc.

_____
Daniel Macheck, CFO

**MOBILE MESSENGER AMERICAS, INC., and m-QUBE, INC., by their attorney:**

Dated: _____ ____, 2014

_____
Ari N. Rothman, Esq.
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
Email: anrothman@venable.com

**CF ENTERPRISES PTY LTD., by its Director or duly authorized signatory, as indicated:**

Dated: _____ ____, 2014

_____
_____

**CF ENTERPRISES PTY LTD by its attorney:**

Dated: _____ ____, 2014

_____
Michael T. Hilgers, Esq.

41

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

7736086-v1

**MOBILE MESSENGER AMERICAS, INC. and m-QUBE, INC., by their Director or duly authorized signatory, as indicated:**

Dated: _____ ____, 2014                     Mobile Messenger Americas, Inc.

_____

m-Qube, Inc.

_____

**MOBILE MESSENGER AMERICAS, INC., and m-QUBE, INC., by their attorney:**

Dated:  March 3, 2014

_____
Ari N. Rothman, Esq.
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
Email: anrothman@venable.com

**CF ENTERPRISES PTY LTD., by its Director or duly authorized signatory, as indicated:**

Dated: _____ ____, 2014

_____

**CF ENTERPRISES PTY LTD by its attorney:**

Dated: _____ ____, 2014

_____

41
AMENDED AND RESTATED STIPULATION OF SETTLEMENT

**MOBILE MESSENGER AMERICAS, INC. and m-QUBE, INC., by their Director or duly authorized signatory, as indicated:**

Dated: _____ ____, 2014   Mobile Messenger Americas, Inc.

_____

_____

m-Qube, Inc.

_____

_____

**MOBILE MESSENGER AMERICAS, INC., and m-QUBE, INC., by their attorney:**

Dated: _____ ____, 2014

_____
Ari N. Rothman, Esq.
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
Email: anrothman@venable.com

**CF ENTERPRISES PTY LTD., by its Director or duly authorized signatory, as indicated:**

Dated: _____ ____, 2014

_____

_____

**CF ENTERPRISES PTY LTD by its attorney:**

Dated: March 3, 2014

_____

41

AMENDED AND RESTATED STIPULATION OF SETTLEMENT

Michael T. Hilgers, Esq.
GOBER HILGERS PLLC
14301 FNB Parkway, Suite 100
Omaha, NE 68154
Email: mhilgers@goberhilgers.com

AMENDED AND RESTATED STIPULATION OF SETTLEMENT