IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CULLAN AND CULLAN LLC, individually
and on behalf of all others similarly situated;

Plaintiff,

vs.

M-QUBE, INC., a Delaware corporation;
MOBILE MESSENGER AMERICAS, INC., a
Delaware Corporation; CF ENTERPRISES
PTY., LTD., an Australian Company; and
JOHN DOES 1-200,

Defendants.

**8:13CV172**

**MEMORANDUM AND ORDER**

This matter is before the court on the plaintiff's motion for preliminary approval of amended and restated stipulation of settlement, dissemination of notice, and setting of final fairness hearing, Filing No. 83.  This is a purported class action involving an alleged practice known as "cramming," that is, placing unauthorized, misleading, or deceptive charges on a consumer's cell-phone bill.

In an earlier order, the court granted Richard Geier leave to intervene in the action for the purpose of objecting to the settlement.  Filing No. 74, Memorandum and Order at 16.  The facts are set out in that earlier order and need not be repeated herein. The court sustained Geier's objection to the proposed class action settlement and declined to approve the settlement.[1]  *Id.*

After a hearing and argument, the plaintiff was permitted to file an amended proposal.  *See* Filing No. 83, Motion for Preliminary Approval, Filing No. 84-1, Ex. 1, Amended and Restated Stipulation of Settlement; Filing No. 85-1, Notice of Filing, Ex. 1,

---

[1] The court later ordered previously filed motions to dismiss or to compel arbitration be dismissed without prejudice to reassertion after resolution of the present motion.  Filing No. 93, Order.

Amended and Restated Stipulation of Settlement (signed) (hereinafter, "Amended Agreement").  Intervenor Geier again objects.[2]  Filing No. 86, Response.  Geier objects to the Amended Agreement's failure to identify released parties, its illusory text message claims fund, and its onerous claims process.[3]  See Filing No. 86, Response.

In reply to Geier's objections, M-Cube asserts that Geier acquiesced to certain terms of the amended proposal in settlement negotiations.  Filing No. 91-1, Reply at 2-3.  In response thereto, Geier argues and shows that the disputes between the parties and Geier have not been compromised or settled, and that the statements on which defendants rely predated this court's earlier order denying preliminary approval of class action status.  Filing No. 95-1 and Filing No. 95-2, Exs. A-B, Filing No. 95-3, Filing No. 95-4, Filing No. 95-5, Exs. 1-3.

The court has reviewed the amended proposal and again finds that it should not be approved at this time.  Though the Amended Agreement makes some improvements over the original agreement, by and large it contains the same infirmities as the first.  See Filing No. 84-1, Ex. 1, Amended Agreement at ¶ 2.42 (providing for Mobile Messenger's payment of all valid Subscription Charge Claims without any limited Settlement Fund or monetary cap); ¶ 5.2.1 (eliminating the 50% credit for refunds given directly to Settlement Class members); ¶ 2.42, ¶ 5.2.4, and 10.3 (providing that Mobile

---

[2] In a footnote to his response, Intervenor Geier request leave to file a motion for an award of fees.  Filing No. 86, Response at 15 n.7.  Geier has been granted leave to intervene in this action and is free to file motions.  "An intervenor becomes a full-fledged party, able to conduct discovery, file motions, and add new issues and complexity and delay to the litigation."  New Mexico Off-Highway Vehicle Alliance v. United States Forest Servs., 540 Fed. App'x 877, 883 (10th Cir. 2013) (Gorsuch, J., dissenting).

[3] Geier also argues the settling parties failed to comply with the government notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715(b).  The settling parties, however, have shown compliance.  See Filing No. 88-1, Reply, Ex. 1, Supplemental Affidavit of Jeffrey D. Dahl at 3 (ECF Doc #88-2, Page ID # 1896).

Messenger can elect to increase the settlement above $3,000,000.00 for text messages so that the $60 per unsolicited text message amount is met).  The court still cannot ascertain the size of the potential class.  *Id.*, Amended Agreement at ¶ 2.40.[4]  Geier estimates it to be in the neighborhood of 30 million people and the settling parties' claims administrator acknowledges in his affidavit that notice by mail would be prohibitively expensive and impracticable because it would involve "a reverse look up of millions of addresses from phone numbers."  Filing No. 86, Intervenor Response; Filing No. 88-1, Reply, Ex. 1, Supplemental Affidavit of Jeffrey D. Dahl at 3.  Also, there is evidence that Mobile Messenger informed the proposed notice provider that "defendants have used their best efforts to derive an estimate of 31 million class members."  Filing No. 91-7, Index of Evid., Ex. C, e-mail correspondence.  Under either scenario, the size of the proposed class is out of proportion to the amount of settlement. The settlement fund of three million dollars for text messages appears inadequate to compensate the millions of people allegedly harmed by the defendants' conduct.  *Id.*, 2.42.

Further, the fund may be illusory in that Mobile Messenger "in the exercise of its sole discretion shall have the right to terminate this Agreement," if more than three thousand Settlement Class members opt out, or if the total number of valid claims for

---

[4] The class consists of: "all current and former Wireless Subscribers Nationwide, who: (a) at any time from January 1, 2010, to the Notice Date, incurred any charge, whether paid or not, associated with any of the programs set forth on Exhibit A attached hereto; or (b) at any time from January 31, 2011, to the Notice Date, received any message from any Premium Short Code set forth on Exhibit B attached hereto; or (c) at any time from January 1, 2010, to the Notice Date, received any message from a Premium Short Code registered at the CTIA to (i) any organization recognized as exempt from federal income taxation under I.R.C. § 501(c)(3) or I.R.C. § 501(c)(4), or (ii) federal political committees registered with the Federal Election Commission."  Filing No. 84-1, Ex. 1, Amended Agreement, ¶ 2.40. Exhibits A and B consist of 69 pages and 83 pages, respectively, of single-spaced lists of short codes such as "37377," carriers such as "AT&T" or "Boost Mobile" and billing descriptors such as "Romney for President," or "Hot Ring Tones 4 You," "Couponz Mall," "MC Special Olympics" and the like.  *Id.*, Exs. A and B.

unsolicited text messages would result in a settlement payment of less than $60 for each valid claim (i.e., more than 50,000 claims are filed).  *Id.,* ¶ 10.3.  Mobile Messenger also has the discretion to increase the amount of the settlement if the $3,000,000 result in a payment of less than $60 per claim.  *Id.*  There is no provision of notice to class members in the event Mobile Messenger were to exercise either of those options.  The purported injunctive relief in the amended agreement (termination of future premium SMS programs through the major cell-phone carriers, except for charity and political organizations) may also be an illusory benefit to potential class-members in that some major carriers have ceased billing for those services as a result of actions, settlements and pressure by the FTC on the major carriers.  *Id.* at ¶ 5.1; *see, e.g., Moore, et al. v. Verizon, et al.*, No. 09-cv-1823 (N.D. Ca. 2012); *FTC v. T-Mobile USA, Inc.*, No. 2:14-cv-00967, Complaint (W.D. Wash. July 1, 2014); Federal Trade Commission, *Mobile Cramming: an FTC Staff Report*, *available at* http://www.ftc.gov/ news-events/press-releases/2014/07/ftc-recommends-mobile-industry-changes-combat-mobile-cramming (July 2014); *see also FTC v. Wise Media*, LLC, No. 1:13-cv-1234-WSD (N.D. Ga. Nov. 22, 2013) (involving an aggregator).

The notices to the potential class remain inadequate.  The Amended Agreement continues to provide a direct email and web-based notice plan.  Filing No. 84-1, Ex. 1, Amended Agreement at ¶ 8.2; Ex. 3, Affidavit of Jeffrey D. Dahl.  The court has not been provided with any quantification of the settlement class members who could potentially be identified from the defendants' records so as to receive notice by email, nor is there any showing that the emails would be reasonably calculated to reach the individuals.  See *id.*, Ex. 3, Dahl Aff. at 5.   Further, the settling parties have not shown

that potential class members would be likely to be reached via Internet banner advertising or social media outreach. *Id.* at 6-7. The settling parties have not shown that they are unable to identify individual class members with reasonable effort, by, for example, utilizing billing records. Although the Amended Agreement provides for the creation of a website, the settling parties provide only generalities with respect to how potential class members would become aware of the website. *Id.* at 2, 9 (stating "we will employ sophisticated methods of reaching and exposing Settlement Class Members to the Notice that are available to marketers in the digital, online sphere" and describing "producing more than 250 million digital impressions that are targeted using methods universally employed in the advertising industry at persons that match characteristics of the Settlement Class"). The settling parties have not provided the court with an explanation why individual notice of the settlement by first-class mail cannot or will not be given to class members, other than to assert that ascertaining millions of addresses would be costly and impractical. *See* Filing No. 88-1, Reply, Ex. 1, Supplemental Affidavit of Jeffrey D. Dahl at 3.

Although the settling parties recognize the court should consider the "financial condition" of the settling defendants, they fail to provide the court with any data on this point. *Id.* ¶ 15 (stating that Mobile Messenger represents and warrants that it has "requisite corporate power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby"). There is nothing in the record other than Mobile Messenger's self-serving statement to support a finding that the defendants would be able to satisfy a judgment.

Also, the settling parties have not shown the strength of the plaintiff's case on the merits, as balanced against the amount offered in settlement, in terms of how the substantive claims of the settlement compare to the likely result of a trial. The court is thus unable to state that the amended proposed settlement falls within a range of reasonableness, even recognizing the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.

Most importantly, the Amended Agreement does not address the court's concern with the parties' failure to reveal the identities of released parties.[5]  *Id.*, ¶ 2.35 (identifying the defendants, the wireless carriers, 18 named third-party content Providers and "any other entity that is identified in the Settlement class Notice"). The released entities remain identified by "the short code or billing descriptor that appeared on telephone bills," which is meaningless as far as conveying a notice of the entity released. *See* Filing No. 84-1, Ex. 1, ¶ 2.35; Ex. D, Notice at 2.

_____

[5] In the notice to be provided to the potential class members, the released parties are listed as:

> any and all of the following parties, as well as their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, companies under common ownership and control and any and all of their past, present and future officers, directors, employees, stockholders, licensors, partners, agents, marketing agents, servants, successors, attorneys, representatives, subrogees and assigns, those Released Parties, including without limitation, Defendants, Mobile Messenger, the Wireless Carriers, and the following Third-Party Content Providers: Game Theory, LLC; Edoc Ventures, LLC; Elsie Bay Holdings, LLC; Forest Bay Holdings, LLC; Lovac Ventures, LLC; Mobile Plus, Inc.; True Digit, LLC; Sandy Hill Bay Holdings, LLC; Savanah Bay Holdings, LLC; Social Hour; Viveli, Inc.; Third Wind Productions, LLC; Crow Enterprises, LLC; Little Harbour Holdings, LLC; Windward Point Holdings, LLC; Mobile Sapphire, LLC; Dormart, LLC; PlayPhone, Inc.; <u>and any other entity that is identified in the Settlement Class Notice by company name or the short code or the billing descriptor that appeared on the Class Member's phone bill, as set forth in Exhibit A or B attached hereto.</u>

Filing No. 84-1, Ex. 1, Amended Agreement, Ex. D, Notice at 3 (emphasis added).  The referenced exhibits consist of 69 and 83 pages of single-spaced short codes and billing descriptors. *Id.*, Exs. A & B.

The court incorporates the discussion of law set forth in its earlier order.  *See* Filing No. 74, Memorandum and Order at 10-15.  For the reasons discussed extensively therein, the court finds the motion for preliminary approval of amended class action settlement should be denied.  *See id.* at 16-19.  The court finds the settling parties have not shown that they are entitled to prosecute the action as a class action on behalf of similarly situated individuals.  They have not satisfied their burden under Fed. R. Civ. P. 23 of showing numerosity, commonality, typicality and adequacy of representation.  After consideration of the number of persons in the proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds class action status is not appropriate at this time.  The court remains troubled by numerous aspects of the proposed settlement, including the specter of potential abuse, collusion or a "reverse auction" type of situation. See *id.* at 18-19.  The action may proceed as an individual action, however.

As noted in this court's earlier order, a similar case is pending in the United States District Court for the Western District of Washington.  *See Geier v. M-Qube, Inc.*, Case No. 2:13-cv-00354 (W.D. Wa.).[6]  The court's review of the CM/ECF record in the *Geier* case shows that deadlines have been set for motions relating to class action status and the action is set for trial on April 6, 2015.  *Id.*, Document No. 65.  The record shows that defendants M-Qube and Mobile Messenger have appealed the district court's denial of their motion to compel arbitration or dismiss, and the district court

---

[6] In a recent order, the Washington court states that another "cramming" case is "being pursued in state court in Texas, *see* http://legalnewsline.com/news/ 245335-texas-ag-files-lawsuit-against-text-messaging-content-providers (Nov. 7, 2013)."  *Geier*, No. 2:13-cv-00354 (W.D. Wa. June 26, 2014).

denied the their motion for a stay pending the resolution of the appeal.  *See id.,* Document Nos. 39, Notice of Appeal; 40, Motion for Stay; 48, Minute Order denying motion for a stay.  In denying the stay, the district judge indicated that "the Court will entertain a renewed motion for stay if a ruling in the related matter of *Cullan and Cullan LLC v. M-Qube, Inc.*, Case No. 8:13cv172, pending in the District of Nebraska, affects or might affect plaintiff's ability to proceed in this case."  *Id.*, Document No. 48. Accordingly, it appears that the issue of the status of this action vis-à-vis the Washington case will need to be addressed.  Accordingly, the court will order briefing on the issue of whether this action should be transferred and/or joined with the Washington case.


IT IS ORDERED:

1.     Intervenor Richard Geier's objections to the proposed settlement (Filing No. 86) agreement are sustained.

2.     Plaintiff Cullan and Cullan's motion for preliminary approval of amended class action settlement (Filing No. 83) is denied.

3.     The defendants shall refile motions to dismiss and/or compel arbitrations, if desired, or answer or otherwise plead, within two weeks of the date of this order; the plaintiff and/or intervenor shall respond to any reasserted motions within two weeks thereafter.

4.    The parties shall also brief the issue of whether this action should be transferred to the District of Washington under the first-filed rule within two weeks of the date of this order and shall respond to each parties' briefs within one week thereafter.

Dated this 31st day of July, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge