**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| Cullan and Cullan LLC, on behalf of itself and all others similarly situated, | Case No. 8:13-cv-00172 |
| Plaintiff, | |
| v. | The Honorable Joseph F. Bataillon |
| m-Qube, Inc., *et al.*, | Magistrate Judge Thomas D. Thalken |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT</u>**

Plaintiff Cullan and Cullan LLC ("Plaintiff"), individually and on behalf of the Settlement Class (as defined in the Settlement Agreement and set forth below), by and through undersigned counsel, respectfully submits this memorandum in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.[1]

## INTRODUCTION

After a lengthy period of hard-fought litigation and several rounds of protracted settlement negotiations, Plaintiff and defendants Post SMS. Co. Americas, Inc., formerly known as Mobile Messenger Americas, Inc., and Post SMS Co. Qube, Inc., formerly known as m-Qube, Inc. (collectively, "Mobile Messenger"), reached the Settlement Agreement (the "Settlement"), attached hereto as Exhibit 1. The Settlement provides that Settlement Class members will receive $30 for claimed unauthorized mobile phone charges associated with identified program names, billing descriptors, and shortcodes, except that payment for approved Subscription Charge Claims will exclude amounts over $20.00 which a Claimant has already been refunded or reimbursed at the time such Claimant's Claim Form is submitted which Claimant knows to be for mobile phone charges for any of the billing descriptors, shortcodes, and program names set forth on Exhibit B to the Settlement. Each Subscription Charge Claim shall be entitled to. The Settlement also provides that Settlement Class members who do not file a either valid claim or a valid opt-out request shall continue to have the right to pursue any claims they may have against Mobile Messenger and the other Released Parties on an individual basis; only their right to bring a class action or mass action is released. As shown herein, the Settlement readily satisfies the applicable standard for preliminary approval: "within the range of possible judicial approval."

_____

[1] The definitions contained in the Settlement are incorporated herein by reference.

Accordingly, Plaintiff respectfully moves this Honorable Court for entry of an order: (1) granting preliminary approval of the Settlement; (2) approving Notice to the Settlement Class and methods for dissemination of Notice as set forth in the Settlement and the Notice Plan[2]; (3) appointing Dahl Administration, LLC, as Notice Specialist and Claims Administrator; (4) certifying the Settlement Class for settlement purposes only; (5) appointing Cullan and Cullan LLC as Representative Plaintiff; (6) appointing Ben Barnow and Ralph K. Phalen as Co-Lead Settlement Class Counsel; (7) approving the Claim Form attached as Exhibit A to the Settlement; and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement and the request for attorneys' fees, costs, and expenses, and Representative Plaintiff incentive award.

## **BACKGROUND**

### I.      **Nature of the Litigation and Procedural History**

On June 6, 2013, Plaintiff filed its Class Action Complaint alleging claims against Mobile Messenger and CF Enterprises, arising out of alleged unsolicited text messages sent from Premium Shortcodes related to Mobile Content, such as ring-tones, news and information alerts, and other digital and electronic content to wireless telephone subscribers, and the sale and billing of allegedly unauthorized Mobile Content to wireless telephone subscribers. [D.E. #1]. The Complaint seeks, *inter alia*, monetary, declaratory, and injunctive relief on behalf of Plaintiff and all others similarly situated. *See id.*

On July 5, 2013, CF Enterprises filed a motion to compel arbitration [D.E. #17], and Mobile Messenger filed a motion to dismiss [D.E. #20]. On November 19, 2014, the Court denied CF Enterprises' motion to compel arbitration and Mobile Messenger's motion to dismiss. [D.E. #119]. CF Enterprises filed an interlocutory appeal of the Court's denial of its motion to

---

[2] The Notice Plan is Exhibit 2 to the Affidavit of Jeffrey D. Dahl attached hereto as Exhibit 3.

compel arbitration. After the appeal was fully briefed and set for oral argument before the Eighth Circuit Court of Appeals, Plaintiff and CF Enterprises notified the Eighth Circuit that they believed they had resolved the matter and requested that the oral argument be taken off the docket. Thereafter, Plaintiff and CF Enterprises submitted an Agreement for Dismissal of Appeal without Prejudice, which the Eighth Circuit granted on November 13, 2015. [D.E. #157].

The landscape has changed since Plaintiff filed its initial complaint in this matter. As of this filing, all four major wireless carriers have reached settlements with the federal government and state attorneys general, collectively making available to consumers over $200 million for reimbursement of unauthorized premium short code charges. *See* Order, Federal Communications Commission, File No. EB-TCD-14-00016543 (May 12, 2015) (Verizon Wireless to pay $90 million in fines—$70 million of which will fund a consumer redress program to provide refunds to its customers); Stipulated Final Judgment and Order, *Consumer Fin. Protection Bureau v. Sprint Corp.*, No. 14-cv-09931 (S.D.N.Y. June 30, 2015) (Sprint to provide up to $50 million to provide redress to consumers); Order, *FTC v. T-Mobile USA*, No. 14-cv-00967-JLR [D.E.# 18 (W.D. Wash. Dec. 22, 2014) (T-Mobile to pay $90 million—$67.5 million of which shall be available for consumer refunds and debt forgiveness); Stipulated Order, *Fed. Trade Comm'n v. AT&T Mobility, LLC*, 1:14-cv-3227-HLM (N.D. Ga.) (AT&T to pay $105 million—$80 million of which shall go towards consumer redress).

## II.     Summary of the Settlement

### A.      The Settlement Class

The Settlement Class is defined in the Settlement as follows:

[A]ll current and former Wireless Subscribers Nationwide, who at any time from January 1, 2010, to the Notice Date, incurred any charge, whether paid or not, associated with any of the billing descriptors, shortcodes, and program names set forth on Exhibit B [to the Mobile Messenger Settlement Agreement and posted on

the Settlement Website]; or (b) at any time from January 1, 2010, to the Notice Date, received any message from a Premium Short Code registered at the CTIA to (i) any organization recognized as exempt from federal income taxation under I.R.C. § 501(c)(3) or I.R.C. § 501(c)(4), or (ii) federal political committees registered with the Federal Election Commission.

MMSA ¶ 2.39[3]. Excluded from the Class are the following: Defendants, the Claims Administrator, and any of aforementioned respective parent, subsidiary, affiliate and control persons of Defendants, as well as the officers, directors, agents, servants, and employees of Defendants, any trial judge presiding over this case, and the immediate family members of any such Person(s). *See id.*

### B.     Settlement Benefits

In summary, the Settlement provides the following benefits:

### 1.     Payments for Subscription Charge Claims

Settlement Class members shall receive $30 per unauthorized charge for claimed unauthorized mobile phone charges associated with the concerned program names, billing descriptors, and short codes, except that payment for approved Subscription Charge Claims will exclude amounts over $20.00 which a Claimant has already been refunded or reimbursed at the time such Claimant's Claim Form is submitted which Claimant knows to be for mobile phone charges for any of the billing descriptors, shortcodes, and program names set forth on Exhibit B to the Settlement. MMSA ¶¶ 5.1, 5.2. There is no monetary cap on Mobile Messenger's payment of valid claims submitted under this provision. *See id.*

---

[3] References to particular paragraphs of the Settlement are prefixed by "MMSA ¶".

### 2.      The Costs of Notice and Claims Administration

Mobile Messenger will pay all costs of providing Notice of the Settlement to the

Settlement Class and the Costs of Claims Administration.  MMSA ¶ 8.4.[4]

### 3.      Attorneys' Fees, Costs, and Expenses, and Incentive Award

The Settling Parties did not discuss attorneys' fees, costs, and expenses, or incentive

awards until after the substantive terms of the first settlement presented was agreed upon, other

than that Defendants would be responsible for such amounts as agreed to by Defendants and

Proposed Co-Lead Settlement Class Counsel and approved by the Court. MMSA ¶ 13.1. Mobile

Messenger has agreed to pay Proposed Co-Lead Settlement Class Counsel, subject to Court

approval, an amount up to $485,000 in attorneys' fees and reimbursement of costs and expenses.

MMSA ¶ 13.1. Mobile Messenger also agreed to pay, subject to Court approval, a Class

Representative incentive award to Plaintiff in the amount of $2,500. MMSA¶ 13.3.

### 4.      The Limited Release

In exchange for the benefits provided, the Settlement includes a release for Mobile

Messenger and other Released Parties tailored to the unique realities of this litigation. Each

Settlement Class member who does not submit a valid claim will continue to have the right to

pursue litigation against Mobile Messenger or any other Released Party—as described

specifically in the Settlement—on an individual basis; only their right to participate in a class

action or mass action shall be released. MMSA ¶¶ 1.8, 12.2. Settlement Class members who

submit valid claims will release any right to assert claims against Mobile Messenger or any other

Released Party. MMSA ¶¶ 1.8, 12.1, 12.2.

---

[4] Subject to Court approval, notice of the Settlement will be combined with notice of the
settlement between Plaintiff and CF Enterprises, filed herewith. If the settlement between
Plaintiff and CF Enterprises is not granted preliminary approval, then notice of the Settlement
will be provided independent of notice of the settlement between Plaintiff and CF Enterprises.
MMSA ¶ 8.1.

**ARGUMENT**

**I.    Preliminary Approval of the Settlement is Appropriate**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *In re Charter Commc'ns Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.") (internal citation and quotations omitted).

Fed. R. Civ. P. 23(e) requires judicial approval of class action settlements. The review and approval process involves two steps. The first step is the preliminary approval stage, where the court determines whether a "settlement is within the *range* of possible approval due to an absence of any glaring or procedural deficiencies," such that it is appropriate that notice be provided and a final fairness hearing scheduled. *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383–84 (D. Minn. 2013) (italics in original) (quoting *Schoenbaum v. E.I. DuPont de Nemours & Co.,* No. 4:05CV01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009)). The second step is the final fairness hearing, where the court makes a determination whether a settlement is fair, reasonable, and adequate. *See* Manual for Complex Litigation (Fourth) §§ 21.632, 21.635 (4th ed. 2004).

When determining whether a settlement is within the range of possible approval, courts consider the following factors: (1) the terms of the settlement weighed against the merits of the plaintiff's case; (2) the complexity, expense, and likely duration of further litigation; (3) the stage of the proceedings and the extent of discovery completed; (4) the experience and opinion of

counsel; (5) the absence of collusion; (6) the defendant's financial condition; and (7) the amount of opposition to the settlement. *See Jenkins v. Pech*, No. 8:14-CV-41, 2015 WL 6738624 *2–3 (D. Neb. Nov. 4, 2015). Analysis of these factors supports that the Settlement is well within the required range of possible approval and should be preliminarily approved.

### A.      The Merits of Plaintiff's Case Against the Value of the Settlement

"The most important consideration in the analysis requires balancing the strength of the plaintiffs' case against the value of the settlement terms to the class." *Marshall v. Nat'l Football League*, 787 F.3d 502, 514 (8th Cir. 2015). In cases such as this matter where damages are not easily calculable, courts are not required to calculate the value of class claims. *Id.* at 518. As the Eighth Circuit explained:

> To require the district court to make detailed factual findings on the value of class claims in every case, even if it would ultimately find any of its findings of little value to evaluating the fairness, reasonableness, and adequacy of the settlement would run counter to this Court's guiding principle that "[t]he very purpose of compromise is to avoid the delay and expense of such a trial," *Grunin,* 513 F.2d at 124 (internal quotation marks omitted) and that "[t]he parties to a class action are not required to incur immense expense before settling as a means to justify that settlement." *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1178 (8th Cir.1995).

*Marshall*, 787 F.3d at 518. Balancing the risks of continued litigation, the benefits of the Settlement, and the immediacy and certainty of the significant recovery provided for by the Settlement supports that the Settlement should be preliminarily approved.

Plaintiff and Proposed Co-Lead Settlement Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance the claims if it were otherwise. But, they also recognize the substantial risks involved in continuing this litigation. Mobile Messenger has aggressively maintained its position regarding liability and damages. It denies each.

Proposed Co-Lead Settlement Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. Mobile Messenger has contended that Plaintiff and other Settlement Class members consented to receiving the charges at issue, that Plaintiff contractually waived its claims against it, and that Plaintiff and other Settlement Class members' claims are barred by the voluntary payment doctrine. Answer at 13–14 (Dec. 15, 2014) [D.E. 125]. It is likely that Mobile Messenger will oppose class certification on multiple grounds, including that many individuals already received reimbursement for unauthorized charges from Mobile Messenger, wireless carriers, and as a result of settlements between the nation's four largest wireless carriers and the federal government.

Although Proposed Co-Lead Settlement Class Counsel believe Plaintiff and the Settlement Class would prevail on such arguments, they also recognize the difficulties in establishing liability on a class-wide basis through summary judgment and trial. *See, e.g., Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) (denying class certification).

The Settlement, in contrast, delivers a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal. The Settlement provides that Settlement Class members submitting valid claims shall receive $30 per unauthorized charge with no monetary cap on such refunds, with the exception that Settlement Class members will receive $20 for charges already refunded or reimbursed. Given that the unauthorized subscriptions and services at issue generally cost $9.99 per month or less, the relief provided for by the Settlement represents in excess of a 300% recovery for Settlement Class members who did not already receive a refund of such amounts and, for Settlement Class members who already received a refund for such charges, the Settlement provides that such individuals will receive in

excess of 200% of the amount they were charged, in addition to any refunds and reimbursements they have already received. *See* Federal Trade Commission, *AT&T's $105 million "cramming" settlement leads to refunds* (Oct. 8, 2014), available at: http://www.consumer.ftc.gov/blog/atts-105-million-cramming-settlement-leads-refunds (last accessed Dec. 18, 2015) ("Many consumers weren't aware they had been paying — up to $9.99 per month — for seemingly random horoscope text messages, flirting tips, celebrity gossip, wallpaper or ringtones that showed up on their phones."). Proposed Co-Lead Settlement Class Counsel recognize that it would be difficult to achieve similar results on a class-wide basis at trial. *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 ADM/AJB, 2013 WL 716088 at *7 (D. Minn. Feb. 27, 2013) ("The critical consideration is the strength of plaintiffs' case on the merits versus the amount offered in the settlement."); *see also Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush") (citations and quotations omitted).

The Settlement benefits also compare favorably to the terms of settlements granted final approval in cases involving similar cramming claims. The comparison of settlements of similar cases is an accepted judicial tool for determining whether a settlement is fair, reasonable, and adequate. *See, e.g.*, *McBean v. City of New York*, 233 F.R.D. 377, 388–91 (S.D.N.Y. 2006) (analogizing to other settlements in evaluating the adequacy of a settlement for final approval). In *Gray v. Mobile Messenger Ams., Inc., et al.*, a cramming case, refunds were capped, the amount available to the settlement class was capped, and settlement payments were not available

- 10 -

for amounts previously refunded. *See* Amended Stipulation of Settlement, *Gray v. Mobile Messenger Ams., Inc., et al.*, No. 08-cv-61089-CMA, at 12, 19, 20 (Aug. 4, 2008), attached hereto as Exhibit 4. And, in *Vandyke v. Media Breakaway LLC*, 08-cv-22131 (S.D. Fla.), involving the sale and billing of unauthorized mobile content, individuals submitting valid claims were to receive a $10 cash reward. *See* Stipulation of Settlement, *Vandyke v. Media Breakaway LLC*, No. 08-CV-22131 (S.D. Fla.), attached hereto as Exhibit 5.

Weighing the immediate and substantial relief offered under the Settlement against the strength and uncertainty of Plaintiff's claims supports approval of the Settlement.

### B.      The Complexity, Expense, and Likely Duration of Future Litigation

Prosecuting this litigation through trial and appeal would likely be lengthy, complex, and impose significant costs on all parties. *See Marshall*, 787 F.3d at 512 ("Class actions, in general, place an enormous burden of costs and expense upon parties.'") (citation and quotations omitted); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, continued fact discovery, class certification proceedings, further dispositive motions and, of course, a trial and appeal. Given the complex nature of the claims at issue, a battle of the experts at trial is almost a certainty and, as such, continued proceedings would likely include substantial expert discovery and significant motion practice related to such. Also, considering the size of the Settlement Class and the amount of money at stake, any decision on the merits would likely be appealed, causing further delay, as it would require briefing and likely oral argument.

This factor favors preliminary approval of the Settlement.

### C.      The Stage of Proceedings and Amount of Discovery Completed

Plaintiff's initial complaint was filed over two years ago. Proposed Co-Lead Settlement Class Counsel have significant experience in complex consumer class actions and are well-informed of the legal claims at issue and the risks of this case. Since the inception of this matter, tens of thousands of documents have been produced and reviewed, the parties have exchanged discovery requests, the Court denied Defendants' motion to dismiss, and the Court denied CF Enterprises' motion to compel arbitration.

Proposed Co-Lead Settlement Class Counsel and counsel for Mobile Messenger engaged in several rounds of settlement negotiations during the past two years.[5] Throughout these negotiations, Proposed Co-Lead Settlement Class Counsel pursued informal discovery from Defendants that was appropriately targeted at information relevant to the settlement. Proposed Co-Lead Settlement Class Counsel also collected and reviewed publicly-available information regarding the parties and claims at issue. And the Settlement also provides that Proposed Co-Lead Settlement Class Counsel may conduct confirmatory discovery to verify Mobile Messenger's representations leading up to the Settlement. MMSA ¶ 16.4.

Because Proposed Co-Lead Settlement Class Counsel were well-informed when entering into the Settlement, this factor favors preliminary approval.

### D.      The Views of Experienced Counsel

The views and experience of counsel are to be considered when evaluating a class action settlement. *Jenkins*, 2015 WL 6738624, at *3 (citing *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995)). When both parties are represented by experienced counsel, their mutual desire to adopt a proposed settlement's terms "while not conclusive, 'is entitled to

---

[5] The Court previously denied Plaintiffs' motions for preliminary approval of settlements separate and distinct from the Settlement at issue. [D.E. ## 74, 97].

significant weight.'" *Arnold v. Fitflop USA, LLC*, No. 11-CV-0973 W KSC, 2014 WL 1670133, at *7 (S.D. Cal. Apr. 28, 2014) (quoting *Bros. v. Cambridge Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985)).

The Settlement is supported by experienced and well-qualified counsel. Proposed Co-Lead Settlement Class Counsel, Messrs. Barnow and Phalen, each have extensive experience leading and successfully resolving consumer class actions and other complex litigation matters. *See* Resumes of Proposed Co-Lead Settlement Class Counsel, attached hereto as Exhibit 2. Mobile Messenger is similarly well represented. Ari Rothman has significant experience litigating class actions and Venable LLP is a highly rated firm with over 600 lawyers globally. Proposed Co-Lead Settlement Class Counsel on the one hand, and Mr. Rothman on the other, support the Settlement and believe it to be fair, reasonable, and adequate. This factor supports preliminary approval.

### E.    The Absence of Collusion

Courts find settlements to be free of fraud or collusion when "the parties were represented by experienced counsel [and the] settlement was reached through arms-length negotiations." *Rigo v. Kason Indus., Inc.*, No. 11-CV-64-MMA (DHB), 2013 WL 3761400, at *6 (S.D. Cal. July 16, 2013) (citations omitted).

The Settlement is the product of extensive, hard-fought, arms-length negotiations conducted by experienced counsel. This process involved numerous telephone conversations, as well as exchanging several proposals and counter-proposals. The Settling Parties fought hard for the interests of their respective clients, and in Proposed Co-Lead Settlement Class Counsel's informed opinion, the Settlement achieved here includes a substantial and valuable recovery for the Settlement Class.

This factor favors preliminary approval of the Settlement.

**F.      Mobile Messenger's Financial Condition**

Mobile Messenger has represented that it has adequate resources to pay its obligations

under the Settlement or to continue its defense in the litigation. As such, this factor is neutral. *See*

*Marshall*, 787 F.3d at 512.

**G.      The Amount of Opposition to the Settlement**

After Notice is provided, Settlement Class members will be provided with the

opportunity to opt-out of or object to the Settlement. Because no opposition to the Settlement has

been filed at this point, this factor is neutral.

Analysis of the required factors above demonstrates that the Settlement is well within the

range of possible approval and that preliminary approval of the Settlement is appropriate.

**III.      Certification of the Settlement Class for Settlement Purposes Only**

To be certified for class action treatment, the requirements of Rule 23(a) must be satisfied

in addition to the requirements of one of the subsections of Rule 23(b). *See* Fed. R. Civ. P. 23.

As detailed below, the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied here. As such,

certification of the Settlement Class for settlement purposes only is appropriate.

**A.      The Requirements of Rule 23(a) Are Satisfied**

**1.      Numerosity**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). Joinder is generally considered impracticable when a

class includes forty or more individuals. *See Powers v. Credit Mgmt. Servs., Inc.*, No.

8:11CV436, 2013 WL 3716412, *3 (D. Neb. July 12, 2013). The Settlement Class is estimated to

include millions of members. Thus, this requirement is satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of a question of law or fact that is common to all class members and capable of class-wide resolution, the determination of which is central to the validity of all Settlement Class members' claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2514, 2551 (2011). Several questions of law and fact common to all Settlement Class members exist in this litigation including, *inter alia*:

> 1) whether Mobile Messenger's conduct constitutes tortious interference with Plaintiff's and other Settlement Class members' contracts with their wireless telephone carriers;
>
> 2) whether Plaintiff and other Settlement Class members have been damaged and, if so, in what amount;
>
> 3) whether Mobile Messenger was unjustly enriched to the detriment of Plaintiff and other Settlement Class members; and
>
> 4) whether Plaintiff and other Settlement Class members are entitled to declaratory and injunctive relief.

*See* Class Action Complaint ¶ 29.

### 3. Typicality

Plaintiff's claims are typical of the claims of Settlement Class members because Plaintiff and Settlement Class members sustained injury and damages from the same course of conduct. *See Bradford v. AGCO Corp*., 187 F.R.D. 600, 605 (W.D. Mo. 1999); *In re Aquila ERISA Litig.,* 237 F.R.D. 202, 209 (W.D. Mo. 2007) (23(a)(3) "simply requires a demonstration that there are other members of the class who have the same or similar grievances as the class representative. The burden of demonstrating that Rule 23(a)(3) is met is fairly easy so long as other class

members have claims similar to the named plaintiff.") (internal quotation marks, citations and alterations omitted).

### 4.    Adequacy

The final requirement of Rule 23(a), that "the representative parties will fairly and adequately protect the interests of the class," is also satisfied. Fed. R. Civ. P. 23(a)(4). The focus of the adequacy inquiry is on the existence of common interests between the class representative and class members and the vigorous prosecution of those interests through qualified counsel. *See Jones,* 257 F.R.D. at 191. Plaintiff and Settlement Class members share common interests in stopping the complained-of practice and obtaining monetary relief. Plaintiff and Proposed Co-Lead Settlement Class Counsel have fairly and adequately protected the interests of the Settlement Class. They engaged in years of litigation and settlement negotiations to arrive at the Settlement. Plaintiff has retained competent counsel with significant experience in litigating, as well as settling, class actions. *See* Group Exhibit 2: Resumes of Ben Barnow and Ralph K. Phalen. Proposed Co-Lead Settlement Class Counsel have vigorously protected the interests of Plaintiff and the Settlement Class members. Comparison of the terms of this Settlement against similar settlements, as described above, supports, by results, the adequacy of counsel.

### B.    The Requirements of Rule 23(b)(3) Are Satisfied

### 1.    Predominance

Rule 23(b)(3)'s predominance element requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005) (quoting *Amchem,* 521 U.S. at 623). When analyzing predominance, the

"fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Carpe v. Aquila, Inc.,* 224 F.R.D. 454, 458 (W.D. Mo. 2004).

As noted above, several questions of law and fact common to all members of the Settlement Class exist in this litigation. These common questions predominate over any potential questions affecting only individual Settlement Class Members. Thus, the predominance element is satisfied.

### 2. Superiority

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to these findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Manageability concerns present when a court certifies a class for litigation purposes are not present when a class is certified for settlement purposes only, because the case is not to be tried. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

A class action is the superior method—and likely the only reasonable method—to fairly and efficiently adjudicate this controversy. The damages, harm, and other detriment suffered by Settlement Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Mobile Messenger, making it wasteful

and impracticable for Settlement Class members to individually bring actions against Mobile Messenger. Even if Settlement Class members could afford individual litigation, the court system should not be required to bear the burden and expense of such inefficiency. Individualized litigation would also create the potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

Thus, the requirements of Rule 23 are satisfied and certification of the Settlement Class for settlement purposes only is appropriate.

## IV.     Notice of the Settlement

Notice serves to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp*., 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). And, notice must fairly describe the litigation and the proposed settlement and its legal significance. *See*, *e.g.*, *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998)) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member[.]"). Whether to approve a notice plan is committed to the sound discretion of the trial judge, because he is exposed to the litigants, their strategies, positions, and proof. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

- 18 -

The Settling Parties have agreed upon Dahl Administration, LLC, to be the Notice Specialist and the Claims Administrator and request the Court's approval and appointment of Dahl Administration, LLC. Dahl MMSA ¶ 2.27. Dahl Administration, LLC, is a nationally recognized class action notice provider. *See* Exhibit 3: Affidavit of Jeffrey D. Dahl with Respect to Settlement Notice Plan ("Dahl Aff.") ¶¶ 2-3 and Exhibit 1.

The Notice Plan includes: (1) individual direct email notice to any potential Settlement Class members that can be identified from Defendants' records; (2) mobile notice using paid banner notices on targeted website and applications; (3) web-based notice using "keyword" searches displaying banner notices; (4) targeted social media banner notices; (5) a press release distributed nationwide through PR Newswire; (6) a dedicated, informational website dedicated to the Settlement; and (7) a toll-free telephone helpline Settlement Class members can call to obtain information about the Settlement and request a copy of the Notice. Dahl Aff. ¶ 17.

### A.    Contents of Notice

The Notice documents were designed to be noticed, read, and understood by potential Settlement Class members. Dahl Aff. ¶ 20. The Notice documents include Email Notice, Banner Notices, Short Form Notice, and a Long Form Notice available on the Settlement website (the Short Form Notice, Long Form Notice, and Claim Forms will also be provided by the Claims Administrator to claimants who request them). *Id.* The Notice documents collectively include a fair summary of the Settling Parties' respective litigation positions, the general terms set forth in the Settlement, instructions on how to object to or opt-out of the Settlement, the process and instructions for submitting Claim Forms and the date, time, and place of the Final Fairness Hearing. *See* Long Form Notice, attached as Group Exhibit C to the Settlement.[6]

---

[6] Subject to Court approval, notice of the Mobile Messenger Settlement Agreement will be combined with the notice of the settlement between Plaintiff and CF Enterprises. MMSA ¶ 8.1.

The Notice documents contain information that a reasonable person would consider material in making an informed, intelligent decision of whether to opt out or remain a member of the Settlement Class and be bound by a final judgment, and direct individuals to a convenient location to obtain more detailed information. *See id.* Altogether, the Notice documents fairly apprise the Settlement Class members of the terms of the Settlement and their options in connection with the proceedings.

### 1. Opting Out

A person wishing to opt out of the Settlement Class must individually sign and timely submit written notice of such intent to a designated mailing address to be established by the Claims Administrator. MMSA ¶ 9.1. To be effective, written notice must be postmarked at least twenty-one (21) days prior to the date set in the Notice for the Fairness Hearing. *Id.*

### 2. Objecting

A Settlement Class member desiring to object to the Settlement must submit a timely written notice of his or her objection.[7] MMSA ¶ 9.2. To be timely, written notice of an objection

---

[7] Such notice of objection shall state:  (i) the objector's full name, address, telephone number, and e-mail address; (ii) information identifying the objector as a Settlement Class member, including proof that the objector is a member of the Settlement Class (e.g., a wireless bill showing a charge for Mobile Content related to Mobile Messenger); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear or testify at the Final Fairness Hearing; (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xi) a list, by case

must be filed in appropriate form with the Clerk of the District Court, United States District Court for the District of Nebraska, 111 South 18th Plaza, Suite 3259, Omaha, NE 68102, twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing, and served concurrently therewith on Class Counsel Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60062, and Mobile Messenger's counsel, Ari N. Rothman, Venable LLP, 575 7th Street, N.W., Washington, D.C. 2004. *Id.*

### B.      Scope of Notice

Notice of the Settlement will be as prescribed by the Notice Specialist. In formulating the Notice Plan, Dahl Administration, LLC ("Dahl") and its media partner, FRWD, considered powerful data showing that individuals now spend far more time seeking and consuming information on the Internet than from print sources. Dahl Aff. ¶ 6. With respect to the web-based Notice, the Notice Plan is designed to target a selection of websites, relevant search interest keywords, and specific social media interest areas that match the characteristics of the Settlement Class. *Id.* ¶¶ 12, 18–22.

The Notice Plan provides that Email Notice will be sent directly to any Settlement Class members who can be identified from Defendants' records. Dahl. Aff. ¶ 21. If any email results in a bounce-back or otherwise undeliverable message, the Settlement Class Notice shall be delivered by postcard if Mobile Messenger possess a mailing address, to the last known physical address of the addressee of such email.

To reach as many Settlement Class members as possible, mobile Banner Notices with a link to the Settlement website will appear on a subset of the 2,000 most trafficked websites. Dahl Aff. ¶ 22. The Notice Plan will also leverage popular mobile applications, such as Google,

---

name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative. MMSA ¶ 9.2.

Apple, the NYTimes, and CNN, and popular social media platforms, such as Facebook, Twitter, and others. Dahl. Aff. ¶ 23.

Placement of Banner Notices delivered through the Internet will enable the Notice Specialist to track in detail where Banner Notices are displayed on mobile websites and applications and the behavior of users who click on the Banner Notices to visit the Settlement website. Dahl Aff. ¶ 24. The Notice Specialist will use such data to optimize ad placements to those websites proving to be most effective. Dahl. Aff. ¶ 24 ("Digital advertising is the only method that enables substantive tracking, real-time optimization, and the ability to prove the unique reach to an individual browser or phone ID."). The use of digital Banner Notices has proven to be an extraordinarily effective means of providing notice in the past. *See* Dahl Aff. ¶ 25 ("In Dahl's experience, digital Banner Notice advertising delivered over the Internet has consistently proven to be the best driver of settlement website visits, digital document downloads, and online claim filing when compared to other methods of publication notice.").

The Notice Plan provides for the display of Banner Notices to users of Facebook. Such Notices will be targeted and displayed only on Facebook pages displayed to Facebook users whose profile fits the definition of the Settlement Class. Dahl Aff. ¶ 28. In Dahl's experience, "this method of targeting has led to significant increases in overall claims." Dahl. Aff. ¶ 28.

The Notice Plan also provides for the issuance of a press release and the establishment of a Settlement website and toll-free number. A national press release will be issued via PR Newswire and distributed to 5,815 newspapers, television stations, radio stations, and magazines, as well as approximately 5,400 websites and online databases, including all major search engines. Dahl. Aff. ¶ 30.

A Settlement website will be established that provides Settlement Class members with general information about the Settlement, answers to frequently asked questions, a means to submit an electronic Claim Form or download a Claim Form, and which displays important date and deadline information. Dahl. Aff. ¶ 35. The Settlement website will allow Settlement Class members to review and print certain Settlement documents, including the Long Form Notice. Dahl. Aff. ¶ 35. The Notice Plan also provides that a toll-free Settlement helpline will be established to assist potential Settlement Class members seeking information regarding the Settlement. Dahl. Aff. ¶ 31.

The Notice documents and the Notice Plan are the best notice practicable under the circumstances, constitute due and sufficient notice to the Settlement Class, and comply with Fed. R. Civ. P. 23 and due process requirements. *See* Dahl Aff. ¶¶ 36–37. Therefore, the Notice documents and Notice Plan should be approved.

## <u>CONCLUSION</u>

As the above analysis shows, the Settlement readily meets the standard for preliminary approval. Accordingly, Plaintiff, individually and on behalf of the Settlement Class, by and through counsel, respectfully requests that this Court enter an order:

A.      granting preliminary approval of the Settlement;

B.      approving Notice to the Settlement Class and methods for dissemination of Notice as set forth in the Settlement and Notice Plan;

C.      certifying the Settlement Class for settlement purposes only;

D.      appointing Cullan and Cullan LLC as Class Representative;

E.      appointing Dahl Administration, LLC, as Notice Specialist and Claims Administrator;

F.      appointing Ben Barnow and Ralph K. Phalen as Co-Lead Settlement Class Counsel;

G.      approving the Claim Form as attached as Exhibit A to the Settlement;

H.      scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement and the request for attorneys' fees, costs, and expenses and Representative Plaintiff incentive award; and

I.       granting any other or additional relief as the Court may deem just and appropriate.

Dated: December 21, 2015                Respectfully submitted,

                                           _/s/ Ben Barnow_____
                                         One of the attorneys for Plaintiff

Ben Barnow (*pro hac vice*)
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
312-621-2000
312-641-5504 fax
b.barnow@barnowlaw.com

Ralph Phalen (*pro hac vice*)
Ralph K. Phalen, Attorney at Law
1000 Broadway Ste. 400
Kansas City Mo. 64105
816-589-0753
816-471-1701 fax
phalenlaw@yahoo.com

***Proposed Class Counsel***

Richard J. Schicker
Bar No. 13686
Law Offices of Richard J. Schicker
2809 So. 160th Street, Suite 101
Omaha, NE 68130

Mitchell L. Burgess (admitted *pro hac vice*)
Burgess & Lamb, P.C.
1000 Broadway, Suite 400
Kansas City, MO 64105
Telephone: (816) 471-1700
Facsimile: (816) 471-1701
mitch@burgessandlamb.com

***Additional Plaintiff's Counsel***

## <u>Certificate of Service</u>

The undersigned hereby certifies a true and correct copy of the foregoing was served via filing with the Court's e-filing service, on this 21st day of December, 2015.

<u>   /s/ Ben Barnow</u>