IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CULLAN AND CULLAN LLC, individually and on behalf of all others similarly situated;<br><br>         Plaintiff,<br><br>   v.<br><br>M-QUBE, Inc. a Delaware corporation; MOBILE MESSENGER AMERICAS, Inc., a Delaware Corporation;  CF ENTERPRISES PTY., Ltd., an Australian Company; and  JOHN DOES 1-200,<br><br>         Defendants. | **8:13CV172**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the plaintiff's motions for preliminary approval of class action settlements, Filing Nos. 165 and 167, and on Intervenor Richard Geier's motion to withdraw as intervenor, Filing No. 187.

I.     BACKGROUND

Geier had objected to the motion for preliminary approval.  Filing No. 169, Response (properly denominated as "Objection").  In an earlier order, this court granted Richard Geier leave to intervene in the action to object to the parties' proposed settlement.  *See* Filing No. 74, Memorandum and Order ("Mem. & O.").  Geier was the named plaintiff in a separate purported class action suit against defendant Mobile Messenger in the United States District Court for the Eastern District of Washington. *See Geier v. M-Qube, Inc.*, Case No. 2:13-cv-00354 (W.D. Wash.) (the "Washington Action").  He has now shown that he has voluntarily dismissed with prejudice his claims in the Washington action and no longer has an interest in this action.  The court finds

Geier's motion to withdraw should be granted and his objections to the proposed settlement will be denied as moot.[1]

This is a putative class action involving an alleged practice known as "cramming," that is, placing unauthorized, misleading, or deceptive charges on a consumer's cell-phone bill. The plaintiff, a law firm in Omaha, Nebraska, alleges that it was billed for unauthorized subscriptions on its wireless telephone bill. *Id.* at 5. It asserts a claim for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* and for tortious interference with a contract and unjust enrichment under state law.

Defendants Mobile Messenger and M-Qube (hereinafter, collectively, "MM") are mobile aggregators and application providers who act as intermediaries between third-party mobile content providers (who purportedly "market and sell subscriptions to a variety of mobile text message services") and wireless carriers. Defendant CF Enterprises, Ltd., ("CF") owns and operates one such mobile content provider, CellSafari.com.

This court has twice denied the parties' motion for preliminary approval of class action settlements. Filing Nos. 74 and 97. The facts are set out in those earlier orders and need not be repeated here. *See* Filing No. 74, Mem. & O. at 2-8; Filing No. 97, Mem. & O. at 1-3. With respect to the parties' first proposals, this court stated it was troubled by numerous aspects of the class action settlement, including the fact that the settlement funds appeared inadequate in view of the size of the class and the

---

[1]The Washington court recently denied Geier's motion for class action certification. *Geier v. M-Qube, Inc.*, No. C13-354-TSZ, 2016 WL 3458345, at *5 (W.D. Wash. June 24, 2016).

magnitude of losses.  The court also expressed concerns about the efficacy of the notice process and the extent to which the proposed settlement would actually benefit class members.  Filing No. 74, Mem. & O. at 18.  On the parties' second proposal, the court remained unable to ascertain the size of the potential class and noted that the notices to the putative class remained inadequate.  Filing No. 97, Mem. & O. at 3-4.

The parties now propose two separate class action settlement agreements, one with defendant CF and one with defendant MM.  *See* Filing Nos. 166-1 and 168-1, Proposed Amended and Restated Settlement Agreements.  For the purposes of settlement, the parties agree to certification of the following classes:

The CF Enterprises Settlement Class is defined as:

[A]ll current and former Wireless Subscribers Nationwide, who at any time from January 31, 2011, to the Notice Date, received a text message from any Message Claim Shortcode or relating to a Message Claim Program. "Message Claim Shortcode" means the following shortcodes: 25872, 29104, 33288, 44329, 49712, and 70451.  "Message Claim Program" means the following programs: searchyourhoroscope.com; tunezotogo.com; hearmemobile.com; myringtonespot.com; cellsafari.com; tonezgalore.com; urzodiachoroscopes.com; and fonezoneportal.com.

The Mobile Messenger Settlement Class is defined as:

[A]ll current and former Wireless Subscribers Nationwide, who (a) at any time from January 1, 2010, to the Notice Date, incurred any charge, whether paid or not, associated with any of the billing descriptors, shortcodes, and program names set forth on Exhibit B [to the Mobile Messenger Settlement Agreement and posted on the Settlement Website]; or (b) at any time from January 1, 2010, to the Notice Date, received any message from a Premium Short Code registered at the CTIA to (i) any organization recognized as exempt from federal income taxation under

I.R.C. § 501(c)(3) or I.R.C. § 501(c)(4), or (ii) federal political committees registered with the Federal Election Commission.[2]

Under the Amended and Restated Stipulation of Settlement between the plaintiff and MM ("MM Settlement Agreement"), the settlement class consists of consumers who received text messages from any one of hundreds of different short codes.  *See* Filing No. 168-1, Ex. 1, Ex. B.  It provides the Settlement Class members will receive $30 per unauthorized charge for claimed unauthorized mobile phone charges associated with the any of the billing descriptors, shortcodes, and program names set forth on Exhibit B to the Settlement.[3]  There is no monetary cap on MM's payment of valid claims submitted under this provision.  Also, MM will pay all costs of providing Notice of the Settlement to the Settlement Class and the Costs of Claims Administration.  MM also agrees to pay Proposed Co-Lead Settlement Class Counsel, subject to Court approval, an amount up to $485,000 in attorneys' fees and reimbursement of costs and expenses.  MM also agrees to pay, subject to Court approval, a Class Representative incentive award to Plaintiff in the amount of $2,500.  Those payments are separate and in addition to the other amounts due the Class under the settlement.  The proposed agreement allows MM to challenge claims based on a consent defense only if they

---

[2] Excluded from both Settlement Classes are the following:  CF Enterprises and Mobile Messenger (collectively, "Defendants"); any parent, subsidiary, affiliate and control persons of Defendants; any officers, directors, agents, servants, and employees of Defendants; the Claims Administrator; any trial judge presiding over this case; and the immediate family members of any such Person(s).

[3] Limited to $20 if the claimant has already been refunded or reimbursed at the time that the claimant submit a claim under the MM Settlement Agreement.

4

present clear and convincing evidence and provides a mechanism whereby the issue of whether a potential claimants had consented can be resolved by a special master.

In exchange for those benefits, the MM Settlement Agreement includes a release that is tailored to the unique posture of this litigation.[4]  It provides that each Settlement Class member who does not submit a valid claim will continue to have the right to pursue litigation against Mobile Messenger or any other Released Party—as described specifically in the Settlement—on an individual basis; only their right to participate in a class action or mass action will be released.  The Parties released under the Agreement are Mobile Messenger, as well as their respective predecessors and successors, and their past and present officers, directors, employees, attorneys, representative, agents, and stockholders, with the exception of Darcy Wedd, Erdolo Eromo, Michael Pajaczkowski and Fraser Thompson, who have been named in governmental actions based on or related to the facts and circumstances underlying this Action.

The Amended and Restated Stipulation of Settlement between the plaintiff and defendant CF ("CF Settlement Agreement") applies to a subclass of consumers who received text messages from one of six different short codes and provides that class members—persons who received one or more text messages from identified CFE Shortcodes or related to identified CFE Message Programs—will receive $65 per text message claimed, up to 3 messages per CFE Settlement Class member.  It provides,

---

[4]The four major cell carriers have settled with federal agencies over their participation in the cramming practices at issue herein and potential class members will be able to receive compensation directly from the carriers.  *Geier v. M-Qube, Inc.*, No. C13-354-TSZ, 2016 WL 3458345, at *5 (W.D. Wash. June 24, 2016).

however, that if the value of valid claims exceed $1,000,000, the claims will be prorated. It also contains provisions substantively similar to those outlined above with respect to the MM Settlement Agreement.

The claims process requires each class member to provide name, address, telephone number and email address and to state to the best of their knowledge and recollection the wireless number associated with the charge and (a) the date description, and amount of each charge for which a refund benefit for a Subscription Charge Claim is requested; (b) a statement that each such charge was unauthorized; (c) the total amount of the refund benefit requested for the Subscription Charge Claim; and (d) confirmation that the Settlement Class member' did not request or receive a refund from any source for the charges for which a Refund Benefit for a Subscription Charge Claim is requested.   However, if the Settlement Class member has no knowledge or recollection, the Settlement Class member may state that he or she does not know.  Further the Agreements provide that the Claims Administrator may reject a claim if it is shown and verified that the claimant was previously provided a refund or credit from any source (including, but not limited to Mobile Messenger, a Wireless Carrier, an Aggregator, a Third-Party Content Provider, or through a different settlement) for the charge that is requested for refund in the claim.  The Agreements also provide a resolution procedure for challenged or rejected claims and the claim form will disclose the defendants' right to challenge any claims they have reason to believe are invalid.   The Agreements also provide procedures whereby settlement class members can opt-out or object to the Settlements.

6

The parties, in consultation with the proposed Claims administrator, have designed a notice plan targeted at the smartphone market.  The Notice Plan includes: (1) individual direct email notice to any potential Settlement Class members that can be identified from Defendants' records; (2) mobile notice using paid banner notices on targeted website and applications; (3) web-based notice using "keyword" searches displaying banner notices; (4) targeted social media banner notices; (5) a press release distributed nationwide through PR Newswire; (6) a dedicated, informational website dedicated to the Settlement; and (7) a toll-free telephone helpline Settlement Class members can call to obtain information about the Settlement and request a copy of the Notice.

The parties' notice plan provides that Banner Notices with a link to the Settlement website will appear on a subset of the 2,000 most trafficked websites.  Filing No. 168-3, Affidavit of Jeffrey D. Dahl.  The notice plan will utilize popular mobile applications, such as Google, Apple, the NYTimes, and CNN, and popular social media platforms, such as Facebook, Twitter, and others.  Further, the Claims Administrator will establish a Settlement website that will provide settlement class members with general information about the Settlement, answers to frequently asked questions, a means to submit an electronic Claim Form or download a Claim Form, and which will display important date and deadline information.  Also, the settlement website will allow settlement class members to review and print settlement documents, including the Long Form Notice.  A toll-free settlement helpline will also be established under the notice plan.

The record shows the parties conducted extensive arms-length negotiations and were aided by an experienced mediator.  The settlement proposals have undergone several revisions.

II.     CLASS ACTION

      A.     LAW

Under the Federal Rules of Civil Procedure, "one or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)*; *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (describing requirements as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation).  "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994).

"Rigorous analysis" is necessary to ensure that the plaintiff satisfies all Rule 23 requirements for certifying a class. *Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 570 (8th Cir. 2015).  This rigorous analysis often results in some overlap with the merits of the plaintiff's claim. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Id.* at 348 (quoting *Califano v.*

8

*Yamasaki*, 442 U.S. 682, 700–701, (1979)).  Under Fed. R. Civ. P. 23, a class action may be maintained if the suit satisfies the criteria set forth in subdivision (a)— numerosity, commonality, typicality, and adequacy of representation—and it also must fit into one of three categories described in subdivision (b).  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (noting that "[b]y its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action"); Fed. R. Civ. P. 23.  "A party seeking class certification must . . . be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Dukes*, 564 U.S. at 350.

With respect to numerosity, the Eighth Circuit has not established a specific rule as to the necessary size of a class, but it has directed courts to consider several factors in determining whether joinder is feasible: the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members.  *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *vacated on other grounds*, 487 U.S. 1229 (1988).  To demonstrate typicality, the putative class must show that the named parties' claims are typical of the class.  Fed. R. Civ. P. 23(a)(3). The burden on the plaintiff to prove typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff."  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).  The presence of a common legal theory, however, does not establish typicality when proof of a violation requires an individualized inquiry. *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006) (involving a substantive

due process claim that invariably "demands an exact analysis of circumstances before any abuse of power is condemned.").

"Commonality requires a showing that class members 'have suffered the same injury.'" *Powers*, 776 F.3d at 571 (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157, (1982)).  "However, '[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (quoting *Dukes*, 564 U.S. at 350 (quotation omitted; emphasis in original)); *see Comcast Corp.* 133 S. Ct. 1426, 1433 (2013) (allowing variation in damages unless "individual damage calculations . . . overwhelm questions common to the class"); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ("The fact that individuals . . . will have . . . claims of differing strengths does not impact on the commonality of the class"); *Mejdrech v. Met–Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) ("If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop.").  In certain contexts "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  *Dukes*, 564 U.S. 338, n.5 (noting that commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

10

Further, the named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem,* 521 U.S. at 625. The inquiry also factors in competency and conflicts of class counsel. *Id.* at 626 n.20. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)).

If the plaintiffs meet the requirements under Rule 23(a), they must then establish that their class fits into one of the provisions of Rule 23(b) in order to be certified. Fed. R. Civ. P. 23(b). The Supreme Court has explicitly determined that "individualized monetary claims belong in Rule 23(b)(3)." *Dukes,* 564 U.S. at 362. For the plaintiffs to prevail on a motion for certification under Rule 23(b)(3), they must demonstrate the existence of superiority and predominance. Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of his or her claim is susceptible to classwide proof. *Amgen Inc. v. Connecticut Ret. Plans and Trust Funds,* 133 S. Ct. 1184, 1196 (2013). Rather, all that is required is that a class plaintiff show that "common questions 'predominate.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member. *Halvorson v. Auto-Owners Ins. Co.,* 718 F.3d 773, 779 (8th Cir. 2013) (explaining that the lack of an individualized

11

injury would impact predominance and mean that "individual questions necessary to determine breach of contract and bad faith" would include "individual inquiries" that would "predominate over" whether the defendant's claim-processing methodologies were reasonable).  "[T]he plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability."  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem,* 521 U.S. at 625. "[C]ommon questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class."  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006)).  "If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."  *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013); *see Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

The superiority requirement asks whether the class action is the best available method for resolving the controversy.  *See* Fed. R. Civ. P. 23(b)(3).  A significant consideration in evaluating superiority is whether the claims are too small to be litigated individually.  *Amchem Prods., Inc.*, 521 U.S. at 617; *Mace v. Van Ru Credit Corp.*, 109

F.3d 338, 344 (7th Cir. 1997) (stating "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

"Class ascertainability is 'an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3).'" *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013); *see In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (recognizing the implicit requirement of ascertainability in class actions).  A plaintiff must show, by a preponderance of the evidence, that the class is "currently and readily ascertainable based on objective criteria." *Carrera*, 727 F.3d at 306 (quoting *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).  Ascertainability plays a key role as part of a Rule 23(b)(3) class action lawsuit because:

> First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class.  Second, it ensures that a defendant's rights are protected by the class action mechanism.  Third, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action.

*Carrera*, 727 F.3d at 307.

B.     Discussion

The court has reviewed the parties' most recent proposal and finds the parties have preliminarily shown they are entitled to prosecute the action as a class action on behalf of similarly situated individuals.  The numerosity requirement is satisfied in that the CF settlement class is estimated to include thousands of members and the MM settlement class is estimated to include millions of members.  The plaintiff's claimed injury is typical of injuries to the class.  The issue of liability for unauthorized charges is

13

common to all class members.  The class representative has shown that he can adequately prosecute the action on behalf of class members.  He is represented by experienced counsel and the parties will utilize the services of an experienced consultant for dissemination of notice and administration of the settlement.

The parties have also satisfied the predominance and superiority requirements under Federal Rule of Civil Procedure 23(b).  The common question of unauthorized charges with a common nucleus of operative facts and issues underlies the classes' claims.  The issue of liability is a genuine common issue and individual damages can be ascertained in the claims process.  In view of the size of the class and the relatively small individual potential recovery, a class action is the best available method for resolving the controversy.  The claims are too small to be litigated individually and would not provide an incentive for individuals to independent actions to prosecute the claims.  The parties have made a sufficient preliminary showing that it is administratively feasible to identify class members, subject to proof at the final fairness hearing.

III.    PRELIMINARY APPROVAL OF SETTLEMENT

A.    Law

In considering preliminary approval, the Court makes a preliminary evaluation of the fairness of the settlement, prior to notice.  Manual of Complex Litigation (Fourth) § 21.632 (2010); *see also* Fed. R. Civ. P. 23(e).  First, the Court must make a preliminary determination of the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the proposed settlement and the date of the fairness hearing.  *Id.*  At the preliminary approval stage, the court's focus is on whether

14

a proposed "settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (quoting *Schoenbaum v. E.I. DuPont de Nemours & Co.*, No. 4:05-CV-01108, 2009 WL 4782082, at *3 (E.D. Mo. Dec. 8, 2009)).   In making that determination, courts consider the terms of the settlement as compared to the merits of the plaintiff's case; the complexity, expense, and likely duration of litigating the matter to judgment; the defendant's financial condition; and the amount of opposition to the settlement, if any.   *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015). A court may also consider the stage of proceedings and amount of discovery completed, the opinion of experienced counsel, and whether the settlement was negotiated at arm's length.   *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005).   A court may also consider the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits.   *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

"A settlement agreement is 'presumptively valid.'"   *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990)).   "The guiding principle [is] that 'a class action settlement is a private contract negotiated between the parties.'"   *Marshall*, 787 F.3d at 508 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)).   "The court's role in reviewing a negotiated class settlement is to ensure that the agreement is

15

not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* (quoting *In re Wireless,* 396 F.3d at 934).

After an agreement is preliminarily approved, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval. *Id.* A district court is required to consider four factors in making a final determination that a settlement is fair, reasonable, and adequate:  (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel.,* 396 F.3d at 931.

The notice of a class action settlement "need only satisfy the 'broad "reasonableness" standards imposed by due process.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)).  It is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  To satisfy due process, the notice must reflect a desire to actually inform. *Mullane*, 339 U.S. at 315.

B.  Discussion

The court is familiar with the litigation.  The record shows proposed Co-Lead Settlement Class Counsel and counsel for Mobile Messenger engaged in several rounds of settlement negotiations during the past two years.  They have shown they

16

pursued informal discovery targeted at information relevant to the settlement and collected and reviewed publicly-available information regarding the parties and claims at issue and the settlements also provide for confirmatory discovery.

The parties have shown the settlements can deliver a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal, especially in view of the fact that many individuals may receive reimbursement for unauthorized charges as a result of settlements between the government and the nation's four largest wireless carriers.  They have also shown that benefits provided under the proposed settlements compare favorably to the terms of other settlements involving similar cramming claims.  *See* Filing No. 168-4, Amended Stipulation of Settlement, *Gray v. Mobile Messenger Ams., Inc.*, No. 08-cv-61089-CMA (Aug. 4, 2008) Filing No. 168-5, Stipulation of Settlement, *Vandyke v. Media Breakaway LLC*, No. 08-CV-22131 (S.D. Fla. Feb. 13, 2009).

The court has also reviewed the notice documents.  The notices are written in plain English and were designed to be read and understood.  The notice documents include Email Notice, Banner Notices, Short Form Notice, and a Long Form Notice available on the Settlement website (the Short Form Notice, Long Form Notice, and Claim Forms will also be provided by the Claims Administrator to claimants who request them).  The Notice documents collectively include a fair summary of the settling parties' respective litigation positions, the general terms set forth in the settlements, provide instructions on how to object to or opt-out of the settlement, describe the process and instructions for submitting Claim Forms and the date, time, and place of the Final

Fairness Hearing.  Filing No. 166-1, Ex. 1, CF Settlement Agreement, Exhibit C, Notice. The notice documents contain information that a reasonable person would consider material in making an informed, intelligent decision of whether to opt out or remain a member of the Settlement Class.  Altogether, the notice documents fairly apprise the potential settlement class members of the terms of the settlements and of their options in connection with the proceedings.  Under the circumstances, the notice plan provides the best notice practicable under the circumstances.  The court finds the proposed notice complies with Rule 23 and satisfies due process.  Therefore, the court finds the notice documents and notice plan should be approved and notices should be disseminated to potential class members.  Accordingly,

IT IS ORDERED:

1.    Intervenor Richard Geier's motion to withdraw as intervenor (Filing No. 187) is granted.

2.    Intervenor Richard Geier's objections to the proposed settlement (Filing No. 169) are denied as moot.

3.    The parties' motions for preliminary approval of settlements (Filing Nos. 165 and 167) are granted.

4.    An Order of Preliminary Approval will issue this date.

Dated this 27th day of September, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

18