## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Cullan and Cullan LLC, on behalf of itself and all others similarly situated, | Case No. 8:13-cv-00172 |
| Plaintiff, | The Honorable Joseph F. Bataillon |
| v. | |
| m-Qube, Inc., *et al.*, | Magistrate Judge Susan M. Bazis |
| Defendants. | |

**REPRESENTATIVE PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENTS, AND AWARDS OF ATTORNEYS' FEES,
COSTS, AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

# TABLE OF CONTENTS

*Page*

I. INTRODUCTION ...................................................................................................1

II. THE LITIGATION ...............................................................................................1

III. THE SETTLEMENTS ...........................................................................................3

   A. The Settlement Class Definitions...............................................................3

   B. Settlement Benefits ..................................................................................3

      1. Reimbursement for Unauthorized Cramming Charges...................................3

      2. Payment for Receipt of Unauthorized Text Messages...................................4

      3. Claim Submission and Dispute Resolution Procedures................................4

      4. Limited Release .............................................................................5

      5. Notice and Claims Administration Costs.................................................6

      6. Payment of Attorneys' Fees, Costs, and Expenses, and Incentive Awards....................6

   C. The Court-Approved Notice Program Was Effective and Satisfied All Constitutional Requirements......................................................................6

IV. FINAL APPROVAL OF THE SETTLEMENTS IS APPROPRIATE ...................................8

   A. The Merits of the Plaintiff's Case, Weighed Against the Terms of the Settlements ...........9

   B. The Defendants' Financial Condition .................................................................13

   C. The Complexity and Expense of Further Litigation............................................14

   D. The Amount of Opposition to the Settlements...................................................14

V. THE REQUESTED ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARD ARE REASONABLE AND APPROPRIATE........................................................15

   A. The Requested Award of Attorneys' Fees is Fair and Reasonable.....................15

      1. Co-Lead Settlement Class Counsel and other Plaintiff's Counsel Report Reasonably Spending in Excess of 2,100 Hours Advancing the Litigation ......................16

i

2. The Hourly Rates of Plaintiff's Counsel Are Reasonable ..............................................17

3. The *Johnson* Factors Confirm the Requested Award is Reasonable and Appropriate ..18

    a. The Time and Labor Required, the Difficulty of the Questions Involved, and the Skill Required to Litigation the Case ....................................................................19

    b. The Experience, Reputation, and Ability of the Attorneys....................................19

    c. The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case ................................................................................................................19

    d. The Customary Fee ................................................................................................20

    e. Whether the Fee is Fixed or Contingent ...............................................................20

    f. The Amount Involved and the Results Obtained....................................................21

    g. The Undesirability of the Case .............................................................................21

    h. Time Limitations Imposed by the Client or the Circumstances ............................22

    i. The Nature and Length of the Professional Relationship with the Client ...............22

C. The Requested Incentive Award is Reasonable and Appropriate .......................................22

VI. CONCLUSION..................................................................................................................22

## **TABLE OF AUTHORITIES**

*Cases*

*Page*

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ...................................................................................8

*Arthur v. Sallie Mae*,
   No. 10-cv-00198-JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2002) ................................13

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988)...........................................................................20, 21

*Consumer Fin. Protection Bureau v. Sprint Corp.*,
   No. 14-cv-09931 (S.D.N.Y. June 30, 2015) .................................................................2

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ...............................................................................22

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)...........................................................................................7

*Fields v. Mobile Messengers Am., Inc.*,
   No. C 12-05160 WHA, 2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) .............................10, 11

*Fed. Trade Comm'n v. AT&T Mobility, LLC*,
   1:14-cv-3227-HLM (N.D. Ga.)................................................................................2

*Fed. Trade Comm'n v. T-Mobile USA*,
   No. 14-cv-00967-JLR, ECF No. 18 (W.D. Wash. Dec. 22, 2014) ...................................2

*Geier v. m-Qube Inc.*,
   No. 13-354, 2016 WL 3458345 (W.D. Wash. June 24, 2016) .......................................11

*Grant v. Capital Mgmt. Servs., L.P.*,
   No. 10-CV-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014)................................12

*Gray v. Mobile Messenger Ams., Inc., et al.*,
   No. 08-cv-61089-CMA (Aug. 4, 2008) ...................................................................12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..........................................................................................21

*Huyer v. Njema*,
   No. 16-1484, 2017 WL 461096 (8th Cir. Feb. 3, 2017) ..............................................9

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................14

*In re Capital One TCPA Litig.,*
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................................13

*In re Charter Commc'ns Sec. Litig.,*
    No. 4:02-CV-1186, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ............................8

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.,*
    No. 3:11-MD-02261 (S.D. Cal. Feb. 20, 2013) ......................................................13

*In re Sunbeam Sec. Litig.,*
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) .............................................................20, 22

*In re Zurn Pex Plumbing Prods. Liab. Litig.,*
    08-MDL-1958 ADM/AJB, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ..................12

*Johnson v. Georgia Highway Express, Inc.,*
    488 F.2d 714 (5th Cir. 1974)................................................................................ 18

*Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1,*
    921 F.2d 1371 (8th Cir. 1990) ................................................................................8

*Marshall v. Nat'l Football League,*
    787 F.3d 502 (8th Cir. 2015) ............................................................................9, 14

*McBean v. City of New York,*
    233 F.R.D. 377 (S.D.N.Y. 2006) ..........................................................................12

*Peters v. Nat'l R.R. Passenger Corp.,*
    966 F.2d 1483 (D.C. Cir. 1992) ..............................................................................7

*Pinto v. Princess Cruise Lines, Ltd.,*
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ..................................................................20

*Rannis v. Recchia,*
    380 F. App'x 646 (9th Cir. 2010) ............................................................................7

*Rose v. Bank of Am. Corp.,*
    No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...............13

*Smith v. Microsoft Corp.,*
    No. 11-CV-1958 JLS (BGS), 2014 WL 323683 (S.D. Cal. Jan. 28, 2014)...............11

*Vandyke v. Media Breakaway LLC*,
   No. 08-CV-22131 (S.D. Fla.) ............................................................................. 12, 13

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ................................................................................. 9

*West v. Nabors Drilling USA, Inc.*,
   330 F.3d 379 (8th Cir. 2003) ................................................................................ 15

*Zoll v. E. Allamakee Cmty. Sch. Dist.*,
   588 F.2d 246 (8th Cir. 1978) ................................................................................ 18


<u>Statutes and Rules</u>

Fed. R. Civ. P. 23 .................................................................................... 6, 7, 9, 15


<u>Other Authorities</u>

Order, Fed. Commc'ns Comm'n, File No. EB-TCD-14-00016543 (May 12, 2015) ...................... 2

## I. __INTRODUCTION__

After years of hard-fought litigation, Representative Plaintiff reached class action settlement agreements (collectively, the "Settlements") with defendants Post SMS. Co. Americas, Inc., formerly known as Mobile Messenger Americas, Inc., and Post SMS Co. Qube, Inc., formerly known as m-Qube, Inc. (collectively, "Mobile Messenger"), and defendant CF Enterprises Pty., Ltd. ("CFE"). The Settlements represent an excellent result for the Settlement Classes, considering the nature of the claims at issue and the risks, complexity, and expense of further litigation. On September 27, 2016, the Court, after briefing and due deliberation, entered its Memorandum and Order granting preliminary approval of the Settlements. ECF No. 189.

The Court-approved Notice Program has been extremely effective, serving a total of 173.4 million targeted digital impressions. The reaction to the Settlements has been extraordinarily positive. Not a single Settlement Class member objected to or opted-out of either of the Settlements. Additionally, as of February 22, 2017, Dahl Administration reported having received 18,446 claims to date (the claims deadline is May 31, 2017).

As illustrated herein, through an analysis of the factors outlined by the Eighth Circuit Court of Appeals, the Settlements are fair, reasonable, and adequate. *See Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Furthermore, Representative Plaintiff's requests for awards of attorneys' fees, costs, and expenses, and a class representative service award are reasonable and appropriate. Thus, respectfully, the Court should grant final approval of the settlement, and award the attorneys' fees, costs, expenses, and incentive awards requested herein.

## II. __THE LITIGATION__

This litigation stems from Plaintiff's allegation that Mobile Messenger and CFE caused unsolicited text messages to be sent to wireless telephone subscribers and, additionally, caused

unauthorized mobile content to be billed to wireless telephone subscribers without their approval, knowledge, or consent. ECF No. 1.

Plaintiff defeated several motions to dismiss in this matter. On July 5, 2013, CFE filed a motion to compel arbitration. ECF No. 17. Mobile Messenger filed a motion to dismiss. ECF No. 20. Intervenor Geier also moved to dismiss all unauthorized subscription charge claims on behalf of Washington consumers. ECF No. 101. The Court denied these motions. ECF No. 119.

The parties also engaged in substantial discovery. Defendants responded to Plaintiff's interrogatories and document requests, and Plaintiff received and reviewed in excess of 20,000 pages of documents from Defendants.

During the course of this litigation, four major wireless carriers reached settlements with the various federal and state authorities, collectively making available to consumers over $200 million for reimbursement of unauthorized premium short code charges. *See, e.g.*, Order, Federal Communications Commission, File No. EB-TCD-14-00016543 (May 12, 2015) (Verizon Wireless to pay $90 million in fines—$70 million of which will fund a consumer redress program to provide refunds to its customers); Stipulated Final Judgment and Order, *Consumer Fin. Protection Bureau v. Sprint Corp.*, No. 14-cv-09931 (S.D.N.Y. June 30, 2015) (Sprint to provide up to $50 million to provide redress to consumers); Order, *FTC v. T-Mobile USA*, No. 14-cv-00967-JLR, ECF No. 18 (W.D. Wash. Dec. 22, 2014) (T-Mobile to pay $90 million— $67.5 million of which shall be available for consumer refunds and debt forgiveness); Stipulated Order, *Fed. Trade Comm'n v. AT&T Mobility, LLC*, 1:14-cv-3227-HLM (N.D. Ga.) (AT&T to pay $105 million—$80 million of which shall go towards consumer redress).

## III.   THE SETTLEMENTS[1, 2]

### A.   The Settlement Class Definitions

The Mobile Messenger Settlement Class is defined as follows:

[A]ll current and former Wireless Subscribers Nationwide, who at any time from January 1, 2010, to the Notice Date, incurred any charge, whether paid or not, associated with any of the billing descriptors, shortcodes, and program names set forth on Exhibit B [to the Mobile Messenger Settlement Agreement and posted on the Settlement Website]; or (b) at any time from January 1, 2010, to the Notice Date, received any message from a Premium Short Code registered at the CTIA to (i) any organization recognized as exempt from federal income taxation under I.R.C. § 501(c)(3) or I.R.C. § 501(c)(4), or (ii) federal political committees registered with the Federal Election Commission.

MMSA ¶ 2.39[3]. The CFE Settlement Class is defined as follows:

[A]ll current and former Wireless Subscribers Nationwide, who at any time from January 31, 2011, to the Notice Date, received a text message from any Message Claim Shortcode or relating to a Message Claim Program.

CFESA ¶ 2.42.

### B.   Settlement Benefits

#### 1.   Reimbursement for Unauthorized Cramming Charges

Mobile Messenger Settlement Class Members shall receive $30 per claimed unauthorized mobile phone charge associated with a concerned program name, billing descriptor, and short code (set forth as an Exhibit to the MM Settlement), subject to no monetary cap, except that such claims will be limited to $20 for amounts already reimbursed or refunded at the time the claim is submitted. MMSA ¶¶ 5.1, 5.2.

---

[1] References to particular paragraphs of the Settlement are prefixed by "CFESA ¶".
[2] The following persons are excluded from the Mobile Messenger Settlement Class and the CFE Settlement Class: Excluded from the Class are the following: Defendants, the Claims Administrator, and any of aforementioned respective parent, subsidiary, affiliate and control persons of Defendants, as well as the officers, directors, agents, servants, and employees of Defendants, any trial judge presiding over this case, and the immediate family members of any such Person(s)."
[3] References to particular paragraphs of the Settlement are prefixed by "MMSA ¶".

### 2.      Payment for Receipt of Unauthorized Text Messages

CFE Settlement Class Members shall receive $65 per unauthorized text message validly claimed, with a limit of 3 unauthorized text messages per Class Member, but subject to a total cap of $1,000,000.[4] CFESA ¶ 5.1.

### 3.      Claim Submission and Dispute Resolution Procedures

The Settlements include detailed claims submission and dispute resolution procedures. To be valid, a Claim Form for a Subscription Charge Claim must be timely submitted, signed, and include a Settlement Class member's name, current address, telephone number, and any email address used in communications with Defendants (if applicable), and the wireless number associated with the mobile device that incurred a charge. MMSA ¶ 6.3.1. The Claim Form must also provide, to the best of the Settlement Class member's knowledge and recollection, the date, description, and amount of each requested refund charge, confirm that the charge was unauthorized, state the total amount of the refund benefit requested, and confirm that the claimant did not receive a refund from any source for the requested refund charges. If the Settlement Class member has no knowledge or recollection of these items, they should write in "I do not know." MMSA ¶ 6.3.2.

To be valid, a Claim Form for a Message Claim must be timely submitted, signed, and include the Settlement Class member's name, current address, telephone number, any email address used in communications with CFE, and the cell phone number for each device alleged to have received an unauthorized text message or incurred an unauthorized charge. CFESA ¶ 6.3.1. The Claim Form must also include the number of each mobile device that received each message for which a benefit is requested, and the number of messages for each such device, a statement that each such charge was unauthorized, the total amount of the benefit requested, and a

---

[4] In the event the monetary cap of $1,000,000 is reached, claims will be prorated.

statement that the Settlement Class member did not previously receive a refund or credit from any source with respect to the Message Claim. CFESA ¶ 6.3.2. The Claims Administrator will endeavor to process any claim form submitted that includes a cell phone number that has received any unsolicited text message, the Settlement Class member's name and mailing address, even if the Settlement Class member has not completed the other field in the claim form, provided that they set forth in writing that they have insufficient knowledge to complete the incomplete field. CFESA ¶ 6.3.3.

In turn, the Settlements each provide a dispute resolution procedure to fairly address disputes that may arise in the claim process. Namely, Settlement Class members whose claims are denied (in whole or in part) have 30 days to dispute the decision before a special master. MMSA ¶¶ 6.4.3, CFESA ¶¶ 6.4.3. CFE and Mobile Messenger also have a right to dispute any approved claim within 30 days after the close of the claim period. In each instance, the contesting party must provide the special master with a detailed written explanation as to why the claims administrator erred in denying or approving the claim. The decision of the special master will be final. MMSA ¶¶ 6.4.4, CFESA ¶¶ 6.4.4.

### 4.    Limited Release

Both Settlements include a limited release. Any Mobile Messenger Settlement Class Member who does not submit a valid claim against Mobile Messenger will continue to have the right to pursue litigation against Mobile Messenger on an individual basis—only the right to participate in a class action or mass action shall be released. MMSA ¶¶ 1.8, 12.2. Mobile Messenger Settlement Class Members who submit valid claims will release any right to assert certain claims against Mobile Messenger. MMSA ¶¶ 1.8, 12.1, 12.2. The CFE Settlement

5

includes the same language with respect to CFE Settlement Class Members. CFESA ¶¶ 1.8, 12.1, 12.2.

### 5.  Notice and Claims Administration Costs

Under the Settlements, Mobile Messenger is responsible for paying the costs of providing notice to the Settlement Classes and for the Costs of Claims Administration. MMSA ¶ 8.4, CFESA ¶ 8.4.

### 6.  Payment of Attorneys' Fees, Costs, and Expenses, and Incentive Awards

The Settling Parties did not discuss attorneys' fees, costs, and expenses, or incentive awards until after the substantive terms of the first settlement presented was agreed upon, other than that Defendants would be responsible for such amounts as agreed to by Defendants and Co-Lead Settlement Class Counsel and approved by the Court. MMSA ¶ 13.1, CFESA ¶ 13.1. Mobile Messenger has agreed to pay Co-Lead Settlement Class Counsel, subject to Court approval, an amount of up to $485,000 in attorneys' fees and reimbursement of costs and expenses, and a service award to Representative Plaintiff in the amount of $2,500. MMSA ¶¶ 13.1, 13.3. CFE has agreed to pay Co-Lead Settlement Class Counsel, subject to Court approval, an amount up to $125,000 in attorneys' fees and reimbursement of costs and expenses, and a service award to Representative Plaintiff in the amount of $2,500. CFESA ¶¶ 13.1-13.3.

The Settlements provide substantial and valuable benefits to the Settlement Classes and, respectfully, should be granted final approval.

### C.  The Court-Approved Notice Program Was Effective and Satisfied Constitutional Requirements

Where a class has been certified under Fed. R. Civ. P. 23(b)(3), "the [C]ourt must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). Notice serves to "afford members of the class due process which, in the context of the

Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). "[D]ue process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice." *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010). Here, Notice, which was approved by the Court, was extremely effective, providing Settlement Class Members the best notice practicable under the circumstances, and satisfying constitutional requirements.

The Notice Program was developed and implemented by Dahl Administration, one of the most respected class action notice providers in the country. As summarized herein and explained in detail in the Declaration of Jeffrey D. Dahl ("Dahl Declaration"), attached hereto as Exhibit 1, Notice was provided in accordance with the Court-approved Notice Program. Dahl Decl. ¶ 4. Pursuant to the Notice Program, Dahl Administration and its media partner served mobile banner ad notices that appeared in prominent positions on the top trafficked mobile applications and websites, including Google, Apple, The New York Times, The Weather Channel, Fox News, and Huffington Post. Dahl Decl. ¶ 7. Further, keyword search notice advertisements were used on the Google and Bing search engines. Dahl Decl. ¶ 9. These keyword search notice advertisements were configured to appear in response to relevant search queries. Additionally, social media notices were displayed on Facebook and were targeted at users who had previously expressed interest in mobile phones, mobile networks and were adults aged 18–45. Dahl Decl. ¶ 11. These efforts combined produced more than an estimated 173.4 million notice impressions through December 2, 2016. Dahl Decl. ¶ 23.

Notice was also posted on the settlement website, www.mobilecontentsettlement.com. The settlement website allowed Settlement Class members to view information about the Settlements, including copies of the Detailed Notice, Settlement Agreements, and Preliminary Approval Order. The settlement website also contains important dates, answers to frequently asked questions, and contact information for the Claims Administrator. By visiting the settlement website, Settlement Class Members could view and file a claim for one or both Settlements. As of February 17, 2017, website was visited over 67,987 times. Dahl Decl. ¶ 16. Finally, a toll-free settlement information line was set up to assist potential settlement class members and others seeking information about the Settlements.

The Notice Program, with its extensive and thorough efforts to reach as many Settlement Class Members as possible, provided the Settlement Class with the best notice practicable under the circumstances.

## IV.    FINAL APPROVAL OF THE SETTLEMENTS IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *In re Charter Commc'ns Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.") (internal citation and quotations omitted).

Fed. R. Civ. P. 23(e) requires judicial approval of class action settlements. Courts in this Circuit analyze the following *Van Horn* factors to determine whether a settlement is fair, reasonable, and adequate: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Huyer v. Njema*, No. 16-1484, 2017 WL 461096, at *3 (8th Cir. Feb. 3, 2017) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Analysis of these factors demonstrates that the Settlements should be approved.

### A.  The Merits of the Plaintiff's Case, Weighed Against the Terms of the Settlements

"The most important consideration in the analysis requires balancing the strength of the plaintiffs' case against the value of the settlement terms to the class." *Marshall v. Nat'l Football League*, 787 F.3d 502, 514 (8th Cir. 2015). In cases such as this matter where damages are not easily calculable, courts are not required to calculate the value of class claims. *Id.* at 518. As the Eighth Circuit explained:

> To require the district court to make detailed factual findings on the value of class claims in every case, even if it would ultimately find any of its findings of little value to evaluating the fairness, reasonableness, and adequacy of the settlement would run counter to this Court's guiding principle that "[t]he very purpose of compromise is to avoid the delay and expense of such a trial," *Grunin,* 513 F.2d at 124 (internal quotation marks omitted) and that "[t]he parties to a class action are not required to incur immense expense before settling as a means to justify that settlement." *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1178 (8th Cir.1995).

*Marshall*, 787 F.3d at 518. Balancing the risks of continued litigation against the immediacy and certainty of the significant recovery provided by the Settlements supports that the Settlements should be granted final approval.

Plaintiff and Co-Lead Settlement Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance the claims if it were otherwise. But, they also recognize the substantial risks involved in continuing this litigation.

Defendants have aggressively maintained their position regarding liability and damages. They deny each.

Co-Lead Settlement Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. Mobile Messenger has contended that Plaintiff and other members of the Settlement Classes consented to receiving the charges at issue, that Plaintiff contractually waived its claims against it, and that Plaintiff's and other Settlement Class members' claims are barred by the voluntary payment doctrine. Answer at 13–14 (Dec. 15, 2014), ECF No. 125. It is likely that Mobile Messenger would have opposed class certification on multiple grounds, including that many individuals already received reimbursement for unauthorized charges from wireless carriers as a result of settlements between the nation's four largest wireless carriers and the federal government.

CFE has denied and continues to deny that it sent or caused to be sent an unsolicited text message to Plaintiff. Answer at 3, ECF No. 127. CFE has argued that Plaintiff and other Settlement Class Members agreed to do business with CFE, expressly consented to receiving text messages from CFE, agreed to CFE's Terms and Conditions, agreed to arbitrate any claims against CFE, and consented to be charged by CFE. *Id.* at 5–15.  Co-Lead Settlement Class Counsel believe Plaintiff and the Settlement Class would prevail on such arguments, but also recognize the difficulties in establishing liability on a class-wide basis through summary judgment and trial.

For example, CFE's defense is based largely on its contention that individuals were required to go through a multi-step process prior to being charged for its services. *Id.* Although Plaintiff disagrees with CFE's contention as a matter of fact and law, Plaintiff is cognizant of the fact that in *Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 WL 6073426

10

(N.D. Cal. Nov. 18, 2013), and *Geier v. m-Qube Inc.*, No. 13-354, 2016 WL 3458345 (W.D. Wash. June 24, 2016), courts denied the plaintiffs' requests to certify claims based on similar contentions. *See also Smith v. Microsoft Corp.*, No. 11-CV-1958 JLS (BGS), 2014 WL 323683, at *8–10 (S.D. Cal. Jan. 28, 2014) (denying motion to certify class under the TCPA based on, *inter alia*, the plaintiff's inability to prove lack of express consent). While Plaintiff believes that its claims are strong, the *Fields* and *Geier* orders illustrate that a risk exists. These risks clearly support the fairness, reasonableness, and adequacy of the settlements.

The Settlements, in contrast, deliver a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal. The Mobile Messenger Settlement provides that Mobile Messenger Settlement Class Members submitting valid claims shall receive $30 per unauthorized charge with no monetary cap on such refunds, with the exception that Settlement Class Members will receive $20 for charges already refunded or reimbursed. The CFE Settlement provides that CFE Settlement Class Members will receive $65 per text message claimed—up to 3 messages per Settlement Class member—to have been received from certain identified shortcodes generated by or from CFE, including eight programs identified in the Settlement.[5]

Both Settlements include a limited release, which is a substantial benefit for members of the Settlement Classes. Any member of the Settlement Classes who does not submit a valid claim against a settling defendant will continue to have the right to pursue litigation against that settling defendant on an individual basis—only the right to participate in a class action or mass

---

[5] As detailed below, if the value of valid claims exceeds $1,000,000, such claims will be prorated. CFESA ¶ 5.1. The Settlement identifies the following CFE programs: searchyourhoroscope.com, teneztogo.com, hearmemobile.com, myringtonespot.com, cellsafari.com, tonezgalore.com, urzodiachoroscopes.com, and fonezoneportal.com. CFESA ¶¶ 2.20–22, 5.1–2.

action shall be released. MMSA ¶¶ 1.8, 12.2, CFESA ¶¶ 1.8, 12.1, 12.2. But members of the Settlement Classes who submit valid claims will release any right to assert claims.

Co-Lead Settlement Class Counsel recognize that it would be difficult to achieve similar results on a class-wide basis at trial. *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 ADM/AJB, 2013 WL 716088 at *7 (D. Minn. Feb. 27, 2013) ("The critical consideration is the strength of plaintiffs' case on the merits versus the amount offered in the settlement."); *see also Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush") (internal citations and quotations omitted).

The benefits of the Settlements also compare favorably to other settlements involving similar cramming claims. The comparison of settlements of similar cases is an accepted judicial tool for determining whether a settlement is fair, reasonable, and adequate. *See, e.g.*, *McBean v. City of New York*, 233 F.R.D. 377, 388–91 (S.D.N.Y. 2006) (analogizing to other settlements in evaluating the adequacy of a settlement for final approval).

In *Gray v. Mobile Messenger Ams., Inc., et al.*, refunds were capped, the amount available to the settlement class was capped, and settlement payments were not available for amounts previously refunded. *See* Amended Stipulation of Settlement, *Gray v. Mobile Messenger Ams., Inc., et al.*, No. 08-cv-61089-CMA, at 12, 19, 20 (Aug. 4, 2008). And, in *Vandyke v. Media Breakaway LLC*, 08-cv-22131 (S.D. Fla.), involving the sale and billing of unauthorized mobile content, individuals submitting valid claims received $10 in cash. *See*

Stipulation of Settlement, *Vandyke v. Media Breakaway LLC*, No. 08-CV-22131 (S.D. Fla.). *See also In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (granting final approval of settlement providing for payments of approximately $34.60 or more per claimant); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) (granting final approval of settlement providing for payment of up to two message claims per class member, estimated by plaintiff's counsel to be between $20 and $40 per claim); *Arthur v. Sallie Mae*, No. 10-cv-00198-JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2002) (granting final approval of settlement providing for payment estimated by the parties at the preliminary approval stage to be within the range of $20 to $40); Final Approval Order *In re Jiffy Lube Int'l, Inc. Text Spam Litig.,* No. 3:11-MD-02261 (S.D. Cal. Feb. 20, 2013) (granting final approval of settlement providing for the issuance of certificates to valid claimants to be used for a defined list of goods or services or, alternatively, redeemed for an estimated $17.29 off any goods or services at Heartland-owned Jiffy Lube Stores, or, at the conclusion of the 18-month validity period, for an estimated $12.97 cash payment). The fact that the benefits of the Settlements compare favorably to those reached and granted final approval in other TCPA cases strongly supports final approval here.

Weighing the immediate and substantial relief offered under the Settlements against the strength and uncertainty of Plaintiff's claims supports approval of the Settlement.

### B.    The Defendants' Financial Condition

Mobile Messenger has represented that it has adequate resources to meet its obligations under the Settlement or to continue its defense in the litigation. CFE has provided a letter of credit from the Commonwealth Bank of Australia in the amount of $1,000,000 to guarantee the payment of all Valid Message Claims in accordance with the terms of the CFE Settlement.

CFESA ¶ 5.3. CFE has also represented that it has sufficient resources to continue its defense of the litigation. As such, this factor is neutral. *See Marshall*, 787 F.3d at 512.

### C.      The Complexity and Expense of Further Litigation

Prosecuting this litigation through trial and appeal would be lengthy, complex, and extremely costly to all parties. *See Marshall*, 787 F.3d at 512 ("Class actions, in general, place an enormous burden of costs and expense upon parties.") (citation and quotations omitted); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, continued fact discovery, class certification proceedings, further dispositive motions, trial, and appeal. CFE would almost certainly re-file its appeal of the Court's ruling on its motion to compel arbitration, which was dismissed without prejudice on account of the Settlements. Given the complex nature of the claims at issue, a battle of the experts at trial is almost a certainty and, as such, continued proceedings would likely include substantial expert discovery and significant motion practice related to such. Also, considering the size of the Settlement Classes and the amount of money at stake, any decision on the merits would likely be appealed, causing further delay, as it would require briefing and likely oral argument.

This factor favors final approval of the Settlements.

### D.      The Amount of Opposition to the Settlements

The Settlements were extraordinarily well received by Settlement Class Members. Not a single objection to the Settlements was filed, and not a single person requested to be excluded

from the Settlements. Given the expansive and effective Notice Program, the lack of opposition to the Settlements strongly supports final approval.

## V.   THE REQUESTED ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS ARE REASONABLE AND APPROPRIATE

### A.   The Requested Awards of Attorneys' Fees, Costs, and Expenses Are Fair and Reasonable

Co-Lead Settlement Class Counsel request that the Court approve payment by Mobile Messenger of attorneys' fees, costs, and expenses in the amount of $485,000, and payment of attorneys' fees, costs, and expenses by CFE in the amount of $125,000. Mobile Messenger and CFE have agreed to pay these amounts in addition to providing all other benefits under the Settlements, subject to Court approval.

Courts presiding over certified class actions "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Where no common fund exists, courts employ a lodestar analysis to analyze class counsel's fee request. Under the lodestar method, the Court multiplies the number of hours that Plaintiffs' counsel reasonably worked by the prevailing market rate for that work. *See Blum v. Stenson,* 465 U.S. 886, 888 (1984).

Plaintiffs' Counsel and their firms reasonably incurred $22,401 in costs and expenses in furtherance of the Litigation. A summary of these costs and expenses incurred is included on each of the attorney declarations attached hereto. Co-Lead Settlement Class Counsel request that the Court award payment by Mobile Messenger in the amount of $17,810.63 and payment by CFE in the amount of $4,590.37 to reimburse Plaintiffs' counsel for these amounts expended.[6] *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379 (8th Cir. 2003).

---

[6] The requested allocation of costs and expenses is based proportionally on the total award of attorneys' fees, costs, and expenses sought from Mobile Messenger and CFE. The amount for

Plaintiffs' counsel collectively report having spent more than 2,100 hours advancing this litigation. Multiplying the total hours by the reasonable hourly rates charged by Plaintiffs' counsel results in a lodestar of $1,234,060. Subtracting costs and expenses incurred from $610,000, equates to a total requested attorneys' fee award of $587,599 for a negative lodestar multiplier of .47.[7] Co-Lead Settlement Class Counsel request that Mobile Messenger be ordered by pay $467,189.37 in attorneys' fees, and that CFE be ordered to pay $120,409.63.[8] The requested awards are reasonable and appropriate considering the time and expense required to achieve successful resolution of this matter, the complex nature of this case, and the excellent benefits achieved by the Settlements.

### 1. Co-Lead Settlement Class Counsel and other Plaintiff's Counsel Report Reasonably Spending in Excess of 2,100 Hours Advancing the Litigation

Attached in support of Plaintiff's application for an award of attorneys' fees, costs, and expenses are the sworn declarations of Ben Barnow, Ralph K. Phalen, Mitchell L. Burgess, and Richard J. Schicker (collectively, the "Attorney Declarations," attached as Exhibits 2, 3, 4, and 5, respectively). In each of these declarations, the declarant-attorney attests to the total time his firm spent litigating this matter, the hourly rates, and years of experience of the attorneys from their firm. Altogether, Plaintiff's Counsel report having spent in excess of 2,100 hours advancing the matter. Additional time will be spent traveling to and appearing at the Final Fairness Hearing, and resolving any appeals that may be filed.

---

Mobile Messenger was calculated as follows: ($485,000 / $610,000) * $22,401 = $17,810.63). The amount for CFE was calculated as follows: ($125,000 / $610,000) * $22,401 = $4,590.37).
[7] ($610,000 – $22,401) / $1,234,060 = .47.
[8] The requested allocation of attorneys' fees is based proportionally on the total award of attorneys' fees, costs, and expenses sought from Mobile Messenger and CFE. The amount for Mobile Messenger was calculated as follows: ($485,000 / $610,000) * $587,599 = $467,189.37). The amount for CFE was calculated as follows: ($125,000 / $610,000) * $587,599 = $120,409.63).

The Declaration of Ben Barnow details the significant time and labor required to bring this matter to successful resolution. The supporting declarations support that such time and effort was reasonably expended, considering the issues involved in this complex litigation, and the number and complexity of the claims asserted in the litigation. Among other things, Co-Lead Settlement Class Counsel researched the unique issues pertaining to this litigation, researched and drafted the Class Action Complaint, opposed and defeated a motion to compel arbitration and a motion to dismiss, engaged in substantial discovery, and fully briefed an appeal.

As the Court knows, the Settlements were reached after years of hard-fought negotiations and extensive Court involvement. The negotiations involved, among other things, a number of in-person meetings and the assistance of a mediator.

Co-Lead Settlement Class Counsel's duties did not end when the Settlements were executed. Thereafter, they prepared and filed motions for preliminary approval of the Settlements and related documents with the Court and presented the matters to the Court. Co-Lead Settlement Class Counsel also worked with the Notice Provider, the Claims Administrator, and counsel for the Mobile Messenger and CFE to effectuate the Settlements and continue to do so.

Altogether, the hours expended by Co-Lead Settlement Class Counsel and their firms were, as supported by their declarations, reasonable and appropriate. The excellent and hard-fought Settlements leave no serious doubt as to the appropriateness of the attorneys' fee, cost, and expense award requested.

### 2.  The Hourly Rates of Plaintiff's Counsel Are Reasonable

The hourly rates charged by Plaintiff's Counsel and their firms are reasonable and appropriate. Each of the Attorney Declarations details the name, total number of hours expended, customary hourly rate, and years of experience of each attorney from his or her firm who worked

17

on this matter. The hourly rates of Co-Lead Settlement Class Counsel and attorneys from their firms are reasonable, taking into consideration the experience and skill of such attorneys and market rates for such skill. Co-Lead Settlement Class Counsel are highly experienced and successful class action plaintiff's attorneys.

### 3. The *Johnson* Factors Confirm the Requested Award Is Reasonable and Appropriate

This Circuit has established factors that a court should examine in determining both the reasonableness of a lodestar award, and the use of a multiplier to enhance the award. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974); s*ee also Zoll v. Eastern Allamakee Community Sch. Dist.*, 588 F.2d 246, 252 (8th Cir. 1978) (explaining that the *Johnson* factors apply to determining both upward adjustments and a reasonable hourly rate). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

Applying the *Johnson* factors would support that Co-Lead Settlement Class Counsel would be entitled to the application of a multiplier to their lodestar, however, Co-Lead Settlement Class Counsel seek a fee which results in a negative multiplier of only .47.

### a. The Time and Labor Required, the Difficulty of the Questions Involved, and the Skill Required to Litigate the Case

Significant time and labor was required to litigate this complex matter. Since the initiation of this case, Co-Lead Settlement Class Counsel have, among other things, researched the unique issues pertaining to this litigation; researched and drafted the Class Action Complaint, opposed and defeated a motion to compel arbitration and a motion to dismiss, and engaged in substantial settlement negotiations spanning a period of several months.

Plaintiffs' counsel have expended in excess of 2,100 hours working on this litigation, incurring approximately $1,234,060 in fees and over $22,401 in costs and expenses. More time, costs and expenses will be expended and incurred in the future.

The record equally establishes that this case presented difficult questions, which required commensurate skill to litigate the case properly.

### b. The Experience, Reputation, and Ability of the Attorneys

Co-Lead Settlement Class Counsel have the experience, reputation, and ability to litigate, and successfully conclude, complex class actions. Co-Lead Settlement Class Counsel are nationally known, and their vast experience served the Class well in this litigation, which is demonstrated by the exemplary results achieved by the Settlements.

### c. The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case

Co-Lead Settlement Class Counsels' efforts in managing this class action necessarily infringed upon the time and opportunity they would have had available to accept other employment. The reality of complex cases is that work is not easily shifted to other attorneys in a firm not familiar with the matter, with the result that substantially less time becomes available to Co-Lead Settlement Class Counsel and those familiar with the matter to attend to

other matters. Time and energy devoted to this litigation necessarily limited the time and energy available for other litigation.

### d.  The Customary Fee

An action of this complex nature is a "make or break" venture for which compensation should bear a reasonable relationship to the success of the venture when compared to the risks undertaken, particularly in the legal atmosphere for plaintiff lawyers in a class action context. It is also significant that the amount sought comports with the standard fees in the marketplace.

### e.  Whether the Fee Is Fixed or Contingent

Co-Lead Settlement Class Counsel prosecuted this matter on a purely contingent basis, thereby assuming the risk of no payment for a considerable amount of work over an extended period of time. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *In re Sunbeam,* 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988)). Co-Lead Settlement Class Counsel spent considerable time advancing this case without any guarantee of compensation for their efforts. They did so without knowing whether their investment would ever be returned. In sum, this case presented great financial risk from its inception. As the Court stated in *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007):

> [A]ttorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 54 (2d Cir. 2000) (citation omitted); *accord Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."); *see also Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters*

20

*v. Atlanta,* 652 F. Supp. 755, 759 (N.D. Ga.), *modified,* 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama State Bd. of Educ.,* 631 F. Supp. 78, 86 (M.D. Ala. 1986).

Given the risks involved, the fee requested herein should be awarded.

### f.   The Amount Involved and the Results Obtained

The result achieved is a major factor to consider in making a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *Behrens*, 118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). The Settlements represent a tremendous result for the Settlement Classes.

The Settlements represent an excellent result for the Settlement Classes. Mobile Messenger Settlement Class members who submit valid claims will receive $30 per unauthorized charge with no monetary cap on such refunds, with the exception that individuals will receive $20 for charges already refunded or reimbursed. Given that the unauthorized charges at issue were almost always $9.99 or less, the benefit allows those submitting valid claims to receive a three-hundred percent recovery or more on such charges. Additionally, as shown above, the CFE Settlement providing that CFE Settlement Class members will receive $65 per text message validly claims—up to 3 messages per individual—compares favorably to other cases were TCPA claims have been settlement. The Settlements ultimately represent an incredible result for Settlement Class members.

### g.   The Undesirability of the Case

"A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped

by the term 'undesirable.'" *In re Sunbeam,* 176 F. Supp. 2d at 1336.  Here, not only was the financial outcome uncertain, but the representation involved bringing claims that were difficult and risky, particularly where other courts have denied claims of this nature. This represents yet another factor warranting the requested multiplier and resulting award of fees, costs and expenses.

### h.  Time Limitations Imposed by the Client or the Circumstances

This case has required significant attention by various Plaintiffs' counsel.  Frequently, issues required immediate attention and completion within a very short period of time, and Co-Lead Settlement Class Counsel responded accordingly.

### i.  The Nature and Length of the Professional Relationship with the Client

Representative Plaintiff is recognized by the settlement agreement and the Court's order. This factor, in terms of length of relationship, is not of great importance in this litigation.

### B.  The Requested Incentive Awards Are Reasonable and Appropriate

Representative plaintiff service awards encourage members of a class to become class representatives and reward individual efforts taken on behalf of a class. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (awarding incentive award of $25,000).

Representative Plaintiff stepped forward and volunteered to undertake responsibilities, risks, and scrutiny. The requested incentive award of $2,500 from Mobile Messenger and the requested incentive award of $2,500 from CFE are reasonable, justified, and in accord with common practice.

## VI.  <u>CONCLUSION</u>

As the above analysis shows, the Court should grant Plaintiff's Motion for Final Approval. Accordingly, Plaintiff, individually and on behalf of the Settlement Classes, by and

through counsel, respectfully requests that this Court enter an order: (a) granting final approval of the Settlements, (b) awarding Co-Lead Settlement Class Counsel attorneys' fees, costs, and expenses from defendant Mobile Messenger in the amount of $485,000, (c) awarding Co-Lead Settlement Class Counsel attorneys' fees, costs, and expenses from defendant CFE in the amount of $125,000, (d) awarding Representative Plaintiff $2,500 under each of the Settlements; and granting any other or additional relief as the Court may deem just and appropriate.

Dated:  February 23, 2017                    ***Attorneys for plaintiff Cullan and Cullan LLC***

                                              /s/ Ben Barnow_____

                                             Ben Barnow (pro hac vice)
                                             BARNOW AND ASSOCIATES, P.C.
                                             One North LaSalle Street, Suite 4600
                                             Chicago, IL 60602
                                             312-621-2000
                                             312-641-5504 fax
                                             b.barnow@barnowlaw.com

                                             Ralph Phalen (pro hac vice)
                                             RALPH K. PHALEN, ATTORNEY AT LAW
                                             1000 Broadway Ste. 400
                                             Kansas City Mo. 64105
                                             816-589-0753
                                             816-471-1701 fax
                                             phalenlaw@yahoo.com

                                             Richard J. Schicker (#13686)
                                             LAW OFFICES OF RICHARD J. SCHICKER
                                             2809 So. 160th Street, Suite 101
                                             Omaha, NE 68130

                                             Mitchell L. Burgess (pro hac vice)
                                             BURGESS & LAMB, P.C.
                                             1000 Broadway, Suite 400
                                             Kansas City, MO 64105
                                             816-471-1700
                                             816-471-1701 fax
                                             mitch@burgessandlamb.com

## **Certificate of Service**

The undersigned hereby certifies a true and correct copy of the foregoing was served via filing with the Court's e-filing service, on this 23rd day of February 2017.

  /s/ Ben Barnow